## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re

**Innings 150, LLC**

Case No. _____23-32634-thp7_____

☐ Amended

**NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

Debtor

[Do not use to sell personally identifiable information about individuals]

### Notice

NOTICE IS GIVEN that _____**Kenneth S. Eiler**_____ (movant), the _____**Trustee**_____ [*enter movant's role in the case (for example, debtor or trustee)*], intends to sell the property described below and moves for authority to sell the property free and clear of liens under 11 U.S.C. § 363(f). Movant's address and phone number are:

Kenneth S. Eiler, Trustee, 515 NW Saltzman Rd., PMB 810, Portland, OR 97229
503-292-6020

The holders of liens of which the movant requests the property be sold free and clear are [*list lienholders*]:

DLP Lending Fund, LLC
Cuyahoga County, Ohio

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or 15, you must--

1. Attend the hearing set in paragraph 3 below; and

2. Within 21 days after the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

    a. a written objection stating the specific facts upon which the objection is based, and

    b. a certificate of service of the objection on the movant.

3. A hearing on the motion and any objections to the sale or fees, which

☐ is [*check this box only if directed to do so by the court*]

☒ is not

an evidentiary hearing at which witnesses may testify, is scheduled as follows:

**Date:** _____04/04/2024_____      **Time:** _____11:00 a.m._____

**Location:** ☐ Courtroom #_____, _____

☒ Telephone Hearing [*See Local Bankruptcy Form (LBF) 888, Telephone Hearing Requirements.*]

    **Call In Number:** (888) 684-8852

    **Access Code:** ☐ 5870400 for Judge David W. Hercher (dwh)

                     ☐ 1238244 for Judge Peter C. McKittrick (pcm)

                     ☒ 4950985 for Judge Teresa H. Pearson (thp)

                     ☐ 3388495 for Judge Thomas M. Renn (tmr)

☐ Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

If no timely objection is filed, an order may be lodged and the hearing may be canceled. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the objection deadline has passed.

## Motion

The movant moves for authority to sell the property free and clear of liens under § 363(f) as follows--

1. The specific subsections of § 363(f) movant relies on for authority to sell the property free and clear of liens are [*specify for each lienholder*]:

    363(f)(2) and (5) - Taxing Authorities will be paid in full.  DLP consents to the sale free and clear of its liens.

2. Buyer's name and relation or other connection to debtor:

   **See Attached**

3. General description of the property [*if real property, state street address here and attach legal description as an exhibit to the notice filed with the court*]:

   **By this motion, the Trustee proposes to sell seven separate residential properties. The details of each sale, including property address and purchase price, is included in the attachment hereto.**

4. A copy of the full property description or inventory may be examined or obtained at:

   **Contact Trustee**

5. The property may be previewed at [*include time and place*]:

   **Contact Trustee for preview information, including time and place.**

6. Other parties to the transaction and their relationship to the debtor are:

   **The proposed purchasers of the respective properties have no relationship with or other connection to the Debtor.**

7. The gross sale price is: $ _____ **See Attached** _____.

   All liens on the property total $ _____, of which movant believes a total of $ _____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

   Secured creditor also seeks reimbursement of $ _____ for fees and costs.
   Total sales costs will be: $ _____.

   All tax consequences have been considered, and it presently appears that the sale will result in net proceeds to the estate after payment of valid liens, fees, costs, and taxes of approximately: $ _____ **105,000.00** _____.

8.  The sale ☐ is ☒ is not [*check one*] of substantially all of the debtor's assets. Terms and conditions of sale:

9.  Competing bids must be submitted to the movant no later than ____03/22/2024____ and must exceed the applicable offer by at least _$5,000 (per property)_ and be on the same or more favorable terms to the estate.

10. Summary of all available information regarding valuation, including any independent appraisals:

    **See attached.**

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

    **Each of the property sales proposed by this motion is a short sale.  The secured lender has consented to the short sales, and has agreed to carve-out $15,000 from the proceeds of each sale for the benefit of the estate.**

    and expenses and taxes resulting from the sale will be paid as follows:

12. (Chapter 11 cases only) The reason for proposing the sale before confirmation of a plan of reorganization is:

    **N/A**

13. The following information relates to liens on the property which are listed in priority order:

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid.) |
|---|---|---|---|
| Cuyahoga County, Ohio | Cuyahoga County Treasurer's Office 2079 East Ninth Street Cleveland, OH 44115 | $42,808.21 | Fully Paid |
| DLP Lending Fund, LLC | 405 Golfway West Drive St. Augustine, FL 32095 | $4,392,428.00 | Partially Paid |
| | Linda St. Pierre, OSB No. 200446 McCalla Raymer Leibert Pierce, LLC 50 Weston Street, Hartford, CT 06120 | | |

Of the liens listed in this paragraph designated to be fully paid, movant does not request that the sale be free and clear but moves for authority to pay them in full.

14. Any liens not fully paid at closing will attach to the sale proceeds in the priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs, or other charges as provided in this motion, must be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, IIP Management, LLC will be paid $41,490.

16. If this is a chapter 11 case, this motion complies with the guidelines set forth in LBF 363, *Procedures re: Motions for Sale of All or Substantially All Assets*.

17. I certify that on 02/27/2024 this document was served, under FRBP 7004, on the debtor, trustee (if any), U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys; and (unless movant is a chapter 7 trustee) that it was also sent on that date, pursuant to FRBP 2002(a), to all creditors and all parties as listed in the court's records that were obtained on 02/26/2024, a copy of which is attached to the document filed with the court.

18. For further information, contact:

| | |
|---|---|
| __02/27/2024__ | **/s/ Andrew J. Geppert, OSB No. 203744, Attorney for Trustee** |
| Date | Signature & Relation to Movant |

**Kenneth S. Eiler, Trustee, 515 NW Saltzman Rd., PMB 810, Portland OR**

(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

**Portland, OR 97229**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 23-32634-thp7 |
| | Chapter 7 |
| Innings 150, LLC, | |
| | **ATTACHMENT TO NOTICE AND** |
| Debtor. | **MOTION TO SELL REAL** |
| | **PROPERTY** |

**10233 Loretta Ave, Cleveland, OH 44111**

Purchase price: $105,000.00

Buyer's name: Bar Avisar Soli LLC, no relation or other connection to Debtor

Tax lien amount: $5,622.41.  Paid in full.

DLP lien amount: $4,392,428.00[1].  Net proceeds after taxes, closing costs, and carve-

out, paid to DLP

DLP carve-out: $15,000.00

Value information:[2] $140,000.00

Broker commission: $6,300.00

Sale Agreement attached as **Exhibit 1**

**12010 Longmead Ave, Cleveland, OH 44135**

Purchase price: $82,000.00

Buyer's name: G & A Next Realty, LLC, , no relation or other connection to

Debtor

Tax lien amount: $6,189.99 [Claim 19-1].  Paid in full.

---

[1] [ECF No. 11 at 8]
[2] [ECF No. 13]

PAGE 1    **ATTACHMENT TO NOTICE AND MOTION TO SELL REAL PROPERTY**

DLP lien amount:    $4,392,428.00.  Net proceeds after taxes, closing costs, and carve-out, paid to DLP

DLP carve-out:    $15,000.00

Value information:    $103,000.00

Broker commission:   $4,920.00

Sale Agreement attached as **Exhibit 2**

### 1325-1327 West 93rd St, Cleveland, OH 44102

Purchase price:    $100,000

Buyer's name:    Josh Janus of Janus Rentals, LLC, no relation or other connection to Debtor.

Tax lien amount:    $5,247.61.  Paid in full.

DLP lien amount:    $4,392,428.00.  Net proceeds after taxes, closing costs, and carve-out, paid to DLP

DLP carve-out:    $15,000.00

Value information:    $112,000.00

Broker commission:   $6,000.00

Sale Agreement attached as **Exhibit 3**

### 13829 Courtland Ave, Cleveland, OH 44111

Purchase price:    $95,500.00

Buyer's name:    SLHS Investments LLC, no relation or other connection to Debtor

Tax lien amount:    $7,357.73 [Claim 9-1].  Paid in full.

PAGE 2    **ATTACHMENT TO NOTICE AND MOTION TO SELL REAL PROPERTY**

DLP lien amount:      $4,392,428.00.  Net proceeds after taxes, closing costs, and carve-out, paid to DLP

DLP carve-out:        $15,000.00

Value information:    $107,000.00

Broker commission:    $5,730.00

Sale Agreement attached as **Exhibit 4**

### 13921 Courtland Ave, Cleveland, OH 44111

Purchase price:       $79,000.00

Buyer's name:         Ervis Duraj, no relation or other connection to Debtor

Tax lien amount:      $5,634.25 [Claim 10-1].  Paid in full.

DLP lien amount:      $4,392,428.00.  Net proceeds after taxes, closing costs, and carve-out, paid to DLP

DLP carve-out:        $15,000.00

Value information:    $87,000.00

Broker commission:    $4,740.00

Sale Agreement attached as **Exhibit 5**

### 3433 West 137th St, Cleveland, OH 44111

Purchase price:       $90,000

Buyer's name:         216 Property Solutions, LLC, no relation or other connection to Debtor

Tax lien amount:      $5,249.31 [Claim 7-1].  Paid in full.

PAGE 3     **ATTACHMENT TO NOTICE AND MOTION TO SELL REAL PROPERTY**

DLP lien amount:    $4,392,428.00.  Net proceeds after taxes, closing costs, and carve-out, paid to DLP

DLP carve-out:    $15,000.00

Value information:    $89,000.00

Broker commission:    $5,400.00

Sale Agreement attached as **<u>Exhibit 6</u>**

**5223 West 50th St, Parma, OH 44134**

Purchase price:    $140,000.00

Buyer's name:    Wadih Aboumrad, no relation or other connection to Debtor

Tax lien amount:    $7,506.91 [Claim 15-1].  Paid in full.

DLP lien amount:    $4,392,428.00.  Net proceeds after taxes, closing costs, and carve-out, paid to DLP

DLP carve-out:    $15,000.00

Value information:    $169,000.00

Broker commission:    $8,400.00

Sale Agreement attached as **<u>Exhibit 7</u>**

dotloop signature verification: dtlp.us/W3I1-zSN3-v6I8
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D



## OFFER TO PURCHASE REAL ESTATE AND ACCEPTANCE
This is a legally binding agreement. Consult with your independent legal counsel if you have questions of law.

1  **BUYER:** The undersigned  Bar Avisar Soli LLC  ("BUYER") offers to buy
2  the following described property located at:  10233 Loretta Ave, Cleveland, OH 44111  ,
3  Cuyahoga  , Ohio (the "Property"). Permanent Parcel No  01712074

4  The Property, which BUYER accepts in its "AS IS" present physical condition, including any latent defects, shall include the
5  land, all appurtenant rights, privileges and easements, and all buildings and fixtures, including those presently on the Property;
6  all electrical, heating, plumbing and bathroom fixtures; all window and door shades, blinds, awnings, screens, storm windows,
7  curtain and drapery fixtures; all landscaping, disposal, smoke detectors, garage door opener(s) and all controls; and all
8  permanently attached carpeting. The following items shall also remain: ☐satellite dish; ☐range/oven; ☐microwave; ☐kitchen
9  refrigerator; ☐dishwasher; ☐washer; ☐dryer; ☐radiator covers; ☐window air conditioner; ☐gas grill; ☐fireplace tools; ☐screen;
10  ☐ glass doors; ☐fireplace grates; ☐all existing window treatments; ☐ceiling fan(s); ☐ wood burner stove inserts; ☐gas logs;
11  ☐central air conditioning systems and condensers; and☐water softener. Unless specified herein, fixtures (permanently affixed
12  to the Property) are presumed to be conveyed to BUYER. This Agreement supersedes any representations in the marketing of
13  the Property, including the MLS.
14
15  Also included: _____
16  Not included: _____

17  **SECONDARY OFFER:** This ☐is ☑is not a secondary offer. This secondary offer, if applicable, will become a primary contract
18  upon BUYER'S receipt of a signed copy of the release of the primary contract on or before _____. BUYER
19  shall have the right to terminate this secondary contract at any time prior to BUYER'S receipt of the release of the primary contract
20  by delivering written notice to SELLER or SELLER'S agent. BUYER shall deposit earnest money within four (4) days from the
21  date of receipt of the release notifying BUYER that BUYER's contract is primary.
22
23  This offer is open for acceptance, as hereinafter defined, by SELLER on or before 6 pm on  02/05/2024  .
24
25
26  **PRICE:** BUYER shall pay the sum of                                   $ 105000.00
27  payable as follows:
28
29  **Earnest Money** to be deposited in a non-interest-bearing trust
30  account with the Escrow Agent within four (4)
31  days from the date of Acceptance, as defined herein, and
32  credited against purchase price:                                         $ 1000.00
33  ☑ wired funds to Escrow Agent
34  ☐ check to be made payable to Escrow Agent
35  ☐ note to be redeemed within four (4) days after Acceptance
36
37  Cash down payment to be deposited with Escrow Agent          $ N/A
38
39
40  Mortgage loan to be obtained by BUYER (specified below):       $ N/A
41
42  ☐CONVENTIONAL ☐FHA ☐VA ☑CASH ☐OTHER  All Cash Offer

43  The parties hereby direct the Escrow Agent to confirm receipt of Earnest Money by delivering written notice to the parties' real
44  estate agent(s) or to a party directly if they are not represented. NOTE: Ohio law requires deposits to an Escrow Agent (earnest
45  money and/or down payment) in excess of $10,000 to be conveyed by wire transfer.
46
47  **ELECTRONIC DATA SECURITY:** Broker, its agents and employees will never request a party to wire funds or to supply personal
48  financial data, including without limitation credit or debit card or bank account numbers. The parties agree to independently
49  confirm any communications instructions, including for transfer or deposit, directly with Escrow Agent identified herein. The parties
50  hereby release all brokers and agents involved in this transaction from any and all claims, damages, and causes of action related
51  to any unlawful electronic data security access by a third party.
52
53  **FINANCING:** This offer is conditioned upon BUYER making a written application for the above mortgage loan within 3 ____
54  days after Acceptance and using good faith efforts to obtain a written commitment for that loan on or about

Rev. 8.29.19

**Exhibit 1**
**Page 1 of 11**

dotloop signature verification: dtlp.us/W3I1-zSN3-s6l8
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

55 02/28/2024 _____. If BUYER does not timely obtain a written commitment, then this Agreement shall be null and void,
56 and the parties agree to sign a mutual release authorizing the Earnest Money to be returned BUYER. In the event of a dispute
57 regarding Earnest Money, the Escrow Agent is required by Ohio law to maintain it in its trust account until the Escrow Agent
58 received (a) written mutual authorization of both parties specifying disbursement; or (b) a court order directing disbursement.
59
60 **CLOSING:** All funds and documents necessary for completion of this Agreement shall be placed in escrow with the lending
61 institution or Pathway Title _____ (the "Escrow Agent") on or before 03/28/2024xx 4/1/24 and title shall
62 be transferred on or about 03/29/2024x 4/1/24 _____.
63 **WALK THROUGH:** BUYER and SELLER agree that BUYER may walk through the Property on or about 1-3 ___ day(s) prior to
64 title transfer solely to verify it is in the same or similar condition, absent normal wear and tear, that it was at the time of Acceptance.
65 BUYER acknowledges and agrees BUYER may not raise any issues about the Property's condition at walk through if the condition
66 existed when BUYER viewed or inspected it. If the walk through evidences a material adverse change in the Property's condition,
67 BUYER shall promptly notify SELLER and Escrow Agent in writing. Thereafter, the parties shall mutually agree in writing upon
68 an amount to be either: (1) held in escrow from SELLER'S proceeds pending correction of the material adverse change; or (2)
69 credited to BUYER through escrow at the time of title transfer.
70
71 **POSSESSION:** SELLER shall deliver possession and occupancy to BUYER on or before 6:00 p.m. 0-1 ___ day(s) after recording
72 of the Deed or 02/29/2024 _____, whichever is later. BUYER shall transfer utilities commencing on the date of possession.
73 **TITLE:** SELLER shall convey marketable title to BUYER by general warranty deed and/or fiduciary deed, if required, with release
74 of dower, free and clear of all liens and encumbrances whatsoever, except (a) any mortgage assumed by BUYER; b) such
75 restrictions, conditions, easements (however created) and encroachments as do not materially adversely affect the use or value
76 of the Property; c) zoning ordinances, if any; and d) taxes and assessments, both general and special, not yet due and payable.
77 SELLER shall furnish an Owner's Fee Policy of Title Insurance from the Escrow Agent for the purchase price with cost of the
78 insuring premium split equally between SELLER and BUYER. SELLER shall have thirty (30) days after written notice to remove
79 title defects. If unable to do so, BUYER may either: a) accept title subject to each defect without reduction in the purchase
80 price; or b) terminate this Agreement. If BUYER elects to terminate this Agreement, the parties agree to sign a mutual release
81 authorizing the Earnest Money to be returned to BUYER.
82
83 **PRORATIONS:** Tenant security deposits, if any, shall be credited to BUYER through escrow. Rents, if any, taxes and
84 assessments, and homeowners association fees and assessments, if any, shall be prorated by Escrow Agent as of the date of
85 recording of the Deed. Taxes and assessments shall be prorated based upon the latest available tax duplicate. The parties agree
86 to consult with the Escrow Agent and/or county auditor's office about the status of the Property taxes as the latest available tax
87 duplicate may not accurately reflect the amount of taxes owed. The parties agree to adjust directly any changes in proration when
88 the tax duplicate for the calendar year of closing becomes available. If the Property is new construction and recently completed
89 or in the process of completion at the time of the Agreement, then the Escrow Agent shall make a good faith estimate of taxes to
90 be owed on the value of the improved Property to the date of title transfer and shall reserve sufficient funds in escrow from
91 SELLER'S net proceeds to pay those taxes when they become due and payable after title transfer. Escrow Agent is instructed
92 to release the balance of the funds on reserve upon notice from the county auditor that the taxes on the land and improvements
93 have been paid in full to the date of title transfer. Escrow Agent shall withhold $150.00 from SELLER to secure payment of
94 final water and sewer charges, if any, and then either pay said charges or verify SELLER'S payment of them and remit any
95 balance to SELLER. If the Property is deemed subject to any agricultural tax recoupment (C.A.U.V.), ☐BUYER ☑SELLER agrees
96 to pay the amount of such recoupment.
97
98 **CHARGES/ESCROW INSTRUCTIONS:** This Agreement shall be used as escrow instructions subject to the Escrow Agent's
99 standard conditions of acceptance that are not inconsistent with this Agreement. SELLER shall pay the following costs through
100 escrow: a) real estate transfer tax; b) any amount required to discharge any mortgage, lien or encumbrance not assumed by
101 BUYER; c) title exam and one-half the cost of insuring premium for Owners Fee Policy of Title Insurance; d) prorations due
102 BUYER; e) Broker's commissions; f) one-half of the escrow; and g) other _____
103 (unless VA/FHA regulations prohibit payment of escrow fees by BUYER, in which case SELLER shall pay the entire escrow fee).
104 SELLER shall pay directly all utility charges to the date of title transfer or date of possession, whichever is later. Tenant security
105 deposits, if any, shall be credited in escrow to BUYER.
106
107 BUYER shall pay the following through escrow (unless prohibited by VA/FHA regulations): a) one-half of the escrow fee; b) one-
108 half the cost of insuring premiums for Owners Fee Policy of Title Insurance; c) all recording fees for the deed and any mortgage;
109 and d) other _____.
110
111 BUYER acknowledges the availability of a limited home warranty with a deductible paid by BUYER which ☐will ☑will not be
112 provided from _____ at a cost of $_____ and which shall be charged to
113 ☐SELLER ☐BUYER through escrow at title transfer. The parties acknowledge that the limited home warranty does not cover
114 pre-existing defects in the Property and that Broker may receive a fee from the warranty provider.
115
116 **INSPECTION:** This Agreement shall be subject to the inspection(s) elected below, which shall be conducted by an independent
117 professional inspector of BUYER'S choice within the specified number of days **from the date of Acceptance**, as herein defined.

**Exhibit 1**
**Page 2 of 11**

dotloop signature verification: dtlp.us/W3l1-z5N3-v6B
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

118 BUYER acknowledges that waiver of any inspection or evaluation of the Property is against the advice of BUYER'S broker and
119 agents. BUYER acknowledges and agrees (a) real property may have defects and conditions, including those which are not
120 readily apparent; (b) BUYER is exclusively responsible for personally inspecting and evaluating the Property, including its
121 condition and systems, as well as retaining independent professionals to do so on BUYER'S behalf; (c) BUYER shall directly
122 consult public records and local and county government about the Property, including without limitation as to BUYER'S intended
123 use; (d) BUYER shall carefully review SELLER's representations and disclosures and inquire of SELLER if BUYER has questions
124 or concerns. BUYER agrees to hold the broker(s) and agents involved in this Agreement harmless from any and all claims,
125 actions, injuries or damages relating to the Property after title transfer. NOTE: Inspections required by any state, county, local
126 government, and/or VA/FHA, including the FHA appraisal, do not replace the need for BUYER'S own inspections.
127

| 128 CHOICE | | INSPECTION | | | EXPENSE | |
|---|---|---|---|---|---|---|
| 129 Yes | No | | | | BUYER | SELLER |
| 130 ☑ | ☐ | GENERAL HOME | 12 | days | ☑ | ☐ |
| 131 ☐ | ☑ | SEPTIC SYSTEM | | days | ☐ | ☐ |
| 132 ☐ | ☑ | WATER POTABILITY | | days | ☐ | ☐ |
| 133 ☐ | ☑ | WELL FLOW RATE | | days | ☐ | ☐ |
| 134 ☐ | ☑ | RADON | | days | ☐ | ☐ |
| 135 ☑ | ☐ | OTHER | 12 | days | ☑ | ☐ |
| 136 | | (specify) | | | | |
| 137 | | Any other inspection home inspector recommends | | | | |

138
139 **WAIVER:** ___*BdR*___ (initials) BUYER expressly waives each and every professional inspection above to which BUYER
140 has not indicated "YES." BUYER's failure to perform any elected inspection shall be deemed a waiver of such inspection and
141 absolute acceptance of the Property by BUYER in its "AS IS" condition.
142
143 **Within three (3) days after completion of the last inspection elected above,** BUYER shall choose one of the following options:
144 (a) remove the inspection contingency and accept the Property in its "AS IS" condition; (b) accept the Property subject to
145 SELLER's agreement to repair specific conditions or defects that have been identified in a written inspection report by a
146 professional contractor at SELLER'S expense; or (c) terminate this AGREEMENT if written inspection report(s) identify material
147 latent defects not previously disclosed in writing by SELLER and/or any Broker or agent.
148
149 If the Property is accepted in its "AS IS" present physical condition, BUYER shall sign an Amendment to Purchase Agreement
150 removing the inspection contingencies and this Agreement will proceed in full force and effect. If the Property is accepted subject
151 to SELLER repairing specific defects, BUYER shall provide to SELLER a copy of the inspection report(s) and sign an Amendment
152 to Purchase Agreement removing the inspection contingency and identifying the defects which are to be repaired. SELLER and
153 BUYER shall have three (3) days from SELLER'S receipt of the written list of defects and the inspection report(s) to agree in
154 writing which defects, if any, will be corrected at SELLER'S expense. If a written Agreement is not signed by both parties within
155 those three (3) days, then this Agreement shall be null and void and SELLER and BUYER agree to sign a mutual release. If
156 BUYER elects to terminate this Agreement based upon newly discovered material latent defects in the Property, then BUYER
157 shall provide a copy of the written inspection report to SELLER and both parties agree to promptly sign a mutual release. Upon
158 signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to BUYER and the parties and
159 the brokers and agents involved in this Agreement shall have no further liability to one another.
160
161 The parties may agree in writing to extend dates for inspections, repairs, or the deadline for exercising their right to terminate the
162 Agreement. SELLER shall provide reasonable access to the Property for review of any repairs made by SELLER.
163
164 Yes No
165 ☐ ☑ **PEST/WOOD DESTROYING INSECTS:** An inspection of all structures on the Property shall be made by a
166 professional inspector or exterminating agency of ☐ BUYER'S or ☐ SELLER'S choice at ☐ BUYER'S ☐ SELLER'S expense and
167 such agency's written report shall be made available to BUYER before closing. If such report shows existing infestation or damage
168 by pests, termites or wood destroying insects, treatment of the condition shall be made by a licensed exterminating agency which
169 shall furnish a certificate of guarantee for a period of at least one year in the case of termites and a certificate of guarantee for a
170 period of at least sixty (60) days in the case of wood destroying insects. All repairs and treatment expense shall be paid by ☐
171 BUYER ☐ SELLER (unless FHA/VA regulations prohibit payment by BUYER, in which case SELLER shall pay the cost.) This
172 Agreement may be terminated by the party paying for the repair and treatment if the cost exceeds $500.00.
173
174 Yes No
175 ☐ ☑ **LEAD BASED PAINT:** BUYER shall have the right to have a risk assessment or inspection of the Property by
176 a qualified inspector, for the presence of lead-based paint and/or lead based paint hazards at BUYER'S expense within ten (10)
177 days after formation of a binding AGREEMENT. **See EPA pamphlet "Protect Your Family from Lead in Your Home" for**
178 **important information.** In the event existing deficiencies or corrections are identified by the inspector in a written report, then
179 BUYER shall have the right to terminate the Agreement or request that SELLER repair the specific existing deficiencies noted on
180 the written inspection report. In that event, BUYER agrees to immediately provide SELLER with a copy of the written inspection
181 and/or risk assessment report. Upon receipt of the inspection report and BUYER'S request of repairs, SELLER will have the
182 option to either agree to correct the deficiencies identified in the inspector's written report or decline to do any repairs. If SELLER

**Exhibit 1**
**Page 3 of 11**

dotloop signature verification: dtlp.us/W3I1-zSN3-v68
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D



183  elects to correct the deficiencies, SELLER agrees to provide to BUYER prior to title transfer with a certificate from a qualified risk
184  assessor or inspector demonstrating that the deficiencies have been remedied. If SELLER declines to correct the deficiencies,
185  BUYER may elect to terminate the Agreement or accept the Property in its "AS IS" condition.  BUYER may remove this right of
186  inspection at any time without SELLER'S consent.
187
188  BUYER ☑ has _____ BUYER'S initials) received a copy of the EPA pamphlet entitled "PROTECT YOUR FAMILY FROM
189  LEAD IN YOUR HOME" and a copy of the "DISCLOSURE ON LEAD-BASED PAINT AND/OR LEAD BASED PAINT HAZARDS."
190
191  BUYER ☐ HAS NOT _____ (BUYER'S initials) received a copy of the EPA pamphlet entitled "PROTECT YOUR FAMILY
192  FROM LEAD IN YOUR HOME" and a copy of the "DISCLOSURE ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT
193  HAZARDS (disclosure form)." This offer is subject to the SELLER completing the disclosure form and BUYER'S review and
194  approval of the information contained on the disclosure form within _____ days from receipt.
195
196  **MEGAN'S LAW:**  SELLER represents that SELLER has disclosed to BUYER all notices received from the local sheriff pursuant
197  to Ohio's sex offender notification law.  BUYER acknowledges that such information may no longer be accurate and agrees to
198  inquire directly with the local sheriff's office or the Ohio Attorney General's office about sex offender registration.
199
200  **CONDITION OF PROPERTY:** BUYER has examined the Property and agrees that the Property is being purchased in its **"AS
201  IS" PRESENT PHYSICAL CONDITION,** including any latent defects and defects disclosed by the SELLER on the State of Ohio
202  Residential Property Disclosure Form. SELLER agrees to notify BUYER in writing of any additional defects or disclosure items
203  that arise between the date of Acceptance and the date of recording of the deed.
204
205  BUYER ☑ HAS _____ (BUYER'S initials) received SELLER's Ohio Residential Property Disclosure Form prior to
206  signing this offer.
207
208  BUYER ☐ HAS NOT _____ (BUYER'S initials) received SELLER's Ohio Residential Property Disclosure Form and
209  this offer is subject to BUYER'S review and approval of SELLER's Ohio Residential Property Disclosure Form within _____
210  days from BUYER'S receipt.
211
212  SELLER shall pay all costs for the repair of any gas line leak found between the street and foundation at the time of transfer of
213  utilities. SELLER shall comply with any and all governmental point of sale laws and/or ordinances. SELLER represents that
214  SELLER has not received any notices from government agencies about building code and/or health and safety violations except
215  as disclosed by SELLER.  If applicable, BUYER and SELLER shall have 3 _____ days after receipt by BUYER of all notices to
216  agree in writing which party will be responsible for the correction of any building code or health violation(s). If BUYER and SELLER
217  cannot agree in writing in that time period, this Agreement may be declared null and void by either party.
218
219  **REPRESENTATIONS AND DISCLAIMERS:**  The parties agree that SELLER has completed the Ohio Residential Property
220  Disclosure Form and otherwise disclosed all about material conditions and defects affecting the Property.  The parties hereby
221  agree to release and to indemnify and hold the Broker(s) and their agents harmless from any and all claims, actions, injuries or
222  damages relating to the Property, including any misrepresentations or omissions of SELLER.  BUYER acknowledges and agrees
223  that the Broker(s) and agents do not verify or investigate SELLER'S disclosures, including those made on the Ohio Residential
224  Property Disclosure.  BUYER has not relied on any verbal or written representation of any broker or agent about the Property,
225  including without limitation its features, characteristics, improvements, fitness, use, value, or condition, square footage, zoning,
226  lot dimensions, mold, structure, soils, homeowners' fees, public and private assessments, utilities, taxes, or special assessments
227  except as listed below:  (BUYER must specify:)
228
229  _____
230
231  **DAMAGE:** If improvements to the Property are destroyed or damaged in excess of ten percent (10%) of the purchase price
232  before title  transfer, then BUYER may either accept the insurance proceeds for said damage and complete this transaction or
233  terminate this Agreement and receive the return of all deposits made. If such damage is less than ten percent of the purchase
234  price, then SELLER shall restore the Property to its prior condition.
235
236  **BINDING AGREEMENT:**  For purposes of this Agreement, "Days" shall be defined as calendar days. "Acceptance" shall occur
237  when the latter of the parties signs this Agreement without making material change and then delivers either written or verbal
238  notice of such signature(s) to the other party or that party's agent.  It is agreed and understood that the brokers and agents in
239  this transaction do not have authority to bind buyer or seller to the purchase or sale of the Property. Upon Acceptance, this offer
240  and all attachments and addenda, shall become an Agreement binding on the parties, their heirs, executors, administrators, and
241  assigns.  The terms, covenants, conditions, and provisions of this Agreement to be performed by SELLER shall survive delivery
242  and recording of the Deed. THIS IS A LEGALLY BINDING AGREEMENT.  PARTIES SHOULD DIRECT QUESTIONS ABOUT
243  IT TO THEIR INDEPENDENT LEGAL COUNSEL.
244
245  **ADDENDA AND RELATED DOCUMENTS:** ☑ State of Ohio Agency Disclosure Form ☑ Ohio Residential Property Disclosure
246  ☐ VA Financing Addendum ☐ FHA Financing Addendum ☐ FHA Notice "For Your Protection, Get a Home Inspection"

**Exhibit 1**
**Page 4 of 11**

dotloop signature verification: dtlp.us/W3t-zSN3-s6I8
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

247 ☐Condominium Addendum ☐House Sale Contingency Addendum ☐House Sale Concurrency Addendum ☑Lead Based Paint
248 Addendum
249 ☐Other _____
250 **The terms and conditions of any addenda supersede any conflicting terms of the Agreement.**
251
252
253 [signature] bar02030@gmail.com
254 **(BUYER)**          **Date**          **(ADDRESS AND ZIP CODE)**                    **(E-MAIL ADDRESS)**
255
256
257 [signature]
258 **(BUYER)**          **Date**          **(TELEPHONE)**                              **(E-MAIL ADDRESS)**
259
260 **EARNEST MONEY DEPOSIT RECEIPT:** In the event that BUYER is not making Earnest Money deposit directly to Escrow
261 Agent, receipt is hereby acknowledged of a ☐check payable to Escrow Agent for the earnest money; (OR) ☐note for Earnest
262 Money.
263
264 By: Lynne Bowman          Office: Keller Williams Citywide          Phone: 440.892.2211
265
266 **ACCEPTANCE:** SELLER accepts the above offer and irrevocably instructs the Escrow Agent to pay from SELLER'S proceeds
267 a commission of per listing _____ percent ( 2 _____%) of the purchase price to
268 Broker at (address) _____ and
269 2% _____ percent ( _____%) of the purchase price to
270 Keller Williams Citywide          (cooperating broker, if any, at the following address)
271 2001 Crocker Rd #200 Westlake OH 44145
272 Estate of Innings 150 Ul, debtor
273
274 **(SELLER)**          **Date**          **(ADDRESS AND ZIP CODE)**                    **(E-MAIL ADDRESS)**
275
276
277 **(SELLER)**          **Date**          **(TELEPHONE)**                              **(E-MAIL ADDRESS)**
278
279 *The following information is provided for multiple listing services use and will be completed by the Broker(s) or their agents and*
280 *is not part of the terms of the Agreement.*
281
282 Violetta Varenkova
283
284 (Listing agent name)                                   (Listing agent license #)
285
286
287 (Listing broker name)                                  (Listing broker office #)
288 Greg Erlanger / The EZ Sales Team/Lynne Bowman          2004000516
289
290 (Selling agent name)                                   (Selling agent license #)
291 Crocker Realty Group, LLC dba Keller Williams Citywide          2847
292
293 Crocker Realty Group, LLC, dba Keller Williams CityWide          2006002465 (Selling broker office #)

**Exhibit 1**
**Page 5 of 11**



dotloop signature verification: dtlp.us/FHar-sp0i-stN6
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

# Acceptance/Invoice

**Contract Number:** _____

**America's Preferred** Home Warranty

**To obtain a contract number call: 1.800.648.5006**
America's Preferred Home Warranty | 5775 Ann Arbor Rd. | Jackson, MI 49201
Fax: 1.888.479.2652 | aphwoffice@aphw.com | aphw.com

**IMPORTANT: FOR SERVICE CALL: 1.800.648.5006.**
**NO PAYMENT OR REIMBURSEMENT FOR SERVICES PERFORMED WITHOUT PRIOR APPROVAL.**
*~ Please be sure to fill in all applicable areas of information. ~*

**Seller(s) Name(s)**
_____

Property Address Number & Street
10233 Loretta Ave

| City | State | County | Zip |
|------|-------|--------|-----|
| Cleveland | OH | Cuyahoga | 44111 |

Phone Number(s)
_____

Seller(s) E-mail(s)
_____

**Buyer(s) Name(s)**
Bar Avisar Soli LLC

Phone Number(s)
_____

Buyer(s) E-mail(s)
bar02030@gmail.com

**Real Estate Office**
Keller Williams Citywide

Address
2001 Crocker Rd, Suite 200

| City | State | Zip |
|------|-------|-----|
| Westlake | OH | 44145 |

Phone Number          Fax Number
440-892-2211

**Real Estate Agent**          Agent's E-mail

Closing Date          Listing date
02/29/2024          01/24/2024

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BOTH PARTIES AGREE THAT THE OBLIGATIONS FOR REPAIR OR SERVICE UNDER THIS AGREEMENT ARE SOLELY THOSE OF THE SERVICE PROVIDER AND ARE NOT THE OBLIGATION OF ANY REAL ESTATE FIRM. SEE ADDITIONAL TERMS AND CONDITIONS ON THE FOLLOWING PAGES (7-11).

SELLER AND BUYER ACKNOWLEDGE BY SIGNATURE OR PAYMENT THAT HE OR SHE HAS READ, UNDERSTANDS AND ACCEPTS THIS REAL ESTATE HOME WARRANTY AGREEMENT, INCLUDING ALL SERVICE AGREEMENT TERMS AND CONDITIONS.

Seller(s) Signature(s)  X_____  Date _____

X_____  Date _____

Buyer(s) Signature(s) X_____

X_____

**WAIVER**
Applicant has reviewed the Real Estate Home Warranty Agreement and hereby declines coverage. Applicant agrees to hold the real estate broker and agent harmless in the event of a significant mechanical failure which otherwise would have been covered under the Real Estate Home Warranty Agreement.

Seller(s) Signature(s)  X_____  Date _____

Buyer(s) Signature(s) X_____

*Bar Avisar FBO Bar Avisar Soli, LLC*
dotloop verified
02/02/24 8:02 PM IST
0XSJ-AB2G-UDEU-AMKW

2 of 12 - APHWBP499A

### HOUSING TYPE (Please Check One)

☐ Single/Family          ☐ Condo/Townhouse
☐ Duplex (2 warranties)  ☐ Triplex (3 warranties)
☐ Fourplex (4 warranties) ☐ New Home Construction
☐ Manufactured Home  Year Manufactured: _____
☐ Foreclosed/Repossessed Home**
**See Terms and Conditions "General #9"*

### PLAN OPTIONS (Please Check One)

☐ **Buyer's Premier Coverage Plan - One Year** ...... $695
*25 Standard Coverage Items + 12 Buyer Preferred Upgrade Items + $50 Deductible*

**Single Family Plans**
☐ One Year:  $100 Deductible ................................. $499
☐ One Year:  $50 Deductible ................................... $535
☐ Two Years: $100 Deductible ................................ $950

**Condo/Townhouse Plans**
☐ One Year:  $75 Deductible ................................... $475
☐ Two Years: $75 Deductible ................................... $899

**New Construction Plan for Buyers**
☐ Three Years: $75 Deductible ............................... $600
*Coverage begins 366 days after closing and continues for three years.*

**Multi-Family Unit Plans ($75 Deductible)**
☐ One Year: Duplex (2 warranty agreements) ....... $950
☐ One Year: Triplex (3 warranty agreements) .... $1,250
☐ One Year: Fourplex (4 warranty agreements).. $1,599

### BUYER COVERAGE OPTIONS (Check All That Apply)

☐ Buyer Preferred Upgrade ...$160 x ____ yrs. = $_____
*Important: If the Buyer Preferred Upgrade has been selected and the property is a multiple family dwelling, the upgrade package must be purchased for each unit.*

☐ Additional Refrigerators ........$50 x  yrs. = $
☐ Gas Fireplace ...........................$50 x  yrs. = $
☐ Inground Pool/Spa ...............$185 x  yrs. = $
☐ Premium/
Salt Water Pool/Spa ........$345 x  yrs. = $
☐ Sprinkler System...................$50 x  yrs. = $
☐ Termite Control.....................$50 x  yrs. = $
☐ Water Softener......................$85 x ____ yrs. = $

### SELLER'S COVERAGE

☐ **Seller Preferred Upgrade** ................................. $100

### HOME ENTERTAINMENT & TECHNOLOGY PLAN

☐ $75 Deductible......................$199 x ____ yrs. = $_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Plan Cost(s) ...............................  $ _____
Option Cost(s)...........................  $ _____
**Total**.............................................  $ _____

**PLEASE REMIT PAYMENT TO:**
**AMERICA'S PREFERRED HOME WARRANTY**
PO BOX 772150 | DETROIT, MI 48277-2150

**SUBMIT**

**Exhibit 1**
**Page 6 of 11**

dotloop signature verification: dtlp.us/uWsr-fFT9-xkF7
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

# Residential Property Disclosure Exemption Form

Property Address: See Exhibit "A"
_____

Sellers Name: Estate of Innings 150 LLC, debtor
_____

Ohio law requires owners of residential real estate (1-4 family) to complete and provide to the buyer a Residential Property Disclosure Form disclosing certain conditions and information concerning the property known by the owner. The Residential Property Disclosure Form requirement applies to most, but not all, transfers or sales of residential property.

Listed below are the most common transfers that are exempt from the Residential Property Disclosure Form requirement. The owner states that the exemption marked below is a true and accurate statement regarding the proposed transfer:

- ☒ A transfer pursuant to a court order, such as probate or bankruptcy court;
- ○ A transfer by a lender who has acquired the property by deed in lieu of foreclosure;
- ○ A transfer by an executor, a guardian, a conservator, or a trustee;
- ○ A transfer of new construction that has never been lived in;
- ○ A transfer to a buyer who has lived in the property for at least one year immediately prior to the sale;
- ○ A transfer from an owner who both has inherited the property and has not lived in the property within one year immediately prior to the sale;
- ○ A transfer where either the owner or buyer is a government entity.

## SELLERS CERTIFICATION

By signing below, I state that the proposed transfer is exempt from the Residential Property Disclosure Form requirement.

Seller: _Estate of Innings 150 LLC, debtor_    Date: 1/19/2024
DocuSigned by:
D3667D42898B4BA...

Seller: _____    Date: _____

## BUYER'S ACKNOWLEDGEMENT

Potential buyers are encouraged to carefully inspect the property and to have the property professionally inspected. Buyer acknowledges that the buyer has read and received a copy of this form.

Buyer: _Bar Avisar OBO Bar Avisar Soli LLC_    Date: _____
dotloop verified
02/04/24 9:37 PM IST
GXDF-1CVI-WXYD-MC16

Buyer: _____    Date: _____

Exhibit 1
Page 7 of 11

dotloop signature verification: dtlp.us/Yp2K-E0zj-FZun
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

Page 1 of 2

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT
### Keller Williams® Citywide

To: _Bar Avisar Soli LLC_
From: Keller Williams® Citywide
Property Address: _10233 Loretta Ave, Cleveland, OH 44111_
Date: _____

This is to give you notice that Keller Williams® Citywide has/have a business relationship with Venture Land Title Agency, LLC. Keller Williams® Citywide is/are equity owners of Venture Land Title Investors IV, LLC. Venture Land Title Investors IV, LLC owns 49% of Venture Land Title Agency, LLC. Because of this relationship, this referral may provide Keller Williams® Citywide a financial or other benefit.

In addition, Venture Title Holdings, LLC owns 51% of Venture Land Title Agency, LLC. The owners of Chicago Title Agency of Northeast Ohio, Inc., Lawyers Title Agency of Chardon and Ohio Real Title Agency, LLC have ownership in Venture Title Holdings, LLC. Chicago Title Agency of Northeast Ohio, Inc., Lawyers Title Agency of Chardon and Ohio Real Title Agency, LLC will provide settlement services in conjunction with the services performed by Venture Land Title Agency, LLC. Because of the relationship between Chicago Title Agency of Northeast Ohio, Inc., Lawyers Title Agency of Chardon and Ohio Real Title Agency, LLC and Venture Land Title Agency, LLC, this referral may provide Chicago Title Agency of Northeast Ohio, Inc., Lawyers Title Agency of Chardon, or Ohio Real Title Agency, LLC a financial or other benefit.

Further, this is to give you notice that Keller Williams® Citywide and many of its principals, have a business relationship with Realty Insurance Agency ("RIA"). These principals of Keller Williams® Citywide indirectly own 20.6% of RIA. Because of this relationship, this referral may provide Keller Williams® Citywide and its principals a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

Exhibit 1
Page 8 of 11

dotloop signature verification: dtlp.us/Yp2K-E0zI-F2un
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

Page 2 of 2

**Realty Insurance Agency, LLC:**

Insurance premiums vary with the amount of coverage.  Policies for homes from $50,000 to $250,000 range from $200.00 to $1000.00.

**Venture Land Title Agency, LLC:**

| | |
|---|---|
| Title insurance premium: | As filed with the State of Ohio |
| Title examination fee: | $295.00 to $395.00 |
| Title Commitment fee: | $100.00 |

ACKNOWLEDGMENT

I/we have read this disclosure form and understand that Keller Williams® Citywide is/are referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

| | | | |
|---|---|---|---|
| *Bar Avisar OBO Bar Avisar Soli, LLC* | dotloop verified 02/02/24 8:01 PM IST TVKR-QNEJ-GVQB-AORW | DocuSigned by: *Estate of Innings 150/LLC; debtor* | |
| Buyer/Borrower | Date | Seller | Date |

| | | | |
|---|---|---|---|
| | | | |
| Buyer/Borrower | Date | Seller | Date |

**Exhibit 1**
**Page 9 of 11**

dotloop signature verification: dtlp.us/L0B3-xRSL-jDs0
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D





# AGENCY DISCLOSURE STATEMENT

**The real estate agent who is providing you with this form is required to do so by Ohio law.  You will not be bound to pay the agent or the agent's brokerage by merely signing this form.**  Instead, the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below.  (For purposes of this form, the term "seller" includes a landlord and the term "buyer" includes a tenant.)

Property Address: 10233 Loretta Ave, Cleveland, OH 44111

Buyer(s): Bar Avisar Soli LLC

Seller(s): _____

### I. TRANSACTION INVOLVING TWO AGENTS IN TWO DIFFERENT BROKERAGES

The buyer will be represented by Mike Zinicola, Gregory Erlanger & Lynne Bowman, and Keller Williams Citywide
AGENT(S)                        BROKERAGE

The seller will be represented by Violetta Varenkova, and _____.
AGENT(S)                        BROKERAGE

### II. TRANSACTION INVOLVING TWO AGENTS IN THE SAME BROKERAGE

If two agents in the real estate brokerage _____
represent both the buyer and the seller, check the following relationship that will apply:

☐  Agent(s)_____ work(s) for the buyer and
   Agent(s)_____ work(s) for the seller.  Unless personally involved in the transaction, the principal broker and managers will be "dual agents," which is further explained on the back of this form.  As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.

☐  Every agent in the brokerage represents every "client" of the brokerage.  Therefore, agents _____
   and _____ will be working for both the buyer and seller as "dual agents."  Dual agency is explained on the back of this form.  As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.  Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller.  *If such a relationship does exist, explain:*
   _____.

### III. TRANSACTION INVOLVING ONLY ONE REAL ESTATE AGENT

Agent(s) _____ and real estate brokerage _____ will

☐  be "dual agents" representing both parties in this transaction in a neutral capacity.  Dual agency is further explained on the back of this form.  As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.  Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller.  *If such a relationship does exist, explain*: _____
   _____.

☐  represent only the (*check one*) ☐**seller** or ☐**buyer** in this transaction as a client.  The other party is not represented and agrees to represent his/her own best interest.  Any information provided the agent may be disclosed to the agent's client.

### CONSENT

I (we) consent to the above relationships as we enter into this real estate transaction.  If there is a dual agency in this transaction, I (we) acknowledge reading the information regarding dual agency explained on the back of this form.

| | |
|---|---|
| *Bar Avisar OBO Bar Avisar Soli LLC* | *Estate of Innings ISO LLC, debtor*  12/28/2024 |
| BUYER/TENANT      DATE | SELLER/LANDLORD      DATE |
| | |
| BUYER/TENANT      DATE | SELLER/LANDLORD      DATE |

dotloop signature verification: dtlp.us/5Wor-2ITO-Uxku
DocuSign Envelope ID: E4E93C16-5129-48D3-BCE3-364B8822677D

## ADDENDUM: A _____

This is an Addendum to the Purchase Agreement dated __02/02/2024__
for the purchase and sale of the Property known as:
(Street Address) 10233 Loretta Ave
(City) Cleveland _____, Ohio (Zip Code) 44111 _____
between Bar Avisar Soli LLC _____ (Buyer) and
_____ (Seller).

The following is hereby mutually agreed upon by said Buyer(s) and Seller(s):

*1.  Any dispute between the parties shall be within the exclusive jurisdiction of and decided by the US Bankruptcy Court, District of Oregon.*

*2.  The sale is subject to bankruptcy court approval and shall close immediately thereafter. Bankruptcy court approval requires notice to creditors and interested parties of the terms and conditions of Buyer's offer and an opportunity for interested parties to object or submit upset bids. If an upset bid is received, Buyer will have an opportunity to bid further. In addition, bankruptcy court approval may require the consent of junior lienholders, if any, to accept less than full payment of their liens*

*3.  Upon closing the Trustee will execute and deliver to the Buyer a Trustee's Deed in the form attached hereto.*

*4.   The Seller shall be Kenneth S. Eiler, as Trustee for the Estate of Innings 150 LLC, debtor, bankruptcy case no.: 23-32634-dwh7.*

| | | |
|---|---|---|
| *Bar Avisar OBO Bar Avisar Soli, LLC* dotloop verified 02/15/24 7:42 PM IST AXBP-CKJQ-PZZ7-ICUZ | Estate of Innings 150 LLC, debtor DocuSigned by: B3607B12898B4BA | 2/19/2024 |
| BUYER | DATE | SELLER | DATE |
| | | | |
| BUYER | DATE | SELLER | DATE |

Page 1 of 1          Addendum          NEOHREX 03/10

**Exhibit 1
Page 11 of 11**

dotloop signature verification: dtlp.us/PT6O-DR2r-ltL5
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59



# AGENCY DISCLOSURE STATEMENT



**EQUAL HOUSING OPPORTUNITY**

**The real estate agent who is providing you with this form is required to do so by Ohio law. You will not be bound to pay the agent or the agent's brokerage by merely signing this form.** Instead, the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below. (For purposes of this form, the term "seller" includes a landlord and the term "buyer" includes a tenant.)

Property Address: 12010 Longmead Ave, Cleveland, OH 44135

Buyer(s): G & A Next Realty, LLC

Seller(s): Estate of Innings 150 LLC

## I. TRANSACTION INVOLVING TWO AGENTS IN TWO DIFFERENT BROKERAGES

The buyer will be represented by The Caple-Henderson Team_____, and Howard Hanna Real Estate Services .
<span style="font-size:smaller">                                     AGENT(S)                             BROKERAGE</span>

The seller will be represented by Violetta Varenkova_____, and IIP Management, LLC. .
<span style="font-size:smaller">                                       AGENT(S)                             BROKERAGE</span>

## II. TRANSACTION INVOLVING TWO AGENTS IN THE SAME BROKERAGE

If two agents in the real estate brokerage _____
represent both the buyer and the seller, check the following relationship that will apply:

☐ Agent(s)_____ work(s) for the buyer and
Agent(s)_____ work(s) for the seller. Unless personally involved in the transaction, the principal broker and managers will be "dual agents," which is further explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.

☐ Every agent in the brokerage represents every "client" of the brokerage. Therefore, agents _____ and _____ will be working for both the buyer and seller as "dual agents." Dual agency is explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain:*
_____.

## III. TRANSACTION INVOLVING ONLY ONE REAL ESTATE AGENT

Agent(s) _____ and real estate brokerage _____ will

☐ be "dual agents" representing both parties in this transaction in a neutral capacity. Dual agency is further explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain*: _____

☐ represent only the (*check one*) ☐ **seller** or ☐ **buyer** in this transaction as a client. The other party is not represented and agrees to represent his/her own best interest. Any information provided the agent may be disclosed to the agent's client.

## CONSENT

I (we) consent to the above relationships as we enter into this real estate transaction. If there is a dual agency in this transaction, I (we) acknowledge reading the information regarding dual agency explained on the back of this form. 2/19/2024

| | |
|---|---|
| *Andrei Savin de Rever* | *Estate of Innings 150 LLC, debtor* |
| BUYER/TENANT     DATE | SELLER/LANDLORD     DATE |
| *Gaya Ben Simon* | B360?B12B9BB4BA... |
| BUYER/TENANT     DATE | SELLER/LANDLORD     DATE |

        Effective 02/10/19

**Exhibit 2**
**Page 1 of 11**

dotloop signature verification: dtlp.us/KOVu-a35R-4NLS
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59



# PURCHASE AGREEMENT
# OFFER, RECEIPT AND ACCEPTANCE



1  **BUYER:** G & A Next Realty, LLC _____ offers to buy the

2  **PROPERTY:** located at 12010 Longmead Ave _____,

3  City Cleveland _____, Ohio, Zip 44135    Permanent Parcel No(s). 02011048

4  The property, which BUYER has examined and accepts in its "AS IS" PRESENT PHYSICAL CONDITION except for
5  normal wear and tear, shall include the land, all appurtenant rights, privileges and easements, and all buildings and
6  fixtures, including such of the following as are now on the property: all landscaping, electrical, heating, plumbing and
7  bathroom fixtures, ceiling fans; central air conditioning systems; all window and door shades, blinds, awnings, screens,
8  storm windows, curtain rods and drapery hardware; garbage disposal, TV antenna, rotor and control unit; radiator covers,
9  smoke detectors, garage door opener(s) and _____ controls; all attached wall-to-wall carpeting. The following selected
10 items shall also remain: ☐ satellite dish; ☐ countertop range; ☐ range; ☐ wall oven;
11 ☐ microwave; ☐ kitchen refrigerator; ☐ second refrigerator; ☐ dishwasher; ☐ washer; ☐ dryer; ☐ window air
12 conditioner(s); ☐ through the wall air conditioners; ☐ gas grill; ☐ fireplace tools; ☐ screen, ☐ glass doors and
13 ☐ grate; ☐ all existing window treatments; ☐ ceiling fan(s); ☐ wood burner stove inserts; ☐ gas logs; and
14 ☐ water softener (do not check if leased); ☐ humidifier; ☐ dehumidifier; ☐ security system; ☐ freezer;
15 ☐ indoor grill; ☐ mailbox and ☐ invisible fence, transmitter, _____ collar(s).

16 Additional Items to be included: _____
17

18 Items Excluded: _____
19

20 **SECONDARY OFFER:** This ☐ is ☑ is not a secondary offer. This secondary offer, if applicable, shall become a
21 primary contract upon BUYER'S receipt of a signed copy of the release of the primary contract on or before
22 NA _____(Date). BUYER shall have the right to terminate this secondary offer at any time prior
23 to BUYER'S receipt of said copy of the release of the primary contract by delivering written notice to the
24 SELLER or the SELLER'S agent. Upon receipt of the release of the primary contract, BUYER shall deposit earnest money
25 within four (4) days and BUYER and SELLER agree to sign an addendum listing the date for loan application, loan
26 approval, deposit of funds and documents, title transfer and possession.

27 **PRICE:** BUYER shall pay the sum of ........................................  $ 82,000.0
28 Payable as follows:

29 **Earnest money** in the form of a check, paid to/deposited with (check one)
30 ☐ Listing Broker   ☐ Buyers' Broker or  ☑ Title Company - After Inspection
31 and credited against the purchase price ................................  $ 2,000.00
32 The check shall be deposited immediately upon acceptance
33 of a binding Agreement as defined below on lines 263-272

34 **Additional Funds** to be deposited in escrow  ...........................  $ 80,000.00

35 BUYER ☑ will ☐ will not (check one) meet down payment requirement
36 in cash, without regard to the sale and/or closing of any other real property

37 **Mortgage** loan to be obtained by BUYER .............................  $ NA
38 ☐ CONVENTIONAL,  ☐ FHA,  ☐ VA  ☐ OTHER This is a CASH transaction
39

40 **FINANCING:** This transaction is conditioned upon BUYER obtaining a commitment for a first mortgage loan (the "Loan") from
41 Howard Hanna Mortgage Services or such other lending institution chosen by BUYER in the amount set forth above, or in
42 a lesser amount acceptable to BUYER. BUYER agrees to apply in writing for the Loan and order the appraisal within
43 NA days after the date of acceptance, to cooperate fully with the lender's requests for information and to use good faith efforts
44 to obtain the Loan and shall obtain a commitment for the Loan on or before Not Applicable . If, despite
45 BUYER'S good faith efforts, a loan commitment has not been obtained, then this Agreement shall be null and void.    Upon signing
46 of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to the BUYER without any further
47 liability of either party to the other or to the Brokers and their agents. If this is a secondary offer, BUYER shall not be

Purchase Agreement  6/1/2023
Page 1 of 6


2/19/2024
SELLERS' INITIALS AND DATE


BUYERS' INITIALS AND DATE

**Exhibit 2**
**Page 2 of 11**

dotloop signature verification: dtlp.us/KOVu-a35R-4NLS
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

Property Address: __12010 Longmead Ave, Cleveland, OH 44135__

48   obligated to make a loan application until after BUYER'S offer becomes the primary contract.

49   **CLOSING:** All documents and funds necessary to complete this transaction shall be placed in escrow with   BUYER'S
50   lending institution or a title company on or before __03/25/2024__, and the deed shall be recorded on   or
51   about __03/26/2024__, except that if a defect in title appears, SELLER shall have thirty (30)   days
52   after notice from BUYER to remove such defect and, if unable to do so, BUYER may either (1) accept title subject to such
53   defect without any reduction in the purchase price or (2) terminate this Agreement, in which case neither BUYER,
54   SELLER nor any REALTOR(S)® shall have any further liability to each other, and both BUYER and SELLER agree to sign
55   a mutual release, whereupon the earnest money shall be returned to BUYER.

56   **POSSESSION:** SELLER shall deliver possession and occupancy to BUYER on or before __5:30__ (time) ☐ a.m. ☑ p.m.
57   __-0-__ day(s) after recording of the deed or __Title Transfer__, whichever is later. Subject to BUYER'S rights, if any, the
58   premises may be occupied by the SELLER  free for __NA__ ( __NA__ ) days and an  additional __NA__
59   ( __NA__ ) days at a rate of $ __NA__ per day provided, however, that under no circumstances shall SELLER  occupy
60   Premises beyond __NA__ (date). Payment and collection of fees for use and occupancy after transfer of title
61   are the sole responsibility of SELLER and BUYER and not of the real estate agents or broker involved in the sale.

62   **TITLE:**  SELLER shall convey a marketable title to BUYER by general warranty deed and/or fiduciary deed, if
63   required, with dower rights released, free and clear of all liens and encumbrances whatsoever, except a) any
64   mortgage assumed by  BUYER, b)  such restrictions, conditions, easements (however created), including     without
65   limitation subsurface rights, and encroachments, which do not materially adversely affect the use or value of the
66   property, c) zoning ordinances, if any, and d) taxes and assessments, both general and special, not yet due and
67   payable. BUYER is encouraged to obtain an Owner's Title Insurance Policy ("OTIP"). An OTIP is different from a
68   lender's title insurance policy, which will not protect the BUYER from claims and challenges on the title. Seller
69   shall furnish an OTIP from ~~Eric Title or~~ Guardian Title Agency _____ as agreed to by the parties, in an amount of the
   purchase price.

70   **LIMITED HOME WARRANTY:** Home Warranties DO NOT COVER PRE-EXISTING DEFECTS in the property nor  does
71   the existence of a warranty preclude the advisability of professional inspection(s). BUYER ☐ does elect ☑ does not elect
72   (*MARK THE APPROPRIATE BOX*) to secure a Home Warranty Plan issued by Home Security of America, Inc. The cost of
73   $ __NA__ shall be paid by ☐ SELLER ☐ BUYER through escrow.

74   **PRORATIONS:**  General taxes, annual maintenance fees, subdivision charges, special assessments, city and   county
75   charges and tenant's rents shall be prorated as of the date of the title transfer. Taxes and assessments shall be prorated
76   based upon the latest available tax duplicate. However, if the tax duplicate is not yet available or the improved land is
77   currently valued as land only, taxes and assessments shall be prorated based upon 35% of the selling price times   the
78   millage rate. The escrow agent is instructed to contact the local governmental taxing authority, verify the correct tax value
79   of the property as of the date of title transfer and pay the current taxes due to the date of the title transfer. If the property
80   being transferred is new construction and recently completed or in the process of completion at the time the AGREEMENT
81   was signed by the parties, the escrow agent is instructed to make a good faith estimate of the taxes to be owed on  the
82   value of the improved property to the date of title transfer and reserve sufficient funds in escrow from SELLER'S net
83   proceeds to pay those taxes when they become due and payable after title transfer. The escrow agent is instructed   to
84   release the balance, if any, of the funds on reserve, once it receives notice from the local county auditor that the taxes on
85   the land and improvements have been paid in full to the date of title transfer. BUYER acknowledges that the latest
86   available tax duplicate may not accurately reflect the amount of taxes and assessments that will be owed. SELLER agrees
87   to reimburse BUYER directly outside of escrow for any increase in valuation and the cost of all passed or levied, but not yet
88   certified, taxes and assessments, if any, prorated to the date of title transfer. SELLER is not aware of any proposed taxes
89   or assessments, public or private, except the following:_____.

90   In  the  event  the  property  shall  be  deemed  subject  to  any  agricultural  tax  recoupment  (C.A.U.V.),  then
91   ☐ BUYER  ☑ SELLER agrees to pay the amount of such recoupment.

92   **CHARGES/ESCROW INSTRUCTIONS:** This  AGREEMENT  shall  be  used  as  escrow  instructions  subject  to  the
93   Escrow Agent's usual conditions of acceptance. If there is any conflict between the escrow agent's usual conditions   of
94   acceptance and this Agreement, the terms of this Agreement shall prevail.

95   **SELLER shall pay** the following costs through escrow: a) any governmental conveyance fee or transfer tax; b) any
96   amount required to discharge any mortgage, lien or encumbrance not assumed by BUYER and to record the cancellation
97   thereof; c) title exam and one half the cost of insuring premium for Owners Fee Policy of Title Insurance; d) deed prepara
98   tion costs; e) prorations due BUYER; f) real estate brokerage commissions as described in lines 301–303 below; and g)
99   one-half of the escrow fee (unless VA/FHA regulations prohibit payment of escrow fees by BUYER, in which case
100  SELLER shall pay the entire escrow fee). SELLER shall pay directly all utility charges to the date of title transfer or
101  date of possession, whichever is later. The escrow agent shall withhold $ __200__ from the proceeds due SELLER
102  for the SELLER'S final water and sewer bills. Tenant security deposits, if any, shall be credited in escrow to the BUYER.

Purchase Agreement 6/1/2023
Page 2 of 6

__1/19/2024__
SELLERS' INITIALS AND DATE          _Ed_  _gas_  BUYERS' INITIALS AND DATE

**Exhibit 2
Page 3 of 11**

dotloop signature verification: dtlp.us/KOVu-a35R-4NLS
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

Property Address: 12010 Longmead Ave, Cleveland, OH 44135

103   **BUYER shall pay** the following through escrow: a) one-half of the escrow fee (unless prohibited by VA/FHA
104   regulations); b) one-half the cost of insuring premiums for Owners Fee Policy of Title Insurance; c) all recording fees
105   for the deed and any mortgage, and d) a commission of $335.00 to Howard Hanna for brokerage services rendered
106   to the BUYER. BUYER shall secure new insurance on the property.

107   The cost of the home warranty plan, if any, shall be charged as shown in line 74 above.

108   ☐ The SELLER hereby authorizes and instructs the escrow agent to send a copy of the fully signed ALTA Settlement
109   Statement to the SELLER'S Broker listed on this Agreement promptly after closing.

110   ☑ The BUYER hereby authorizes and instructs the escrow agent to send a copy of the fully signed ALTA Settlement
111   Statement to BUYER'S Broker listed on this Agreement promptly after closing.

112   **INSPECTIONS:** BUYER shall have professional inspectors perform, at BUYER'S expense, the inspection(s) indicated
113   below. A professional is a person engaged full-time for profit in the business directly related to the inspection service
114   indicated. BUYER must indicate "yes" for each professional inspection desired and the number of days following the
115   date of Acceptance that BUYER has to conduct each inspection elected. BUYER assumes sole responsibility to select
116   and retain a professional inspector for each requested inspection and releases Broker of any and all liability regarding
117   the selection or retention of the inspector(s). If BUYER does not elect inspections, BUYER acknowledges that BUYER
118   is acting against the advice of BUYER'S agent and broker. BUYER understands that all real property and
119   improvements may contain defects and conditions that are not readily apparent and which may affect a property's use
120   or value. BUYER and SELLER agree that the Broker(s) and their agents do not guarantee and in no way assume
121   responsibility for the property's condition. BUYER acknowledges that it is BUYER'S own duty to exercise reasonable
122   care to inspect and make diligent inquiry of the SELLER or BUYER'S inspectors regarding the condition and systems
123   of the property.

124   **INSPECTIONS REQUIRED BY ANY STATE, COUNTY, LOCAL GOVERNMENT OR FHA/VA DO NOT**
125   **NECESSARILY ELIMINATE THE NEED FOR THE INSPECTIONS LISTED BELOW.**

126   **WAIVER:** _ICU_ _gps_ _(initials)_ BUYER elects to waive each professional inspection to which BUYER has not indicated
127   "YES." Any failure by BUYER to perform, within the time specified, any inspection indicated "YES" herein is a waiver of
128   such inspection and shall be deemed absolute acceptance of the property by BUYER in its "AS IS" condition.

129   **Choice**                           **Inspection**                       **Expense**

131   Yes   No                                                BUYER'S   SELLER'S

132   ☑   ☐   GENERAL HOME   _-7-_   days from acceptance of AGREEMENT   ☑   ☐
133   ☐   ☑   SEPTIC SYSTEM   _____ days from acceptance of AGREEMENT   ☐   ☐
134   ☐   ☑   WATER POTABILITY   _____ days from acceptance of AGREEMENT   ☐   ☐
135   ☐   ☑   WELL FLOW RATE   _____ days from acceptance of AGREEMENT   ☐   ☐
136   ☐   ☑   RADON .............   _____ days from acceptance of AGREEMENT   ☐   ☐
137   ☐   ☑   MOLD* ..............   _____ days from acceptance of AGREEMENT   ☐   ☐

138   *Buyer is advised to hire a professional inspector who is qualified to determine whether mold is present in the property, what
139   type of mold is present and to propose an appropriate treatment of any mold that is discovered. Both prior and current water
140   leaks and water damage to a property can result in the existence of mold which may cause adverse health effects.

141   ☑     OTHER _-8-_   days from acceptance of AGREEMENT   ☑   ☐
142   Any others deemed necessary by the General Home Inspector

143   Within three (3) days after completion of the last inspection, BUYER shall elect one of the following:

144   (A) Remove the inspection contingency and accept the property in its "AS IS" present physical condition.
145   If the property is accepted in its "AS IS" present physical condition, then BUYER agrees to sign an
146   _Amendment/Removal of Contingency_;

147   (B) Accept the property subject to SELLER agreeing to have specific material defects, that were either previously
148   disclosed in writing by the SELLER or identified in a written inspection report, repaired by a qualified
149   contractor in a professional manner at SELLER'S expense; BUYER agrees to provide SELLER with a
150   copy of all inspection reports and to sign an Amendment to Purchase Agreement removing the
151   inspection contingency and identifying those specific material defects which are to be repaired.
152   SELLER and BUYER shall have three (3) days from SELLER'S receipt of BUYER'S written request and
153   copies of inspection reports to agree in writing which material defect(s), if any, shall be corrected by SELLER
154   at SELLERS' expense. If BUYER and SELLER do not agree in writing within those three (3) days, then this
155   AGREEMENT shall be null and void, and SELLER and BUYER agree to sign a mutual release, whereupon

SELLERS' INITIALS AND DATE                  BUYERS' INITIALS AND DATE

2/19/2024

**Exhibit 2**
**Page 4 of 11**

dotloop signature verification: dtlp.us/KOVu-a35R-4NLS
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

Property Address: 12010 Longmead Ave, Cleveland, OH 44135

156  the earnest money shall be returned to BUYER. SELLER agrees to provide reasonable access to the  property
157  for BUYER to review any such material defects corrected by SELLER. For purposes of    this
158  AGREEMENT, "material defects" DO NOT include minor routine maintenance. **OR**

159  (C) Terminate this Agreement if BUYER'S written inspection report(s) or any other source(s) identify material
160  defects NOT previously disclosed in writing by SELLER. If BUYER elects to terminate, BUYER agrees
161  to provide a copy of the written inspection report(s) to SELLER, and both parties agree to promptly sign a
162  mutual release, whereupon the earnest money shall be returned to BUYER.

163  **Yes No**
164  ☐ ☑ **PEST/WOOD DESTROYING INSECTS:** An inspection of all structures on the property shall be made within
165  NA  days by a licensed inspection or exterminating agency of ☐BUYER'S or ☐SELLER'S choice at
166  ☐BUYER'S ☐SELLER'S expense and such agency's written report made available to the BUYER before closing. If such
167  report shows existing infestation or damage by pests, termites or other wood destroying insects, treatment of the condition
168  shall be made by a licensed exterminating agency which shall furnish a certificate of guarantee for a period of at least one
169  year in the case of termites and a certificate of guarantee for a period of at least 60 days in the case of wood destroying
170  insects. ALL REPAIRS AND TREATMENT COSTS SHALL BE PAID BY THE ☐BUYER OR ☐SELLER (unless
171  FHA/VA regulations prohibit payment of inspection and/or repair expenses by BUYER, in which case SELLER shall pay
172  suchcosts and/or repair expense). This agreement may be voided by either party, if the repair exceeds $500.00. In that
173  event, SELLER and BUYER agree to sign a mutual release whereupon the earnest money shall be returned to the BUYER.

174  **Yes No**
175  ☐ ☑ **LEAD-BASED PAINT:** BUYER shall have the right to have a risk assessment or inspection of    the
176  property by a professional inspector, for the presence of lead-based paint and/or lead-based paint hazards at
177  BUYER'S expense within NA  days after acceptance. (Intact lead-based paint that is in good condition is not
178  necessarily a hazard. See EPA pamphlet "*Protect Your Family From Lead In Your Home*" for more information.)
179  In the event existing deficiencies or corrections are identified by the inspector in their written report,    BUYER
180  shall have the right to terminate the AGREEMENT or request that the SELLER repair the specific    existing
181  deficiencies noted on the written inspection report. In that event, BUYER agrees to immediately provide SELLER with a
182  copy of the written inspection and/or risk assessment report. Upon receipt of the inspection report and BUYER'S
183  request for repairs, SELLER shall have the option to either agree to correct the deficiencies identified in    the
184  inspector's written report or decline to do any repairs. If SELLER elects to correct the deficiencies, SELLER agrees   to
185  provide to BUYER prior to Title Transfer a certificate from a qualified risk assessor or inspector demonstrating
186  that the deficiencies have been remedied. If the SELLER declines to correct the deficiencies, BUYER may elect to
187  terminate the AGREEMENT or accept the property in its "AS IS" condition. BUYER may remove this right of inspection
188  at any time without SELLER'S consent.

189  BUYER ☐HAS       (BUYER'S initials) ☑HAS NOT  [icl]  [grs] (BUYER'S initials) received a copy   of
190  the EPA pamphlet entitled "*PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME*" and a copy of the
191  "*DISCLOSURE ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS.*"

192  If BUYER has not received such pamphlet and disclosure, then this offer is subject to the SELLER completing
193  the disclosure form and BUYER'S review and approval of the information contained on the disclosure form  within _____
194  days from receipt.

195  The BUYER and SELLER can mutually agree IN WRITING to extend the dates for inspections, repairs, or to exercise  their
196  right to terminate the Agreement. SELLER agrees to provide reasonable access to the property for BUYER to review and
197  approve any conditions corrected by SELLER. If this is a secondary offer, the number of days specified for each of  the
198  inspections indicated in lines 132-142 shall from the date this becomes the primary contract and not from the date of
199  acceptance.

200  **MEGAN'S LAW:** SELLER represents that SELLER has disclosed to BUYER all notices received pursuant to Ohio's
201  sex offender law. The BUYER acknowledges that the information disclosed may no longer be accurate and assumes the
202  responsibility to check with the local sheriff's office for current, complete and accurate information. BUYER will rely   on
203  BUYER'S own inquiry with the local sheriff's office as to registered sex offenders in the area and will not rely on SELLER or
204  any real estate agent involved in the transaction to determine if a sex offender resides in the area of the property.

205  **CONDITION OF PROPERTY:** BUYER has examined the property and agrees that the property is being purchased in its
206  "AS IS" PRESENT PHYSICAL CONDITION including any defects disclosed by the SELLER on the State of Ohio *Residential*
207  *Property Disclosure Form*, identified by any inspections requested by either party or on any other forms or addenda made a
208  part of this Agreement or identified by any other source. SELLER warrants to BUYER that SELLER has completed  the
209  State of Ohio Residential Property Disclosure Form accurately and thoroughly and that no additional items of disclosure have
210  occurred since the SELLER'S completion of that form. SELLER agrees to notify BUYER in writing of any additional
211  disclosure items that arise between the date of acceptance and the date of recording of the deed. BUYER has not relied
212  upon any representations, warranties or statements about the property (including but not limited to its condition or use)

Purchase Agreement 6/1/2023
Page 4 of 6

ECPLD 2/19/2024
SELLERS' INITIALS AND DATE

[icl]  [grs]
BUYERS' INITIALS AND DATE

**Exhibit 2**
**Page 5 of 11**

dotloop signature verification: dtlp.us/KOVu-a35R-4NLS
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

Property Address: 12010 Longmead Ave, Cleveland, OH 44135

213  unless otherwise disclosed on this AGREEMENT or on the *Residential Property Disclosure Form*. BUYERS must
214  initial one of the following:

215  BUYER ☑HAS ___(BUYER'S initials), prior to signing this offer, received a copy of *the Residential*
216  *Property Disclosure Form* which was signed by SELLER on 01/19/2024 (date).

217  BUYER ☐HAS NOT _____(BUYER'S initials) received a copy of the *Residential Property Disclosure Form*.
218  This offer is subject to the SELLER completing the Residential Property Disclosure Form and BUYER'S review and
219  approval of the information contained on the disclosure form within NA days from receipt.

220  BUYER acknowledges that the SELLER completed the *Residential Property Disclosure Form* and agrees to hold the
221  Brokers and their agents harmless from any misstatements or errors made by the SELLER on that form. BUYER  also
222  acknowledges and agrees that the Brokers and their agents have no obligation to verify or investigate the information
223  provided by the SELLER on that form. BUYER hereby acknowledges that any representation by SELLER or the real
224  estate agent(s) regarding the square footage of the rooms or structures, the lot dimensions, homeowners' fees,  public
225  and private assessments, utility bills, taxes and special assessments are approximate and not guaranteed.

226  **Please list any and all verbal representations made by Brokers or their agents that you relied upon when**
227  **purchasing this property (if none, write "none").** NONE
228
229  SELLER agrees to leave the property in broom clean condition with all rubbish and personal items removed by closing.

230  SELLER shall pay all costs for the repair of any leak(s) in the water or gas main supply lines found between the street and
231  foundation at the time of transfer or restoration of utilities. SELLER agrees to comply with any and all local governmental
232  point of sale laws and/or ordinances. SELLER shall promptly provide BUYER with copies of any notices received  from
233  governmental agencies to inspect or correct any current building code or health violations. If applicable, BUYER and
234  SELLER shall have NA ( ) days after receipt by BUYER of all notices to agree in writing which party shall be
235  responsible for the correction of any building code or health violation(s). In the event BUYER and SELLER cannot agree in
236  writing, this AGREEMENT can be declared null and void by either party. In that event, SELLER and BUYER agree to sign a
237  mutual release with instruction to the Broker for disbursement of the earnest money on deposit.

238  **REPRESENTATIONS AND DISCLAIMERS:** BUYER acknowledges that BUYER is relying upon BUYER'S own
239  inspection and evaluation of the property, whether performed by BUYER or BUYER'S independent inspectors or contractors,
240  in determining the property's condition or fitness. BUYER understands that Howard Hanna and its agents do not warrant
241  the condition or systems of the property or guarantee that SELLER has disclosed all defects.

242  BUYER acknowledges that, except as specifically noted on lines 226-228 above, Howard Hanna and its agents have
243  not made any representations, warranties, or agreements, express or implied regarding the condition or use of
244  the property, including but not limited to any representation that: (a) the basement, crawl space, or slab area do not
245  incur seepage, leakage, dampness, or standing water; (b) the heating, cooling, plumbing, or electrical system(s) or
246  any built-in appliance is in good working condition or is completely functional; (c) the roof is weather tight and/or
247  structurally sound; (d) the structure is free from insect infestation, lead paint, or lead paint hazards; (e) the water
248  supply or septic system, if any, are not deficient in any respect; or (f) radon gas, urea-formaldehyde foam or
249  asbestos insulation, or any other toxic substance including any toxic form of mold, is not present on the property.

250  **DAMAGE:** If any building or other improvements are destroyed or damaged in excess of ten percent of the  purchase
251  price prior to title transfer, BUYER may either accept the insurance proceeds for said damage and complete this
252  transaction or may terminate this AGREEMENT and receive the return of all deposits made. In that event, SELLER
253  and BUYER agree to sign a mutual release with instruction to the Broker for disbursement of the earnest money on
254  deposit. If such damage is less than ten percent of the purchase price, SELLER shall restore the property to its prior
255  condition and BUYER agrees to complete the purchase of the property.

256  **MONEY BACK GUARANTEE:** (Elect one) BUYER ☐does elect ☑does not elect to purchase the Howard   Hanna
257  Money Back Guarantee Program, subject to Program's terms and conditions. If BUYER elects the Program, then this
258  Agreement and BUYER'S obligations hereunder are conditioned upon approval of BUYER'S Application to
259  Repurchase by Home Trade-In Company, Inc. ("HTCI") within seven (7) days from Acceptance as herein defined.
260  BUYER'S fully-executed Application, including BUYER'S agreement to pay HTCI a fee of 1% of the purchase price,  is
261  attached hereto. If HTCI does not approve the Application, then this Agreement shall be null and void and BUYER  and
262  SELLER agree to sign a mutual release whereupon the earnest money shall be returned to BUYER.

263  **BINDING AGREEMENT:** For purposes of this AGREEMENT, "acceptance" shall occur upon the written   acceptance,
264  without any material change to the last offer or counter offer, and either the verbal or written communication of that
265  acceptance to the last offering party or their agent. For purposes of this Agreement, "days" shall be defined as calendar
266  days. Upon acceptance, this offer and all attachments and addenda shall become an AGREEMENT binding on BUYER and
267  SELLER, their heirs, executors, administrators, successors and assigns and shall be deemed to contain all the   terms,
268  conditions, representations and warranties, either expressed or implied, agreed upon by the BUYER and SELLER with

2/19/2024

SELLERS' INITIALS AND DATE          BUYERS' INITIALS AND DATE

**Exhibit 2**
**Page 6 of 11**

dotloop signature verification: dtlp.us/KOVu-a35R-4NLS
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

Property Address: 12010 Longmead Ave, Cleveland, OH 44135

269  respect to this transaction. All counter-offers, amendments, changes or deletions to this AGREEMENT shall be in writing and
270  be signed by both BUYER and SELLER. Facsimile or other electronically transmitted signatures shall be deemed binding
271  and valid. THIS IS A LEGALLY BINDING CONTRACT. The parties should consult an attorney or other professional if in need
272  of legal or tax advice.

273  **ADDITIONAL TERMS:** This contract is contingent upon buyer's partners' inspection and approval at the sole discretion of buyer's partners
274  any time before the end of inspection time.
275

276  **ADDENDA:**  The additional terms and conditions in the following checked addenda  and/or attachments   ☑ *Agency*
277  *Disclosure  Statement;* ☑ *Residential Property Disclosure;* ☐ VA/FHA Addendum; ☐ FHA Home Inspection  Notice;
278  ☐ Condominium; ☐ *House Sale Contingency;* ☐ House Sale Concurrency; ☐ Lead-Based Paint; ☐ Homeowner's
279  Association; ☐ Application to Repurchase by Home Trade-In Company, Inc. (*if BUYER elects Money Back  Guarantee*
280  *Program)* ☑ Walk Through Addendum; ☑ Other Seller Addendum Language
281  are made a part of this Agreement.  The terms and conditions of all such addenda or attachments shall supersede  any
282  conflicting terms in this Agreement.

283  **EARNEST MONEY:**  In the event of a dispute between the Seller and Buyer regarding the disbursement    of
284  the earnest money, the broker is required by Ohio law to maintain such funds in the broker's trust account until the
285  broker receives (a) written instructions signed by the parties specifying how the earnest money is to be disbursed or
286  (b) a final court order that specifies to whom the earnest money is to be awarded.  If within two years from the date
287  the earnest money was deposited in the broker's trust account, the parties have not provided the broker with such
288  signed instruction or written notice that such legal action to resolve the dispute has been filed, the broker
289  shall  return  the  earnest  money  to  the purchaser with no further notice to the seller. The broker shall acknowledge
290  receipt of the earnest money shown on line 31 to the escrow agent who shall credit that amount to the Buyer's  escrow
291  account.     Unless otherwise stated herein, the earnest money shall be retained in the broker's trust account until after
292  title transfer at which time it shall be applied against any compensation due the broker. Any amount by which the
293  earnest money exceeds the compensation due the broker shall be remitted to the escrow agent.

294  **BUYER:** *Andrei Savir de Roves*   Address: _____
      <br>dotloop verified 02/11/24 5:40 AM PST YGGL-FS8X-XGDD-AAZZ

295  Print name: Andrei Savir de Roves for G & A Next Realty,LLC   _____ ZIP: _____

296  **BUYER:** *Gaya Ben Simon*   Phone: _____ Email: Andrey88sdr@outlook.com
      <br>dotloop verified 02/11/24 3:41 PM IST XBI0-YGXP-MDBG-FWEI

297  Print name: Gaya Ben Simon for G & A Next Realty, LLC   Date: _____

298  **DEPOSIT RECEIPT:**  Receipt is hereby acknowledged,  of $_NA_____earnest money, subject to  the
299  terms of the above offer.

300  **HOWARD HANNA (License # 0000189163):**

301  By: *The Caple-Henderson Team*   (License #_404669_____) Office: Howard Hanna Real Estate Services Phone: 216-440-8088
      <br>dotloop verified 02/11/24 1:23 PM EST 7HLT-VVL1-PFHM-LKU2

302  **ACCEPTANCE:**  SELLER accepts the above offer and hereby instructs the Escrow Agent to pay from SELLER'S
303  escrow funds a brokerage commission of $335.00, if the property is listed with Howard Hanna, and a brokerage
      commission of  -2-__% of the purchase price to Howard Hanna, 6000 Parkland Blvd, 3rd Floor, Mayfield Heights, OH
      44124

304  Listing Broker: _____ License #_____   Listing Agent: Violetta Varenkova  License #_____

305  **SELLER:** Estate of Innings 150 LLC, debtor 2/19/2024   Address: _____
      <br>B3607B12898B4BA...

306  Print name: _____   _____ZIP: _____

307  **SELLER:** _____   Phone: _____ Email: _____

308  Print name: _____   Date: _____

310  **COUNTER OFFER TERMS:** _____
311  _____
312  _____

313  _____
314  Sellers' signature                    Date          Sellers' signature                          Date

Purchase Agreement 6/1/2023                                               
Page 6 of 6          27/19/2024
                     SELLERS' INITIALS AND DATE   BUYERS' INITIALS AND DATE

**Exhibit 2**
**Page 7 of 11**

dotloop signature verification: dtlp.us/IUTF-IbKG-sSi3
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59





## <u>WALK-THROUGH ADDENDUM</u>

This        Addendum        is        made        part        of        the        Agreement        between

G & A Next Realty, LLC _____ ("Buyer")  and

Estate of Innings 150 LLC _____ ("Seller") for

12010 Longmead Ave, Cleveland, OH 44135 _____ (the "Property")

with offer dated _____.

      The parties agree that Buyer will be given an opportunity to walk through the Property on or about -3- _____ day(s) prior to the date of title transfer solely for the purpose of verifying that the Property is in the same or similar condition, absent normal wear and tear, that it was at the time of the execution of the Agreement.

      Buyer acknowledges and agrees that no issues may be raised at the time of the walk-through with respect to any condition of the Property that was in existence at the time of Buyer's viewing or inspection of the Property.

      In the event that the walk-through evidences a material adverse change in the condition of the Property, then Buyer shall promptly notify the Seller and the escrow agent in writing. Thereafter, the parties shall mutually agree in writing upon an amount to be either:

    (1)  held in escrow from Seller's proceeds pending correction of the material adverse change; or

    (2)  credited to Buyer through escrow at the time of title transfer.

BUYER: _____*Andrei Savir de Reves*_____  SELLER: _*Estate of Innings 150 LLC, debtor*_

             dotloop verified
             02/11/24 5:40 AM PST
             L2MU-CA9A-V1WR-O1W8      B3607B12898B4BA

BUYER: _____*Gaya Ben Simon*_____  SELLER: _____

             dotloop verified
             02/11/24 3:41 PM IST
             9NBF-KUEF-4HGV-LDTI

DATE: _____  DATE: _2/19/2024_____

**Removal of Walk-Through:**  The undersigned Buyer hereby waives and removes the Walk-Through in the above referenced purchase agreement.

BUYER: _____  BUYER: _____

DATE: _____  DATE: _____

**Exhibit 2**
**Page 8 of 11**

dotloop signature verification: dtlp.us/L0Kx-C0j0-HaTD
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

12010 Longmead Ave, Cleveland, Ohio 44135

1. Any dispute between the parties shall be within the exclusive jurisdiction of and decided by the US Bankruptcy Court, District of Oregon.

2. The sale is subject to bankruptcy court approval and shall close immediately thereafter. Bankruptcy court approval requires notice to creditors and interested parties of the terms and conditions of Buyer's offer and an opportunity for interested parties to object or submit upset bids. If an upset bid is received, Buyer will have an opportunity to bid further. In addition, bankruptcy court approval may require the consent of junior lienholders, if any, to accept less than full payment of their liens

3. Upon closing the Trustee will execute and deliver to the Buyer a Trustee's Deed in the form attached hereto.

4. The Seller shall be Kenneth S. Eiler, as Trustee for the Estate of Innings 150 LLC, debtor, bankruptcy case no.: 23-32634-dwh7.

*Andrei Savir de Roves*  
dotloop verified  
02/11/24 5:40 AM PST  
E8BB-ZY6T-RMAV-G9XG

*Gaya Ben Simon*  
dotloop verified  
02/11/24 3:41 PM IST  
T1DE-MEF1-QH5Z-C5KT

DocuSigned by:  
*Estate of Innings 150 LLC, debtor*  
B3607B12898B4BA...

**Exhibit 2**
**Page 9 of 11**

dotloop signature verification: dtlp.us/wq8L-zN2I-K4Ib
DocuSign Envelope ID: B43A422C-72D4-41AB-B9E1-9BB838562A59

# Residential Property Disclosure Exemption Form

Property Address: <u>See Exhibit "A"</u>

Sellers Name: <u>Estate of Innings 150 LLC, debtor</u>

Ohio law requires owners of residential real estate (1-4 family) to complete and provide to the buyer a Residential Property Disclosure Form disclosing certain conditions and information concerning the property known by the owner. The Residential Property Disclosure Form requirement applies to most, but not all, transfers or sales of residential property.

Listed below are the most common transfers that are exempt from the Residential Property Disclosure Form requirement. The owner states that the exemption marked below is a true and accurate statement regarding the proposed transfer:

&#9760;    A transfer pursuant to a court order, such as probate or bankruptcy court;
&#9711;    A transfer by a lender who has acquired the property by deed in lieu of foreclosure;
&#9711;    A transfer by an executor, a guardian, a conservator, or a trustee;
&#9711;    A transfer of new construction that has never been lived in;
&#9711;    A transfer to a buyer who has lived in the property for at least one year immediately prior to the sale;
&#9711;    A transfer from an owner who both has inherited the property and has not lived in the property within one year immediately prior to the sale;
&#9711;    A transfer where either the owner or buyer is a government entity.

## SELLERS CERTIFICATION

By signing below, I state that the proposed transfer is exempt from the Residential Property Disclosure Form requirement.

Seller: _Estate of Innings 150 LLC, debtor_    Date: 1/19/2024
<span style="font-size:small">B3607B12990B4BA...</span>

Seller: _____    Date: _____

## BUYER'S ACKNOWLEDGEMENT

Potential buyers are encouraged to carefully inspect the property and to have the property professionally inspected. Buyer acknowledges that the buyer has read and received a copy of this form.

Buyer: _Andrei Swir de Reves_    dotloop verified 02/11/24 5:40 AM PST  R1X5-ACQ5-OO9T-7INI    Date: _____

Buyer: _Gaya Ben Simon_    dotloop verified 02/11/24 3:33 PM IST  WBG0-4TKO-KRVT-2ZH1    Date: _____

**Exhibit 2**
**Page 10 of 11**

**int Details:**

100066 _____ (hereinafter: the "Account") maintained in the name o

T BEN SIMON _____ ID number 23539117 _____ [I.D.

_____ ID number _____ [I.D.

_____ ID number _____ [I.D.

_____ ID number _____ [I.D.

the "Customer")

**ails:**

er has notified the Bank that he/she/it intends to participate in the following ter

_____

en published by _____

to submit a monetary bid in the amount of _____

**dation:**

it is managed by the Customer in an orderly manner and to the Bank's full

lationship is very good. The Customer fulfills his/her/its obligations towards th

manner.

t to the abovementioned tender, to the best of the Bank's knowledge and

with Customer, the Bank estimates that the Customer has the financial capabi

of up to USD 150,000 _____

other currency).

**:laimer:**

avoid any doubt, the Bank hereby clarifies that this letter does not constitut

Exhibit 2
Page 11 of 11

dotloop signature verification: dtlp.us/dY5f-oEZt-vNNt
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

## ADDENDUM: 1

This is an Addendum to the Purchase Agreement dated **02/01/2024**
for the purchase and sale of the Property known as:
(Street Address) **1325-1327 W 93rd Street**
(City) **Cleveland** , Ohio (Zip Code) **44102**
between **Josh Janus of Janus Rentals, LLC** (Buyer) and
**INNINGS 150, LLC** (Seller).

The following is hereby mutually agreed upon by said Buyer(s) and Seller(s):

*1. Any dispute between the parties shall be within the exclusive jurisdiction of and decided by the US Bankruptcy Court, District of Oregon.*

*2. The sale is subject to bankruptcy court approval and shall close immediately thereafter. Bankruptcy court approval requires notice to creditors and interested parties of the terms and conditions of Buyer's offer and an opportunity for interested parties to object or submit upset bids. If an upset bid is received, Buyer will have an opportunity to bid further. In addition, bankruptcy court approval may require the consent of junior lienholders, if any, to accept less than full payment of their liens*

*3. Upon closing the Trustee will execute and deliver to the Buyer a Trustee's Deed in the form attached hereto.*

*4. The Seller shall be Kenneth S. Eiler, as Trustee for the Estate of Innings 150 LLC, debtor, bankruptcy case no.: 23-32634-dwh7.*

| | | | |
|---|---|---|---|
| *Josh Janus* | dotloop verified 02/01/24 1:51 PM EST 0SUY-JRUA-UIWA-SJBM | *Estate of Innings 150 LLC, debtor* | 01/19/2024 |
| BUYER | DATE | SELLER | DATE |
| | | | |
| BUYER | DATE | SELLER | DATE |

**Exhibit 3
Page 1 of 10**

dotloop signature verification: dtlp.us/Dahz-Cg64-X80p
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

# reafco

## Yes MLS / RESIDENTIAL PURCHASE AGREEMENT
### OFFER, RECEIPT AND ACCEPTANCE

1  **BUYER:** The undersigned Josh Janus of Janus Rentals, LLC _____ offers to buy the

2  **PROPERTY:** Located at 1325-1327 W 93rd Street _____,

3  City Cleveland _____, Ohio, Zip Code 44102 _____.

4  Permanent Parcel No. 00107063 _____, and further described as being: 1325-1327 W 93rd Street,

5  Cleveland, OH 44102 _____

6  The property, which Buyer accepts in its "AS IS" PRESENT PHYSICAL CONDITION, shall include the land, all
7  appurtenant rights, privileges and easements, and all buildings and fixtures, including such of the following as are
8  now on the property: all electrical, heating, plumbing and bathroom fixtures; all window and door shades, blinds,
9  awnings, screens, storm windows, curtain and drapery fixtures; all landscaping, disposal, TV antenna, rotor and
10  control unit, smoke detectors, garage door opener(s) and _____ controls; all permanently attached carpeting. The
11  following selected items shall also remain: ☐ satellite dish; ☐ range and oven; ☐ microwave; ☐ kitchen
12  refrigerator;
13  ☐ dishwasher; ☐ washer; ☐ dryer; ☐ radiator covers; ☐ window air conditioner; ☐ central air conditioning;
14  ☐ gas grill; ☐ fireplace tools; ☐ screen, ☐ glass doors and ☐ grate; ☐ all existing window treatments;
15  ☐ ceiling fan(s); ☐ wood burner stove inserts; ☐ gas logs; and ☐ water softener.

16  Also included: All seller owned coverings/blinds and appliances to remain in all units (refrigerators, ranges, dishwashers, etc).

17  Fixtures NOT Included: _____

18  _____

19  **SECONDARY OFFER:** This ☐ is ☑ is not a secondary offer.  This secondary offer, if applicable, shall become a
20  primary contract upon BUYER'S receipt of a signed copy of the release of the primary contract on or before

21  _____(Date).  BUYER shall have the right to terminate this secondary offer at any time prior to
22  BUYER'S receipt of said copy of the release of the primary contract by delivering written notice to the SELLER or
23  the SELLER'S agent.  Upon receipt of the release of the primary contract, BUYER shall deposit earnest money
24  within four (4) days and BUYER and SELLER agree to sign an addendum, listing the date for loan application, loan
25  approval, deposit of funds and documents, title transfer and possession.

26  **PRICE:** Buyer shall pay the sum of…………………………….……………..…$ 100,000

27  Earnest money payable to Ohio Real Title Agency, LLC      in the amount of $ 2,000 _____

28  In the form of a ☐ check ☑ other: Wired _____ which shall be
29  redeemed immediately upon receipt of a binding agreement (as defined

30  on lines 238-246) and ☐ _____
31  Balance of cash to be deposited in escrow…………………………………….$ TBD

32  Mortgage loan to be obtained by Buyer…………………………………………..$ Balance

33  ☐ Conventional, ☐ FHA, ☐ VA, ☑ Other Private Money _____
34  _____

35  _____

36  **FINANCING:** Buyer shall make a written application for the above mortgage loan and order appraisal and provide
37  documentation to Seller of said application within NA _____ days and shall obtain a commitment for that
38  loan no later than NA _____ days after acceptance of this offer.  If the closing date cannot occur by the
39  date of closing due to no fault of either party, any government regulation or lender requirement, the date of closing
40  shall be extended for the period necessary to satisfy these requirements, not to exceed fourteen (14) business
41  days.  At the Seller's written election, if, despite Buyer's good faith efforts, that commitment has not been obtained,
42  then this Agreement shall be null and void. Upon signing of a *mutual release* by Seller and Buyer, the earnest

Page 1 of 6          BUYER'S INITIALS AND DATE          RESIDENTIAL PURCHASE AGREEMENT          SELLER'S INITIALS AND DATE
                                                        Yes MLS – Amended: April 2019

**Exhibit 3**
**Page 2 of 10**

dotloop signature verification: dtlp.us/Dahz-Ce64-X80p
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

Property Address: 1325-1327 W 93rd Street, Cleveland, OH 44102

43  money deposit shall be returned to the Buyer without any further liability of either party to the other or to the Brokers
44  and their agents. (see line 205)

45  **CLOSING:** All funds and documents necessary for the completion of this transaction shall be placed in escrow
46  with the lending institution or escrow company on or before 7 ~~days from contract acceptance~~ 3/31/ and title shall be
47  recorded on or about ~~xxxxxx xxxxxxxxx xxxxxxxx~~ 3/31/24 Ohio law requires that closing funds over the amount of
48  $10,000.00 be electronically transferred to the closing/escrow agent.  Buyers are advised to consult their lender
49  and closing/escrow agent for wiring requirements to assure that funds are received in a timely manner.

50  **POSSESSION:** Seller shall deliver possession to Buyer of the property within 0 _____ days by noon ____ (time),
51  ☐ AM ☑ PM after the title has been recorded. Subject to Buyer's rights, if any, the premises may be occupied by
52  the Seller free for NA ____ days.  Additional NA ____ days at a rate of $NA _____ per day.  Insurance coverage
53  and payment and collection of fees for use and occupancy after recording of title are the sole responsibility of
54  Seller and Buyer.

55  **TITLE:** For each parcel of real estate, Seller shall convey a marketable title to Buyer by general warranty deed
56  and/or fiduciary deed, if required, with dower rights released, free and clear of all liens and encumbrances
57  whatsoever, except a) any mortgage assumed by Buyer, b) such restrictions, conditions, easements (however
58  created) and encroachments as do not materially adversely affect the use or value of the property, c) zoning
59  ordinances, if any, and d) taxes and assessments, both general and special, not yet due and payable.  Seller shall
60  furnish an Owner's Fee Policy of Title Insurance in the amount of the purchase price, if title to all or part of the
61  parcels to be conveyed is found defective, Seller shall have thirty (30) days after notice to remove title defects.  If
62  unable to do so, Buyer may either a) accept Title subject to each defect without any reduction in the purchase price
63  or b) terminate this agreement, in which case neither Buyer, Seller nor any broker shall have any further liability to
64  each other, and both Buyer and Seller agree to sign a *mutual release*, releasing earnest money to Buyer. For the
65  subsurface estate underlying each parcel of real estate, if all or part of the subsurface mineral, oil or gas rights to
66  the underlying parcels already has been transferred by the Seller, then Buyer can either purchase the property "as
67  is" or declare the contract null and void, in which event the earnest money shall be returned to the Buyer. **Unless**
68  **expressly reserved by the Seller, all payments for any mineral, oil or gas rights shall belong to the Buyer**
69  **effective upon closing.** (see line 205)

70  **PRORATIONS:** General taxes, annual maintenance fees, subdivision charges, rentals, interest on any mortgage
71  assumed by buyer, condominium, HOA or other association periodic charges or assessments and transferable
72  policies if Buyer so elects. special assessments, city and county charges and tenant's rents, collected or
73  uncollected, shall be prorated as of the date the title has been recorded. Taxes and assessments shall be prorated
74  based upon the latest available tax duplicate. However, if the tax duplicate is not yet available or the improved land
75  is currently valued as land only, taxes and assessments shall be prorated based upon 35% of the selling price
76  times the millage rate. The escrow agent is instructed to contact the local governmental taxing authority, verify the
77  correct tax value of the property as of the date the title has been recorded and pay the current taxes due to the date
78  the title has been recorded. If the property being transferred is new construction and recently completed or in the
79  process of completion at the time the agreement was signed by the parties, the escrow agent is instructed to make
80  a good faith estimate of the taxes to be owed on the value of the improved property to the date the title has been
81  recorded and reserve sufficient funds in escrow from Seller's net proceeds to pay those taxes when they become
82  due and payable after the title has been recorded. The escrow agent is instructed to release the balance of the
83  funds on reserve to Seller once they receive notice from the local county auditor that the taxes on the land and
84  improvements have been paid in full to the date the title has been recorded. Buyer acknowledges that the latest
85  available tax duplicate may not reflect the accurate amount of taxes and assessments that will be owed. Seller
86  agrees to reimburse Buyer directly outside of escrow for any increase in valuation and the cost of all passed or
87  levied, but not yet certified, taxes and assessments, if any, prorated to the date the title has been recorded. Seller is
88  not aware of any proposed taxes or assessments, public or private, except the following:
89  NA
90  _____

91  In the event the property shall be deemed subject to any agricultural tax recoupment (C.A.U.V.),

92  ☐ Buyer ☑ Seller agrees to pay the amount of such recoupment.

93  **CHARGES/ESCROW INSTRUCTIONS:** This agreement shall be used as escrow instructions subject to the
94  Escrow Agent's usual conditions of acceptance.

Page 2 of 6        BUYER'S INITIALS AND DATE        RESIDENTIAL PURCHASE AGREEMENT        SELLER'S INITIALS AND DATE
Yes MLS – Amended: April 2019

**Exhibit 3**
**Page 3 of 10**

dotloop signature verification: dtlp.us/Dahg-Ce64-X80p
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

Property Address: 1325-1327 W 93rd Street, Cleveland, OH 44102

95  Seller shall pay the following costs through escrow: a) deed preparation b) real estate transfer tax, c) any amount
96  required to discharge any mortgage, lien or encumbrance not assumed by Buyer, d) title exam and one half the
97  cost of insuring premium for Owners Fee Policy of Title Insurance, e) pro-rations due Buyer, f) Broker's
98  commissions, g) one-half of the escrow fee (unless VA/FHA regulations prohibit payment of escrow fees by Buyer
99  in which case Seller shall pay the entire escrow fee),  and h) NA                                                    .
100 Tenant security deposits, if any, shall be credited in escrow to the Buyer. The escrow agent shall withhold
101 $ NA                                                    from the proceeds due Seller for payment of Seller's final water and
102 sewer bills.  Seller shall pay all utility charges to date of recording of title or date of possession whichever is later.

103 Buyer shall pay the following through escrow (unless prohibited by VA/FHA regulations): a) one-half of the escrow
104 fee b) one half the cost of insuring premiums for Owners Fee Policy of Title Insurance; c) all recording fees for the
105 deed and any mortgage, d) NA                                                    . If the closing
106 date cannot occur by the date of closing due to any government regulation or lender requirement, the date of
107 closing shall be extended for the period necessary to satisfy these requirements, not to exceed fourteen (14)
108 business days.  The Selling and Listing Brokers request and the Seller(s) and Buyer(s) hereby authorize and
109 instruct the escrow agent to send a copy of their fully signed, Buyers and Sellers, Closing Disclosures and/or
110 Settlement Statements, if applicable, to their respective Broker(s) listed on this Agreement promptly after closing,
111 which Brokers may disburse to other parties to the transaction.

112 **HOME WARRANTY:**  Buyer acknowledges that Limited Home Warranty Insurance Policies are available and that
113 such policies have deductibles, may <u>not</u> cover pre-existing defects in the property, and have items excluded from
114 coverage.  Broker may receive a fee from the home warranty provider.  Buyer ☐does ☑ does not elect to secure a
115 Limited Home Warranty Plan issued by NA                                                    . The cost of $ NA
116 shall be paid by ☐ Buyer ☐ Seller through escrow.

117 **INSPECTION:**  This agreement shall be subject to the following inspection(s) by a qualified inspector of
118 Buyer's choice within the specified number of days from acceptance of binding agreement.  Buyer assumes
119 sole responsibility to select and retain a qualified inspector for each requested inspection and releases
120 Broker of any and all liability regarding the selection or retention of the inspector(s). If Buyer does not elect
121 inspections, Buyer acknowledges that Buyer is acting against the advice of Buyer's agent and Broker. Buyer
122 understands that all real property and improvements may contain defects and conditions that are not readily
123 apparent and which may affect a property's use or value. Buyer and Seller agree that the Broker(s) and their
124 agent(s) do not guarantee and in no way assume responsibility for the property's condition.  Buyer acknowledges
125 that it is Buyer's own duty to exercise reasonable care to inspect and make diligent inquiry of the Seller or Buyer's
126 inspectors regarding the condition and systems of the property.

127 **Inspections required by any state, county, local government or FHA/VA do not necessarily eliminate the**
128 **need for the Inspections listed below.**

129 **Waiver:** [initials] _____(initials) Buyer elects to waive each professional inspection to which Buyer has not indicated
130 "yes".  Any failure by Buyer to perform any inspection indicated "yes" herein is a waiver of such inspection
131 and shall be deemed absolute acceptance of the property by Buyer in its "as is" condition.

132 | **Choice** | | **Inspections** | **Expense** | |
| --- | --- | --- | --- | --- |
133 | Yes | No | | BUYER | SELLER |
134 | ☐ | ☑ | GENERAL HOME _____ days from acceptance of Agreement | ☐ | ☐ |
135 | ☐ | ☑ | SEPTIC SYSTEM _____ days from acceptance of Agreement | ☐ | ☐ |
136 | ☐ | ☑ | WELL WATER…… _____ days from acceptance of Agreement | ☐ | ☐ |
137 | | | (☐flow, ☐potability) | | |
138 | ☐ | ☑ | RADON…………. _____ days from acceptance of Agreement | ☐ | ☐ |
139 | ☐ | ☑ | MOLD…………… _____ days from acceptance of Agreement | ☐ | ☐ |
140 | ☐ | ☑ | PEST/ _____ days from acceptance of Agreement | ☐ | ☐ |
141 | | | WOOD DESTROYING INSECTS | | |
142 | ☐ | ☑ | OTHER…………._____ days from acceptance of Agreement | ☑ | ☐ |

Page 3 of 6     BUYER'S INITIALS AND DATE          RESIDENTIAL PURCHASE AGREEMENT          SELLER'S INITIALS AND DATE    12/19/2024
                                                   Yes MLS – Amended: April 2019

**Exhibit 3**
**Page 4 of 10**

dotloop signature verification: dtlp.us/Dahg-Cq64-X80p
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

**Property Address:** 1325-1327 W 93rd Street, Cleveland, OH 44102

143      (list other inspections)
144   Within three (3) days after completion of the last inspection, Buyer shall elect one of the following:
145      a.   Remove the inspection contingency and accept the property in its "as is" present physical condition.  If the
146           property is accepted in its "as is" present physical condition, Buyer agrees to sign an *Amendment to the*
147           *Residential Purchase Agreement* removing the inspection contingency and this agreement will proceed in
148           full force and effect; **OR**
149      b.   Accept the property subject to Seller agreeing to have specific items that were identified in a written
150           inspection report, if requested, repaired by a qualified contractor in a professional manner at Seller's
151           expense.  If the property is accepted subject to the Seller repairing specific defects, Buyer agrees to provide
152           Seller with a copy of all inspection reports, if requested, and sign an *Amendment to the Residential*
153           *Purchase Agreement* removing the inspection contingency and identifying the defects which are to be
154           repaired.  Seller and Buyer have five (5) days from Seller's receipt of the written list of defects and the
155           inspection report(s), if requested, to agree in writing which defects, if any, will be corrected at Seller's
156           expense.  If a written inspection is not signed by Seller and Buyer within those five (5) days, this agreement
157           is null and void and Seller and Buyer agree to sign a *mutual release*, with the earnest money being returned
158           to the Buyer. (see line 227) The Buyer and Seller can mutually agree in writing to extend the dates for
159           inspections, repairs, or to exercise their right to terminate the Agreement.  Seller agrees to provide
160           reasonable access to the property for Buyer to review and approve any conditions corrected by Seller, **OR**
161           Terminate this agreement if written inspection report(s) identify material latent defects not previously
162           disclosed in writing by the Seller and/or any cooperating real estate broker.  If Buyer elects to terminate this
163           agreement based upon newly discovered material latent defects in the property, Buyer agrees to provide a
164           copy of the written inspection report(s), if requested, to the Seller, and both parties agree to sign a *mutual*
165           *release*. The earnest money will be returned to the Buyer without any further liability of either party to the
166           other or to the broker(s) (see line 227).

167   **MEGAN'S LAW** Seller warrants that Seller has disclosed to Buyer all notices received pursuant to Ohio's sex
168   offender law. The Buyer acknowledges that the information disclosed may no longer be accurate and agrees to
169   inquire with the local sheriff's office. Buyer agrees to assume the responsibility to check with the local sheriff's office
170   for additional information. Buyer will rely on Buyer's own inquiry with the local sheriff's office as to registered sex
171   offenders in the area and will not rely on Seller or any real estate agent involved in the transaction to determine if a
172   sex offender resides in the area of any property Buyer may purchase.

173   **CONDITION OF PROPERTY:**  Buyer has examined the property and agrees that the property is being purchased
174   in its "As Is" Present Physical Condition including any defects disclosed by the Seller on the Ohio *Residential*
175   *Property Disclosure Form* or identified by any inspections requested by either party or any other
176   forms or addenda made a part of this agreement. Seller agrees to notify Buyer in writing of any additional
177   disclosure items that arise between the date of acceptance and the date of recording of the deed. Buyer has not
178   relied upon any representations, warranties, or statements about the property (including but not limited to its
179   condition or use) unless otherwise disclosed on this agreement or on the *Residential Property Disclosure Form*.

180   ☐ 1. Buyer acknowledges receipt of completed *Residential Property Disclosure Form* from Seller

181   ☑ 2. Buyer has not received *Residential Property Disclosure Form* and Seller agrees to deliver to Buyer a copy of
182       the completed *Residential Property Disclosure Form* within three (3) days after acceptance unless the sale of
183       the property is exempt by Ohio Revised Code 5302.30 from the use of the form.

184   Seller shall pay all costs for the repair of any gas line leak found between the street and foundation at the time
185   of recording of title, or restoration of utilities, whichever is sooner. Seller agrees to comply with any and all local
186   governmental point of sale laws and/or ordinances. Seller will promptly provide Buyer with copies of any notices
187   received from governmental agencies to inspect or correct any current building code or health violations.  If
188   applicable, Buyer and Seller have five (5) days after receipt by Buyer of all notices to agree in writing which party
189   will be responsible for the correction of any building code or health violation(s).  If Buyer and Seller cannot agree in
190   writing, this Agreement can be declared null and void by either party.  In that event Seller and Buyer agree to sign a
191   *mutual release* with instruction to the Broker on disbursement of the earnest money. (see line 227)

192   **REPRESENTATIONS AND DISCLAIMERS:**  Buyer acknowledges that the Seller completed the Residential
193   Property Disclosure Form unless otherwise stated above and Seller has not made any representations or
194   warranties, either expressed or implied, regarding the property, (except for the Ohio Residential Property

Page 4 of 6      BUYER'S INITIALS AND DATE      RESIDENTIAL PURCHASE AGREEMENT      SELLER'S INITIALS AND DATE      2/19/2024
                                    Yes MLS – Amended: April 2019

**Exhibit 3**
**Page 5 of 10**

dotloop signature verification: dtlp.us/Dahg-Cg64-X80p
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

Property Address: 1325-1327 W 93rd Street, Cleveland, OH 44102

195  Disclosure Form, if applicable), and agrees to hold the Brokers and their agents harmless from any mis-statements
196  or errors made by the Seller on the form.  Buyer also acknowledges and agrees that the Brokers and their agents
197  have no obligation to verify or investigate the information provided by the Seller on that form.  Buyer acknowledges
198  that Brokers and their agents have not made any representations, warranties, or agreements, express or implied
199  regarding the condition or use of the property, including but not limited to any representation that: (a) the basement,
200  crawl space or slab area do not incur seepage, leakage, dampness, or standing water; (b) the heating, cooling,
201  plumbing, or electrical system(s) or any built-in appliance is in good working condition or is completely functional;
202  (c) the roof is weather tight and/or structurally sound; (d) the structure is free from insect infestation, lead paint, or
203  lead paint hazards; (e) the water supply or septic system, if any, are not deficient in any respect; or (f) radon gas,
204  urea-formaldehyde foam or asbestos insulation, or any other toxic substance including any toxic form of mold, is
205  not present on the property.  Buyer hereby acknowledges that any representation by Seller or the real estate
206  agent(s) regarding the square footage of the rooms, structures or lot dimensions, homeowner's fees, public and
207  private assessments, utility bills, taxes and special assessments are approximate and not guaranteed. Please list
208  any and all verbal representations made by Brokers or their agents that you relied upon when purchasing this
209  property (if none, write **"none"**)

210  NONE

211  **DAMAGE:**  If any building or other improvements are destroyed or damaged in excess of ten percent of the
212  purchase price prior to title transfer, Buyer may either a) accept the insurance proceeds for said damage and
213  complete this transaction or b) terminate this agreement and receive the return of all deposits made. In that
214  event, Seller and Buyer agree to sign a *mutual release*, with instruction to the Broker on disbursement of the
215  earnest money on deposit (see line 227).  If such damage is less than ten percent of the purchase price, Seller
216  shall restore the property to its prior condition and Buyer agrees to complete the purchase of the Property.

217  **ADDENDA:**  The additional terms and conditions in the attached addenda ☑  Agency Disclosure Form
218  ☐Residential Property Disclosure☐VA☐FHA ☐FHA Home Inspection Notice ☐Secondary Offer ☐ Condominium
219  ☐ Short Sale☐House Sale Contingency ☐House Sale Concurrency ☐  Lead Based Paint (required if built before 1978)
220  ☐ Homeowner's Association ☐ Affiliated Business Arrangement Disclosure Statement ☐ Walk-Through Addendum
221  ☐ Other
222  are made part of this Agreement. **The terms and conditions of any addenda will supersede any conflicting**
223  **terms in the Purchase Agreement.**

224  **ADDITIONAL TERMS:**  See additional terms and conditions.

225

226

227  **EARNEST MONEY:**  In the event of a dispute between the Seller and Buyer regarding the disbursement of the
228  earnest money in the Broker's trust account, the Broker is required by Ohio law to maintain such funds in a trust
229  account until the Broker receives (a) written instructions signed by the parties specifying how the earnest money is
230  to be disbursed or (b) a final court order that specifies to whom the earnest money is to be rewarded.  If within two
231  years from the date the earnest money was deposited in the Broker's trust account, the parties have not provided
232  the Broker with such separate signed instructions or written notice that such legal action to resolve the dispute has
233  been filed, the Broker shall return the earnest money to the purchaser with no further notice to the Seller.  In all
234  events, at closing of the transaction, the broker shall have the right to apply earnest money being held by broker
235  against the real estate commission owed the broker as a result of said closing.  If said earnest money
236  exceeds commission due Broker, the amount over the commission due Broker shall be sent to the escrow agent or
237  if requested by Seller, the total earnest money shall be sent to the Escrow Agent.

238  **BINDING AGREEMENT:**  Upon written acceptance, then either written or verbal notice of such acceptance to the
239  last-offering party, this offer and any addenda listed above shall become a legally binding agreement upon Buyer
240  and Seller and their heirs, executors, administrators and assigns and shall represent the entire understanding of the
241  parties regarding this transaction. All counter-offers, amendments, changes or deletions to this Agreement shall be
242  in writing and be signed/initialed by both Buyer and Seller. Facsimile and/or scan and e-mail signatures shall be
243  deemed binding and valid. This Agreement shall be used as escrow instructions subject to the Escrow Agent's

Page 5 of 6      BUYER'S INITIALS AND DATE      RESIDENTIAL PURCHASE AGREEMENT      SELLER'S INITIALS AND DATE      12/19/2024
Yes MLS – Amended: April 2019

Exhibit 3
Page 6 of 10

dotloop signature verification: dtlp.us/Dahp-Cg64-X80p
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

Property Address: 1325-1327 W 93rd Street, Cleveland, OH 44102

244  usual conditions of acceptance. If there is any conflict between the escrow's conditions of acceptance and this
245  Agreement, the terms of this Agreement shall prevail. For purposes of this Agreement, "days" shall be defined as
246  calendar days.

247  **This Agreement is a legally binding contract. If you have any questions of law, consult your attorney.**

248  BUYER _Josh Janus of Janus Rentals, LLC_   [dotloop verified 02/01/24 8:49 AM EST B7GH-5VG2-OGFB-ED5F]   Address _____

249  Print Name Josh Janus of Janus Rentals, LLC   _____ ZIP _____

250  BUYER _____   Date _____ Phone _____

251  Print Name _____   Email joshcarterjanus@gmail.com

252  **ACCEPTANCE:** Seller accepts the above offer and irrevocably instructs escrow agent to pay from Seller's escrow
253  funds a commission of $ _____ or two _____ percent ( 2 %) of the

254  purchase price to _____ (Selling Broker) Reafco _____ (Office)

255  and $ _Per listing Agreement_ plus _____ percent ( %) of the

256  purchase price to _____ (Listing Broker) IIP Management LLC (Office)

257  SELLER _Estate of Innings 150 LLC, debtor_   [B3607B12898B4BA...]   Address _____

258  Print Name INNINGS 150, LLC   _____ ZIP _____

259  SELLER _____   Date 2/19/2024 _____ Phone _____

260  Print Name _____   Email kenneth.eiler7@gmail.com

261  Selling Agent Name, RE License Number, Team          Listing Agent Name, RE License Number, Team
262  Leader Name (if applicable), Telephone, Email:          Leader Name (if applicable), Telephone, Email:
263  Josh Janus                                             Violetta Varenkova
264  2021008169                                             2011000773
265
266  (614) 502-5316
267  josh@reafco.com

268  Selling Brokers Name, BR License Number,               Listing Brokers Name, BR License Number
269  Telephone and Email:                                   Telephone and Email:
270  _____                                        IIP Management LLC
271  _____
272  _____
273  _____

 BUYER'S INITIALS AND DATE   RESIDENTIAL PURCHASE AGREEMENT
Yes MLS – Amended: April 2019    SELLER'S INITIALS AND DATE

**Exhibit 3
Page 7 of 10**

dotloop signature verification: dtlp.us/ZICZ-CqdO-cPDC
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C



## ADDITIONAL TERMS
## AND CONDITIONS

ADOPTED BY
**COLUMBUS**
🏠 **REALTORS®**

*It is recommended that all parties be represented by an attorney.*

Page 1 of 1

Premises Address: **1325-1327 W 93rd Street, Cleveland, OH 44102**

Date: **02/01/2024**

The following is a continuation of the terms and conditions of paragraph 1.1 of an offer to purchase the above premises:

**This Offer is contingent upon Buyer's satisfactory review of all leases, rental agreements, deposits, past 1 years' income and expense reports and within 5 calendar days after acceptance of this offer. Seller shall provide such documents and information, representing them to be true.**

**It is known by all parties that a member(s) of the buying party has their real estate license in Ohio.**

**Offer contingent on walkthrough and approval within 5 days of contract acceptance.**

**Buyer broker commission to be applied to the buyer in credits at closing.**

DocuSigned by:

*Estate of Innings 150 LLC, debtor*
B3607B12898B4BA

| | |
|---|---|
| *Josh Janus of Janus Rentals LLC* | |
| Buyer | Seller |
| | |
| Buyer | Seller |
| | 2/19/2024 |
| Date | Date |

dotloop verified
02/01/24 8:49 AM EST
RAS2-KWP9-ALZH-GMBL

© 2016 Columbus REALTORS®

**Exhibit 3**
**Page 8 of 10**

dotloop signature verification: dtlp.us/vYID-kKA3-f4Fs
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

 

**Ohio** | **Department of Commerce**
Division of Real Estate & Professional Licensing

# AGENCY DISCLOSURE STATEMENT


EQUAL HOUSING OPPORTUNITY

**The real estate agent who is providing you with this form is required to do so by Ohio law. You will not be bound to pay the agent or the agent's brokerage by merely signing this form.** Instead, the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below. (For purposes of this form, the term "seller" includes a landlord and the term "buyer" includes a tenant.)

Property Address: 1325-1327 W 93rd Street, Cleveland, OH 44102

Buyer(s):  Josh Janus of Janus Rentals, LLC

Seller(s):  INNINGS 150, LLC

## I. TRANSACTION INVOLVING TWO AGENTS IN TWO DIFFERENT BROKERAGES

The buyer will be represented by Josh Janus _____ , and Reafco _____ .
AGENT(S)                                    BROKERAGE

The seller will be represented by Violetta Varenkova _____ , and IIP Management, LLC _____ .
AGENT(S)                                    BROKERAGE

## II. TRANSACTION INVOLVING TWO AGENTS IN THE SAME BROKERAGE

If two agents in the real estate brokerage _____
represent both the buyer and the seller, check the following relationship that will apply:

☐  Agent(s)_____ work(s) for the buyer and
   Agent(s)_____ work(s) for the seller. Unless personally involved in the transaction, the principal broker and managers will be "dual agents," which is further explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.

☐  Every agent in the brokerage represents every "client" of the brokerage. Therefore, agents _____ and _____ will be working for both the buyer and seller as "dual agents." Dual agency is explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain:*
_____

## III. TRANSACTION INVOLVING ONLY ONE REAL ESTATE AGENT

Agent(s) _____ and real estate brokerage _____ will

☐  be "dual agents" representing both parties in this transaction in a neutral capacity. Dual agency is further explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain*: _____

☐  represent only the (*check one*) ☐ **seller** or ☐ **buyer** in this transaction as a client. The other party is not represented and agrees to represent his/her own best interest. Any information provided the agent may be disclosed to the agent's client.

## CONSENT

I (we) consent to the above relationships as we enter into this real estate transaction. If there is a dual agency in this transaction, I (we) acknowledge reading the information regarding dual agency explained on the back of this form.

| | | |
|---|---|---|
| *Josh Janus of Janus Rentals, LLC* | | *Estate of Innings 150 LLC, debtor* 19/2024 |
| BUYER/TENANT | DATE | SELLER/LANDLORD | DATE |
| | | |
| BUYER/TENANT | DATE | SELLER/LANDLORD | DATE |

**Exhibit 3**
**Page 9 of 10**

dotloop signature verification: dtlp.us/7MHm-CEuq-qVvj
DocuSign Envelope ID: 6EFD7EA8-D9AA-46D0-8C35-128CBAB9AD7C

# Residential Property Disclosure Exemption Form

Property Address: See Exhibit "A"

Sellers Name: Estate of Innings 150 LLC, debtor

Ohio law requires owners of residential real estate (1-4 family) to complete and provide to the buyer a Residential Property Disclosure Form disclosing certain conditions and information concerning the property known by the owner. The Residential Property Disclosure Form requirement applies to most, but not all, transfers or sales of residential property.

Listed below are the most common transfers that are exempt from the Residential Property Disclosure Form requirement. The owner states that the exemption marked below is a true and accurate statement regarding the proposed transfer:

- ☒ A transfer pursuant to a court order, such as probate or bankruptcy court;
- ○ A transfer by a lender who has acquired the property by deed in lieu of foreclosure;
- ○ A transfer by an executor, a guardian, a conservator, or a trustee;
- ○ A transfer of new construction that has never been lived in;
- ○ A transfer to a buyer who has lived in the property for at least one year immediately prior to the sale;
- ○ A transfer from an owner who both has inherited the property and has not lived in the property within one year immediately prior to the sale;
- ○ A transfer where either the owner or buyer is a government entity.

## SELLERS CERTIFICATION

By signing below, I state that the proposed transfer is exempt from the Residential Property Disclosure Form requirement.

Seller: *Estate of Innings 150 LLC, debtor*        Date: 1/19/2024

Seller: _____        Date: _____

## BUYER'S ACKNOWLEDGEMENT

Potential buyers are encouraged to carefully inspect the property and to have the property professionally inspected. Buyer acknowledges that the buyer has read and received a copy of this form.

Buyer *Josh Janus*    dotloop verified
02/15/24 10:40 AM EST
ZURA-O2I9-0BMZ-MQDI        Date: _____

Buyer: _____        Date: _____

**Exhibit 3**
**Page 10 of 10**

dotloop signature verification: dtlp.us/PhzE-1XdV-EbMt
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

# Residential Property Disclosure Exemption Form

Property Address: See Exhibit "A"

Sellers Name: Estate of Innings 150 LLC, debtor

Ohio law requires owners of residential real estate (1-4 family) to complete and provide to the buyer a Residential Property Disclosure Form disclosing certain conditions and information concerning the property known by the owner. The Residential Property Disclosure Form requirement applies to most, but not all, transfers or sales of residential property.

Listed below are the most common transfers that are exempt from the Residential Property Disclosure Form requirement. The owner states that the exemption marked below is a true and accurate statement regarding the proposed transfer:

- ☒ A transfer pursuant to a court order, such as probate or bankruptcy court;
- ○ A transfer by a lender who has acquired the property by deed in lieu of foreclosure;
- ○ A transfer by an executor, a guardian, a conservator, or a trustee;
- ○ A transfer of new construction that has never been lived in;
- ○ A transfer to a buyer who has lived in the property for at least one year immediately prior to the sale;
- ○ A transfer from an owner who both has inherited the property and has not lived in the property within one year immediately prior to the sale;
- ○ A transfer where either the owner or buyer is a government entity.

## SELLERS CERTIFICATION

By signing below, I state that the proposed transfer is exempt from the Residential Property Disclosure Form requirement.

Seller: *Estate of Innings 150 LLC, debtor*
B3667B12090B4BA...

Date: 1/19/2024

Seller: _____

Date: _____

## BUYER'S ACKNOWLEDGEMENT

Potential buyers are encouraged to carefully inspect the property and to have the property professionally inspected. Buyer acknowledges that the buyer has read and received a copy of this form.

Buyer: *Stephen D Nedolast*    dotloop verified
02/03/24 10:42 AM EST
J5G1-V0ZV-DMGQ-EGZH

Date: _____

Buyer: _____

Date: _____

Exhibit 4
Page 1 of 17

dotloop signature verification: dtlp.us/DKFO-i1Rg-R6Ul
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

**ADDENDUM**: _____

This is an Addendum to the Purchase Agreement dated <u>02/03/2024</u>
for the purchase and sale of the Property known as:
(Street Address) <u>13829 Courtland Ave</u>
(City) <u>Cleveland</u>, Ohio (Zip Code) <u>44111</u>
between <u>SLHS Investment LLC</u> (Buyer) and
<u>Inning 150 LLC</u> (Seller).

The following is hereby mutually agreed upon by said Buyer(s) and Seller(s):

*1. Any dispute between the parties shall be within the exclusive jurisdiction of and decided by the US Bankruptcy Court, District of Oregon.*

*2. The sale is subject to bankruptcy court approval and shall close immediately thereafter. Bankruptcy court approval requires notice to creditors and interested parties of the terms and conditions of Buyer's offer and an opportunity for interested parties to object or submit upset bids. If an upset bid is received, Buyer will have an opportunity to bid further. In addition, bankruptcy court approval may require the consent of junior lienholders, if any, to accept less than full payment of their liens*

*3. Upon closing the Trustee will execute and deliver to the Buyer a Trustee's Deed in the form attached hereto.*

*4. The Seller shall be Kenneth S. Eiler, as Trustee for the Estate of Innings 150 LLC, debtor, bankruptcy case no.: 23-32634-dwh7.*

| | | | |
|---|---|---|---|
| *Stephen D Nedolast*  dotloop verified 02/03/24 10:42 AM EST 9H4P-ZMHT-VCTW-FBER | | Estate of Innings 150 LLC, debtor 02/29/2024 | |
| BUYER | DATE | SELLER | DATE |
| | | | |
| BUYER | DATE | SELLER | DATE |

**Exhibit 4**
**Page 2 of 17**

dotloop signature verification: dtlo.us/ohOv-aekx-1n5f
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869



# Russell Real Estate Services
## Consumer Guide to Agency Relationships

 

Russell Real Estate Services and all other Ohio real estate brokerages are required by Ohio law to provide you with certain information about how real estate agents work as described below and to have you acknowledge receipt of this information. **THIS IS NOT A CONTRACT AND DOES NOT OBLIGATE YOU TO USE RUSSELL REAL ESTATE SERVICES IN ANY WAY**.

We are pleased that you have selected Russell Real Estate Services to help you with your real estate needs. Whether you are selling buying, or leasing real estate, Russell Real Estate Services will provide you with the highest standards of expertise and assistance.

Because buying or selling a home may be your largest financial transaction, it is important to understand the roles of the agents and brokers with whom you will be working. The information below explains how brokerages and agents work for buyers and sellers in real estate transactions. For more information on agency law in Ohio, you also may contact the Ohio Division of Real Estate and Professional Licensing at (614) 466-4100 or at www.com.state.oh.us.

<u>**Seller Agency**</u>: Most sellers choose to list their homes for sale with a real estate brokerage. When they do so, they sign a listing agreement that authorizes the brokerage and the listing agent to represent their interests. As the seller's agent, the brokerage and listing agent must follow the seller's lawful instructions, be loyal to the seller, promote the seller's best interests, disclose material facts to the seller, maintain confidential information, act with reasonable skill and care, and account for any money that they handle in the transaction. Russell Real Estate Services does not offer sub agency, which means that it does not authorize any agents to act on a Seller's behalf unless the Seller specifically appoints that agent.

<u>**Buyer Agency:**</u> Buyers typically choose to work with a real estate agent. Buyers often want to be represented in the transaction as well. This is known as buyer agency. A brokerage and an agent that agree to represent a buyer's interests must follow the buyer's lawful instructions, be loyal to the buyer, promote the buyer's best interests, disclose material facts to the buyer, maintain confidential information, and account for any money that they handle in the transaction. Buyers are advised that sellers and their agents are not obligated to keep confidential the existence, terms or conditions of a buyer's offer.

Russell Real Estate Services and its agents cannot and do not (a) review all public records relating to properties that are listed or sold by them; or (b) investigate property information contained in prior listings and/or sales files, either within the company or other brokerages. Buyers are advised to investigate the physical condition of the property and all public records to determine its condition and suitability before purchasing it.

Contemporaneous Offers: Ohio law permits real estate agents and brokers to represent more than one buyer at a time and to show those buyers the same properties. In some instances more than one buyer represented by the same agent may want to make an offer to purchase the same property that will be considered by the seller at the same time. Under Ohio law, this is referred to as "contemporaneous offers". If this occurs, Ohio law requires that you be notified in writing of this fact by your agent. This written notice can be communicated via email or text message. If written notification cannot be delivered to you in a timely manner, your agent can provide this notice to you verbally.

If you are notified that a contemporaneous offer situation exists, you can request to be referred to another licensee. Your agent is not permitted to disclose the identity of the buyers or the terms of their offers to purchase. This information is considered confidential information under Ohio law and must be maintained by the agent/broker.

**Notice to Buyer - Audio Video Digital Awareness:** Be aware that many individuals today utilize either voice or visual recording equipment, services or cameras for security or safety purposes in and about their home. If disclosure of such recording devices is provided to your agent, you shall be made aware of such recording devices. Should you request for the surveillance equipment to be turned off, and the seller declines, the decision whether or not to view the property will be yours. However, it is important to know that your words and actions while viewing property may be recorded without your or the agent's knowledge. Therefore: 1) Do not make or say any comments that you would want the Seller or their agent to hear, 2) DO NOT discuss any confidential information in the home such as; appearance/condition of property (personal or real), ability to buy, value or range of value you would pay, other terms or conditions of a potential offer, any other information you may deem confidential, 3) DO NOT make comments that may be viewed as negative to the property or seller which could be used against you should an offer be presented on your behalf, and 4) While viewing property, an agent of potential buyer or the buyer personally IS NOT permitted to record a video, skype in real time or photograph the interior of a home without the sellers or the listing agents expressed written approval.

<u>**Dual Agency:**</u> Occasionally the same agent and brokerage that represent the seller also represent the buyer in a transaction. This is referred to as dual agency. When a brokerage and its agents become "dual agents," they must maintain a neutral position in the transaction. They may not advocate the position of one client over the other client, nor disclose any confidential information to the other party without written consent.

**Exhibit 4**
**Page 3 of 17**

dotloop signature verification: dtlp.us/ohOv-agkx-1n5f
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

**In-Company Split Agency:** On occasion, the buyer and seller will each be represented by two different agents from the same brokerage. In this case, each agent will represent the best interests of their respective clients. When this occurs, the brokerage will be considered a dual agent. As a dual agent, the brokerage and its managers will maintain a neutral position and cannot advocate the position of one client over another. The brokerage also will protect the confidential information of both parties.

**Working with Russell Real Estate Services:** Russell Real Estate Services represents both buyers and sellers. Therefore, it is possible for one agent to represent a buyer who wishes to purchase property listed with another Russell Real Estate Services agent (in-company split agency). If this occurs then each agent will represent her or his own client, but Russell Real Estate Services and its managers will act as dual agents. This means that the brokerage and its managers will maintain a neutral position and not take any action that favors one client over the other. Russell Real Estate Services will supervise both agents to ensure that their respective clients are being represented and will protect each party's confidential information.

If the buyer and seller are represented by the same agent, then that agent and Russell Real Estate Services will act as dual agents, but only if both parties agree. As dual agents, they will treat both parties honestly, prepare and present offers at the parties' direction, and help the parties to understand their contractual obligations. They will not, however, disclose any confidential information that would place one party at an advantage over the other, or advocate or negotiate to the detriment of either party.

If dual agency occurs, then you will be asked to consent to it in writing. If you do not agree to dual agency, then you may ask for another agent in Russell Real Estate Services to represent you, or you may seek representation from an attorney or another brokerage. As a buyer, you may choose to represent yourself on properties that Russell Real Estate Services has listed. In this case, Russell Real Estate Services will represent the seller and you would represent your own best interests. However, the listing agent will still be able to provide you with non-confidential information, prepare and present offers at your direction and assist you in the financing and closing process. Because the listing agent has a duty of full disclosure to the seller, you should not share any information with the listing agent that you would not want the seller to know. A Russell Real Estate Services licensee who holds an open house on behalf of a Russell Real Estate Services seller's listing agent will be considered a "host" and not the seller's agent unless it is agreed to in writing or otherwise required by law.

**Working with other Real Estate Brokers:** When Russell Real Estate Services lists a property for sale, it also cooperates with and offers compensation to other brokerages that represent buyers. Russell Real Estate Services reserves the right, in some instances, to vary the compensation that it offers to other brokerages. As a seller, you should understand that Russell Real Estate Services sharing of a fee with the brokerage representing the buyer does not mean that you will be represented by that brokerage. Instead, the buyer's brokerage and agent will be obligated to advance the buyer's interests and Russell Real Estate Services will represent your interests. When acting as a buyer's agent, Russell Real Estate Services also accepts compensation offered by the listing broker. If the property is not listed by another broker, or the listing broker does not offer compensation, then Russell Real Estate Services will attempt to negotiate for a Seller-paid fee.

**Compensation to Broker:** If you are a seller whose property is listed for sale through Russell Real Estate Services, at closing you will be charged a Brokerage Commission that is described in your *Exclusive Right to Sell Agreement* with Russell Real Estate Services. If you are a buyer and you purchase a home through Russell Real Estate Services, you will be charged at closing a Brokerage Commission of $299.00. This Brokerage Commission will be charged to you only in the event that you purchase a property through Russell Real Estate Services.

**Fair Housing Statement:** It is illegal, pursuant to the Ohio Fair Housing Law, division (1-1) of Section 4112.02 of the Revised Code and the Federal Fair Housing Law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in Section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin, or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes. In addition to the above Fair Housing Statement, this statement shall include and apply to observance or and full compliance with any/all federal, state and local fair housing laws. Special Note: Reasonable accommodations and modifications needed by persons with disabilities will be considered in accordance with applicable fair housing laws.

We hope that you find this information helpful as you begin your real estate transaction. When you are ready to enter into a transaction, you will be given an *Agency Disclosure Statement* that specifically identifies the role of the agents and brokerage(s). Please ask questions if there is anything that you do not understand. Because it is important that you have this information, Ohio law requires that we ask you to acknowledge receipt of this Consumer Guide. Your *"Acknowledgement of Receipt"* of this Consumer Guide is not a contract and does not obligate you to Russell Real Estate Services in any way.

**Exhibit 4**
**Page 4 of 17**

dotloop signature verification: dtlp.us/qhOv-agkx-1n5f
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

# Russell Real Estate Services
# Premier Providers





I/We understand that working with Russell Real Estate Services entitles me/us to a free insurance consultation with a Russell Insurance and Investment Representative and a free title/escrow consultation with Newman Title LLC., representative. These consultations are free, without obligation and may provide savings to me in the title/closing services and homeowner's insurance policy needs should I decide to purchase a home.

*Should you wish to speak with a representative of our affiliated service providers, please reach out to them at:*

*Your Home Financial, LLC*
*Paul McKelvey, President*
*Cell: 440.821.0008*
*Email: paul.mckelvey@yourhomefinanical.com*

*Newman Title LLC,*
*Erin Koz, Manager*
*Office: 800.245.8485*
*Email: newman@ntitleohio.com*

*Russell Insurance and Investments, LLC*
*Tony Larizza, Insurance Consultant*
*Cell: 216.906.1945*
*Email: insuredwithrussell@gmail.com*

## I/We hereby acknowledge receipt of Russell Real Estate Services
## *Consumer Guide to Agency Relationships.*

Steve Nedolast

| Name *(please print)* | |
|---|---|
| *Stephen D Nedolast* | dotloop verified 02/03/24 10:42 AM EST 1TFP-BYN8-TRBR-CXIV |
| Signature | Date |

| Name *(please print)* | |
|---|---|
| | |
| Signature | Date |

Phil Rogers                                    2001023378

REALTOR® Name *(please print)*        (License #)

steve.nedolast@homevestors.com

Client(s) Phone Number/Email Address

REALTOR® Name *(please print)*        (License #)

**Exhibit 4**
**Page 5 of 17**

dotloop signature verification: dtlp.us/VSOO-2loq-o11Z
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869



# AGENCY DISCLOSURE STATEMENT



EQUAL HOUSING OPPORTUNITY

**The real estate agent who is providing you with this form is required to do so by Ohio law.  You will not be bound to pay the agent or the agent's brokerage by merely signing this form.**  Instead, the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below.  (For purposes of this form, the term "seller" includes a landlord and the term "buyer" includes a tenant.)

Property Address:   13829 Courtland Ave, Cleveland, OH 44111

Buyer(s):   SLHS Investments LLC

Seller(s):   Innings 150 LLC

## I. TRANSACTION INVOLVING TWO AGENTS IN TWO DIFFERENT BROKERAGES

The buyer will be represented by   Phil Rogers , and   Russell Real Estate Services
<em>AGENT(S)</em>                                           <em>BROKERAGE</em>

The seller will be represented by   Violetta Varenkova , and   IIP Management LLC
<em>AGENT(S)</em>                                           <em>BROKERAGE</em>

## II. TRANSACTION INVOLVING TWO AGENTS IN THE SAME BROKERAGE

If two agents in the real estate brokerage
represent both the buyer and the seller, check the following relationship that will apply:

☐ Agent(s)_____ work(s) for the buyer and
Agent(s)_____ work(s) for the seller.  Unless personally involved in the transaction, the principal broker and managers will be "dual agents," which is further explained on the back of this form.  As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.

☐ Every agent in the brokerage represents every "client" of the brokerage.  Therefore, agents _____ and _____ will be working for both the buyer and seller as "dual agents."  Dual agency is explained on the back of this form.  As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.  Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller.  *If such a relationship does exist, explain:*
_____

## III. TRANSACTION INVOLVING ONLY ONE REAL ESTATE AGENT

Agent(s) _____ and real estate brokerage _____ will

☐ be "dual agents" representing both parties in this transaction in a neutral capacity.  Dual agency is further explained on the back of this form.  As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.  Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller.  *If such a relationship does exist, explain:*
_____

☐ represent only the (*check one*) ☐**seller** or ☐ **buyer** in this transaction as a client.  The other party is not represented and agrees to represent his/her own best interest.  Any information provided the agent may be disclosed to the agent's client.

## CONSENT

I (we) consent to the above relationships as we enter into this real estate transaction.  If there is a dual agency in this transaction, I (we) acknowledge reading the information regarding dual agency explained on the back of this form.

| | |
|---|---|
| *Stephen D. Nedolast* | *Estate of Innings 150 LLC, debtor*   2/19/2024 |
| BUYER/TENANT       DATE | SELLER/LANDLORD       DATE |
|           02/03/2024 | |
| BUYER/TENANT       DATE | SELLER/LANDLORD       DATE |

Effective 02/10/19

**Exhibit 4**
**Page 6 of 17**

dotloop signature verification: dtlp.us/eDhd.fc4p.I30R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869



## RUSSELL REAL ESTATE SERVICES
## RESIDENTIAL PURCHASE AGREEMENT
Administrative Office: 12190 Pearl Road, Strongsville Ohio 44136



1.  **BUYER:** The undersigned _SLHS Investment LLC_ offers to buy the

2.  **PROPERTY:** located at _13829 Courtland Ave_

3.  City _Cleveland_ , Ohio, Zip Code _44111_

4.  Permanent Parcel No. _02219014_ , and further described as being: _10 LIBERTY#2 0533 ALL_

5.  _____

6.  The property, which BUYER accepts in its "AS IS" PRESENT PHYSICAL CONDITION, shall include the land, all
7.  appurtenant rights, including but not limited to any and all mineral rights, privileges and easements, and all buildings
8.  and fixtures, including the use of the following as are now on the property: all electrical, heating, plumbing and bathroom
9.  fixtures; all window and door shades, blinds, awnings, screens, storm windows, curtain and drapery fixtures; all
10. landscaping, disposal, TV antenna, rotor and control unit, smoke detectors, garage door opener(s) and any/all controls;
11. all permanently attached carpeting. The following selected items shall also remain: ☐ satellite dish; ☐ microwave;
12. ☐ range and oven; ☐ kitchen refrigerator; ☐ dishwasher; ☐ washer; ☐ dryer; ☐ radiator covers; ☐ window air
13. conditioner; ☐ central air conditioning; ☐ gas grill; ☐ fireplace tools; ☐ screen, ☐ glass doors and ☐ grate; ☐ all existing
14. window treatments; ☐ ceiling fan(s); ☐ wood burner stove inserts; ☐ gas logs; ☐ water softener ☐ owned ☐ rented;
15. ☐ Security system; ☐ smart/wireless doorbell system, ☐ smart or electronic devices for HVAC system; ☐ sump pump(s)
16. and/or sump pump(s) battery back-up(s); ☐ television mounting hardware; ☐ propane tank ☐ owned ☐ rented;

17. Also included: _____

18. Fixtures Not Included: _____

19. **PRICE:** BUYER shall pay the sum of.............................................................$ _95500_

20. Earnest money payable to _Titleco Title Agency_
21. in the form of a ☐ check ☐ note, the receipt of which is hereby acknowledged by
22. RUSSELL REAL ESTATE SERVICES. Note shall be redeemed (as stated on
23. lines 27-29). All monies received to be deposited into an escrow/trust account
24. and to be credited against the Purchase Price……………………………………$ _2000_
25. *Ohio law requires deposits to an Escrow Agent (earnest money and/or down*
26. *Payment) in excess of $10,000 to be conveyed by wire transfer. The parties hereby*
27. *Direct  the Escrow Agent to provide written confirmation of receipt of the Earnest*
28. *Money to the Agents involved in this transaction.*
29. NOTE TO BE REDEEMED WITHIN FOUR DAYS OF WRITTEN ACCEPTANCE
30. OR 24 HOURS AFTER SATISFACTORY COMPLETION OF ALL QUALIFIED
31. INSPECTIONS, IF APPLICABLE.
32. Additional monies to be placed in escrow with a responsible lending institution,
33. title or trust company…………………………………………………………$ _93500_
34. Execute and deliver note secured by a first mortgage on said premises
35. in the amount of ☐ Conventional ☐ FHA ☐ VA ☑ OTHER………………….$ _CASH_

36. Additional Terms: _____

37. _____

38. **FINANCING:** BUYER shall make a written application for the above mortgage loan, order the appraisal and
39. provide verification to SELLER of said application and order of appraisal within _____ days and shall
40. obtain a commitment for that loan no later than _____ days after acceptance of this offer. If first mortgage
41. financing cannot be obtained despite BUYER Good faith efforts, Russell Real Estate Services reserves the right to
42. arrange acceptable financing. If first mortgage financing cannot be obtained then this Agreement shall be null and void.
43. Upon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to the BUYER
44. without any further liability of either party to the other or to the Brokers and their agents.

45. **CLOSING:** All funds and documents necessary for the completion of this transaction shall be placed in escrow
46. with the lending institution or escrow company on or before ~~xxxxxxxxxx~~. 3/31/24 _____, and title shall be
47. recorded on or about ~~xxxxxxxxx~~. 3/31/24

_EO(W)_ 2/19/2024                                        _EO(W)_
**SELLER(S) INITIALS AND DATE**          RESIDENTIAL PURCHASE AGREEMENT 10.1.2023          _SGW_ / _____
                                                     Page 1 of 7                            **BUYER(S) INITIALS AND DATE**

**Exhibit 4**
**Page 7 of 17**

dotloop signature verification: dtlp.us/eDhd-fc4o-l30R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

Property Address: 18829 Courtland Ave, Cleveland, OH 44111

48. **POSSESSION:** SELLER shall deliver possession and occupancy of the Property to the BUYER (with all personal
49. property not included in the sale, trash, & debris removed) on or before TT _____ ☐ AM ☐PM, _____ days after
50. title transfer. Subject to BUYER'S rights, if any, the premises may be occupied by the SELLER free for _____ day(s)
51. and an additional _____ days at a rate of $ _____ per day, no later. Insurance coverage and payment and
52. collection of fees for use and occupancy after recording of title are the sole responsibility of SELLER and BUYER.
53. **ELECTRONIC DATA SECURITY: It is acknowledged and agreed that Russell Real Estate Services (Broker),**
54. **its agents and employees, will never ask any party to a transaction to wire funds or to supply credit or debit**
55. **card or bank account numbers.  BUYER and SELLER are advised to independently confirm any transfer**
56. **instructions directly with Escrow Agent identified herein.  BUYER and SELLER hereby agree to release all**
57. **brokers, and agents involved in this transaction from any and all claims, damages, and causes of action**
58. **related to any unlawful electronic security access by a third party in connection with any agent or broker**
59. **communications.**
60. **WALK THROUGH:** BUYER and SELLER agree that BUYER will be given an opportunity to walk through the property
61. on or about _____ day(s) prior to title transfer or possession, whichever occurs first, to solely verify that it is in the
62. same or similar condition, absent normal wear and tear, that it was at the time of Acceptance. BUYER acknowledges
63. that no issues may be raised at the time of the walk-through with respect to any condition of the property that were in
64. existence at the time of BUYER'S viewing or inspection of it. If the walk-though evidences a material adverse change
65. in the property's condition, BUYER shall promptly notify SELLER and Escrow Agent in writing.  Thereafter, the BUYER
66. and SELLER shall mutually agree in writing upon an amount to be either: (1) held in escrow from SELLER'S proceeds
67. pending correction of the material adverse change; or (2) credited to the BUYER through escrow at the time of title
68. transfer.
69. **TITLE:** SELLER shall convey a marketable title to BUYER by general warranty deed and/or fiduciary deed, if
70. required, with dower rights released, free and clear of all liens and encumbrances whatsoever, except a) any
71. mortgage assumed by BUYER, b) such restrictions, conditions, easements (however created) and encroachments
72. as do not materially adversely affect the use or value of the property, c) zoning ordinances, if any, and d) taxes and
73. assessments, both general and special, not yet due and payable. BUYER is encouraged to obtain Owner's Title
74. Insurance Policy ("OTIP"). An OTIP is different than a title Insurance Policy, which will not protect the BUYER
75. from claims and challenges on the title.  SELLER shall furnish an OTIP in the amount of the purchase price, or_____
76. from Newman Title LLC, or Titleco Title Agency _____,as agreed to by the parties. BUYER agrees to release and
77. discharge any and all claims and losses against The Russell Realty Company ,d/b/a Russell Real Estate Services and
78. it's agents should the BUYER elect not to purchase an OTIP. I/We acknowledge and agree that I /we have (or will) select
79. and engage a title agency, title insurance company, and/or escrow/settlement company (collectively "Title Companies")
80. of my/our own choosing after conducting my/our own inquiry sufficient to provide all of the information  needed to make
81. that independent decision. Accordingly, I/we acknowledge and agree that while I/we may have been introduced to
82. my/our choice of Title Companies by Russell Realty Company, d/b/a Russell Real Estate Service, or one or more of its
83. agents, employees, officers and directors (collectively "Russell"), I/we did not rely on that introduction or any
84. representation, act or non-act by Russell in deciding to engage a Title Company and, further agree that I/we hereby
85. release and hold harmless Russell from any direct or vicarious claims or liability arising from any misappropriation of
86. funds, fraud, negligence, malfeasance or any other inappropriate action(s) of the Title Company I/we selected, unless
87. I/we select Newman Title. I/we understand that this is a material term of this Disclosure and that I/we can have an
88. attorney, of my/our choosing, review same and I /we have either done so, or have chosen not  to do so, on our own
89. without undue pressure by anyone. SELLER shall have thirty (30) days after notice to remove title defects. If unable
90. to do so, BUYER may either a) accept Title subject to each defect without any reduction in the purchase price or
91. b) terminate this agreement, in which case neither BUYER, SELLER or any broker shall have any further  liability to each
92. other, and both BUYER and SELLER agree to sign a mutual release, releasing earnest money to BUYER.
93. **PRORATIONS:** General taxes, annual maintenance fees, subdivision charges, special assessments, city and county
94. charges, heating fuel oil/propane (if any) and tenant's rents, collected or uncollected, shall be prorated as of the
95. date the title has been recorded. Taxes and assessments shall be prorated based upon the latest available tax
96. duplicate.  However, if the tax duplicate is not yet available or the improved land is currently valued as land only,
97. taxes and assessments shall be prorated based upon 35% of the selling price times the millage rate. The escrow
98. agent is instructed to contact the local governmental taxing authority, verify the correct tax value of the property as
99. of the date the title has been recorded and pay the current taxes due to the date the title has been recorded. If
100. the property being transferred is new construction and recently completed or in the process of completion at the
101. time the agreement was signed by the parties, the escrow agent is instructed to make a good faith estimate of the
102. taxes to be owed on the value of the improved property to the date the title has been recorded and reserve sufficient
103. funds in escrow from Seller's net proceeds to pay those taxes when they become due and payable after the title
104. has been recorded. The escrow agent is instructed to release the balance of the funds on reserve to SELLER
105. once they receive notice from the local county auditor that the taxes on the land and improvements have been paid

| ED 2/19/2024 | | RESIDENTIAL PURCHASE AGREEMENT 10.1.2023 | SGN | / |
| SELLER(S) INITIALS AND DATE | | Page 2 of 7 | BUYER(S) INITIALS AND DATE | |

**Exhibit 4**
**Page 8 of 17**

dotloop signature verification: dtlp.us/eDhd-fc4p-l30R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

Property Address: 13625 Courtland Ave, Cleveland, OH 44111

106. in full to the date the title has been recorded. SELLER and BUYER acknowledge that the latest available tax duplicate
107. may not reflect the accurate amount of taxes and assessments that will be owed. SELLER and BUYER agree to adjust
108. directly outside of escrow for any increase or decrease in valuation and the cost of all passed or levied, but not yet
109. certified, taxes and assessments, if any, prorated to the date the title has been recorded. SELLER is not aware of
110. any proposed taxes or assessments, public or private, except the following: _____
111. _____. In the event the property be deemed subject to any agricultural
112. tax recoupment (C.A.U.V.), BUYER ☐ SELLER ☐ agrees to pay the amount of such recoupment.

113. **CHARGES/ESCROW INSTRUCTIONS:** This agreement shall be used as escrow instructions subject to the Escrow
114. Agent's usual conditions of acceptance. The Mortgage Location Survey is to be performed by Exacta Land Surveying
115. or _____. **SELLER** shall pay the following costs through escrow: a) deed
116. preparation, b) real estate transfer tax, c) any amount required to discharge any mortgage, lien or encumbrance not
117. assumed by BUYER, d) title exam and one half the cost of insuring premium for Owners Title Insurance Policy, e)
118. prorations due BUYER, f) Broker's commissions, g) one-half of the escrow fee (unless VA/FHA regulations prohibit
119. payment of escrow fees by BUYER in which case SELLER shall pay the entire escrow fee). Tenant security deposits, if
120. any, shall be credited in escrow to the BUYER. The escrow agent shall withhold $400.00 from the proceeds due
121. SELLER for payment of Seller's final water and sewer bills. SELLER shall pay all utility charges to date of recording of
122. title or date of possession whichever is later. **BUYER** shall pay the following through escrow (unless prohibited by VA/FHA
123. regulations): a) one-half of the escrow fee, b) one half the cost of insuring premium for Owners Title Insurance Policy,
124. c) all recording fees for the deed and any mortgage, and d) a Brokerage Commission of $299 (plus any amount due if
125. an Exclusive Buyer Representation Agreement exists) payable to Russell Real Estate Services (address on line 316).
126. SELLER and BUYER hereby authorize and instruct escrow agent to send a copy of their fully signed Closing Disclosure
127. or Settlement Statement(s) to both Broker(s) listed on this Agreement promptly after closing, which Broker(s) may submit
128. to other parties to the transaction.

129. **HOME WARRANTY:** BUYER has been made aware and acknowledges that several Limited Home Warranty
130. Insurance Policies issued by numerous companies are available and that such policies have deductibles, and may
131. not cover pre-existing defects in the property, and have items excluded from coverage. BUYER ☐ does ☑ does not
132. elect to secure a Limited Home Warranty Plan provided by CINCH Home Services or _____ .
133. The cost of $_____ shall be paid by ☐ BUYER ☐SELLER through escrow.

134. **INSPECTION:** BUYER acknowledges that it has been recommended to him/her that he/she engage, at his/her
135. expense, the services of licensed (as required) or professional inspectors to inspect the premises to ascertain
136. that the condition of the premises is as called for in this agreement. This agreement shall be subject to the following
137. inspection(s), by a qualified licensed (as required) or professional inspector of Buyer's choice within the specified
138. number of days from acceptance of binding agreement. BUYER assumes sole responsibility to select and retain a
139. qualified licensed (as required) or professional inspector for each requested inspection and releases Broker of any
140. and all liability regarding the selection or retention of the inspector(s). If BUYER does not elect inspections, BUYER
141. acknowledges that BUYER is acting against the advice of Buyer's agent and broker. BUYER understands that all
142. real property and improvements may contain defects and conditions that are not readily apparent and which may
143. affect a property's use or value. BUYER and SELLER agree that the Broker(s) and their agent(s) do not guarantee and
144. in no way assume responsibility for the property's condition. BUYER acknowledges that it is Buyer's own duty to
145. exercise reasonable care to inspect and make diligent inquiry of the SELLER or Buyer's inspectors regarding the
146. condition and systems of the property. BUYER further acknowledges that the entire house was open for observation
147. and that BUYER had an unimpeded opportunity to inspect the entire house and did inspect said house. The BUYER
148. further understands and agrees that it is not the responsibility of the brokerage firms or real estate agents to inspect
149. the property and agrees to waive all liability and hold harmless any brokerage firm or real estate agent connected with
150. this transaction.

151. **Inspections required by any state, county, local government or FHA/VA do not necessarily eliminate the**
152. **need for the Inspections listed below.**

Yes No
153. ☐ ☑ 1. GENERAL HOME INSPECTION by a licensed inspector within _____days from acceptance of this offer.
   Paid By:   SELLER ☐   BUYER ☐

154. ☐ ☑ 2. SEPTIC SYSTEM INSPECTION by a professional inspector (first verify with County Regulations) within
   _____ days from acceptance of this offer.   Paid By:   SELLER ☐   BUYER ☐

155. ☐ ☑ 3. WELL WATER TEST for potability, by a professional inspector within _____ days from acceptance of this offer.
   SELLER ☐   BUYER ☐

156. ☐ ☑ 4.WELL INSPECTION for adequate flow rate, by a professional inspector within _____ Days from acceptance of
   this offer.   Paid By:   SELLER ☐   BUYER ☐

EAW 2/19/2024
SELLER(S) INITIALS AND DATE

RESIDENTIAL PURCHASE AGREEMENT 10.1.2023
Page 3 of 7

SGN /
BUYER(S) INITIALS AND DATE

**Exhibit 4**
**Page 9 of 17**

dotloop signature verification: dtlp.us/eDhd-fc4p-I30R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

Property Address: 13829 Courtland Ave, Cleveland, OH 44111

**Yes  No**

157..  ☐ ☑  5. TERMITE/WOOD DESTROYING INSECT INSPECTION by a <u>licensed</u> inspector within_____days from acceptance of this offer.                    Paid By:    **SELLER** ☐    **BUYER** ☐

If FHA/VA regulations prohibit the payment of Insect Inspection by BUYER, SELLER shall pay cost.

158.  ☐ ☑  6. INSPECTION FOR PRESENCE OF LEAD BASED PAINT, AND/OR LEAD BASED PAINT HAZARD by a <u>professional</u> inspector within ten (10) days_____ after acceptance of the contract.
Paid By:    **SELLER** ☐    **BUYER** ☐

159.  ☐ ☑  7. RADON INSPECTION by a <u>professional</u> inspector within_____ days from acceptance of this offer.
Paid By:    SELLER ☐    BUYER ☐

160.  ☐ ☑  8. ASBESTOS INSPECTION by a <u>professional</u> inspector within _____days from acceptance of this offer.
Paid By:    SELLER ☐    BUYER ☐

161.  ☐ ☑  9. MOLD OF ANY TYPE INSPECTION by a <u>professional</u> inspector within _____ days from acceptance of this offer.                    Paid By:    SELLER ☐    BUYER ☐

162.  ☐ ☑  10. FOUNDATION INSPECTION by a <u>professional</u> inspector within _____ days from acceptance of this offer.
Paid By:    **SELLER** ☐    **BUYER** ☐

163.  ☐ ☑  11. OTHER INSPECTION(S) by a <u>licensed</u> or <u>professional</u> inspector within _____ days from acceptance of **this offer.**                    Paid By:    **SELLER** ☐    **BUYER** ☐

List Other:_____

164.  ☐ ☑  12. ANY INSPECTION(S) the Home Inspector recommends (if a home inspection is obtained) including but not limited to any of the inspections that the buyer previously elected not to perform within the later of _____ days from acceptance of this offer or _____ days of the Home Inspectors recommendation.
Paid By:    **SELLER** ☐    **BUYER** ☐

165.  <u>**WAIVER:**</u>  [~SRN~] /[____] (INITIALS) BUYER hereby waives each and every professional inspection to which BUYER
166.  has not indicated "YES". Any failure by BUYER to perform any elected inspection shall be deemed a waiver of such
167.  inspection and absolute acceptance of the Property by BUYER in its "AS IS" condition.

168.  **BUYER shall within 3 days of completion of the last inspection requested elect one of the following:**
169.  **A)** Remove the inspection contingency accepting the property in its "AS IS" PRESENT PHYSICAL CONDITION.  If the
170.  property is accepted in its "AS IS" present physical condition, then BUYER agrees to sign an Amendment of
171.  Contingency Removal accepting the property "AS IS";

172.  **B)** Accept the property subject to the SELLER agreeing to have specific material defects, that were either previously disclosed
173.  in writing by the SELLER or identified in a written inspection report repaired by a qualified contractor in a professional manner
174.  at SELLER expense. BUYER shall provide to SELLER a copy of the inspection report(s) and sign an Amendment to
175.  the Purchase Agreement removing the inspection contingency and identifying the defects which are to be repaired.
176.  SELLER and BUYER shall have four (4) days from SELLER receipt of the written list of defects and the inspection
177.  report(s) to agree in writing which defects, if any, will be corrected by SELLER.  If a written Agreement is not signed by
178.  SELLER and BUYER within those four(4) days, this agreement shall be null and void and SELLER and BUYER agree
179.  to sign a mutual release, whereupon signing of a mutual release by SELLER and BUYER, the earnest money deposit
180.  shall be returned to the BUYER without any further liability between SELLER and BUYER or to RUSSELL REAL ESTATE
181.  SERVICES;

182.  **C)** Terminate this Agreement if written inspection report(s) identify material latent defects NOT previously disclosed in writing
183.  by the SELLER or any cooperating real estate broker. Buyer agrees to provide a copy of the written inspection report(s) to
184.  Seller, and whereupon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be
185.  returned to the BUYER without any further liability between SELLER and BUYER or to RUSSELL REAL ESTATE
186.  SERVICES.

187.  FAILURE TO HAVE INSPECTION(S) COMPLETED AS REQUIRED ABOVE, OR TO NOTIFY SELLER BY
188.  WRITTEN NOTICE AS REQUIRED ABOVE, OF ANY DEFECTS BEFORE EXPIRATION OF THE INSPECTION
189.  PERIOD SHALL CONSTITUTE A WAIVER OF SUCH DEFECTS, AND BUYER SHALL TAKE THE PROPERTY
190.  AS IS" WITH RESPECT TO SUCH DEFECTS.

191.  The SELLER and BUYER can mutually agree **IN WRITING** to extend the dates for inspections, repairs, or to exercise
192.  their right to terminate this Agreement.   SELLER agree to provide reasonable access to the property for BUYER to
193.  review and approve any conditions corrected by the SELLER.

194.  <u>**MEGAN'S LAW/SEX OFFENDER REGISTRATION LAW(S):**</u> SELLER warrants that SELLER has disclosed to
195.  BUYER all notices received pursuant to Ohio's sex offender law. The BUYER acknowledges that the information
196.  disclosed may no longer be accurate and agrees to inquire with the local sheriff's office. BUYER agrees to assume


SELLER(S) INITIALS AND DATE

RESIDENTIAL PURCHASE AGREEMENT 10.1.2023
Page 4 of 7


BUYER(S) INITIALS AND DATE

**Exhibit 4**
**Page 10 of 17**

dotloop signature verification: dtlo.us/eDhd-fc4p-l30R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

Property Address: 13029 Courtland Ave, Cleveland, OH 44111

197. the responsibility to check with the local sheriff's office for additional information. BUYER will rely on Buyer's own
198. inquiry with the local sheriff's Office as to registered sex offenders in the area and will not rely on SELLER or any
199. real estate agent involved in the transaction to determine if a sex offender resides in the area of any property
200. BUYER may purchase.

201. **CONDITION OF PROPERTY:** BUYER has examined the property and agrees that the property is being purchased in
202. its "As Is" Present Physical Condition including any defects disclosed by the SELLER on the Ohio *Residential Property*
203. *Disclosure Form* or identified by any inspections requested by either party or any other forms or addenda made a
204. part of this agreement. SELLER agrees to notify BUYER in writing of any additional disclosure items that arise be-
205. tween the date of acceptance and the date of recording of the deed. BUYER has not relied upon any representations,
206. warranties, or statements about the property (including but not limited to its condition or use) unless otherwise
207. disclosed on this agreement or on the *Residential Property Disclosure Form*.

208. ☐  1. BUYER acknowledges receipt of completed *Residential Property Disclosure Form* from SELLER.
209. ☑  2. BUYER has not received *Residential Property Disclosure Form* and SELLER agrees to deliver to BUYER a copy
210. of the completed *Residential Property Disclosure Form* within three (3) days after acceptance unless the sale of the
211. property is exempt by Ohio Revised Code 5302.30 from the use of the form.

212. SELLER shall pay all costs for the repair of any utility line that the SELLER has responsibility for at the time of
213. recording of title or transfer/restoration of utilities, whichever is sooner. SELLER agrees to comply with any and
214. all local governmental point of sale laws and/or ordinances. SELLER will promptly provide BUYER with copies of any
215. notices received from governmental agencies to inspect or correct any current building code or health violations. If
216. applicable, BUYER and SELLER have five (5) days after receipt by BUYER of all notices to agree in writing which
217. party will be responsible for the correction of any building code or health violation(s). If BUYER and SELLER
218. cannot agree in writing, this Agreement can be declared null and void by either party. In that event SELLER and
219. BUYER agree to sign *mutual release* with instruction to the Broker on disbursement of the earnest money.

220. **REPRESENTATIONS AND DISCLAIMERS:** BUYER acknowledges that the SELLER completed the Residential
221. Property Disclosure Form unless otherwise stated above and SELLER has not made any representations or warranties,
222. either expressed or implied, regarding the property, (except for the Ohio Residential Property Disclosure Form, if
223. applicable), and agrees to hold the Brokers and their agents harmless from any misstatements or errors made by the
224. SELLER on the form. BUYER also acknowledges and agrees that the Brokers and their agents have no obligation
225. to verify or investigate the information provided by the SELLER on that form. BUYER hereby acknowledges that
226. any representation by SELLER or the real estate agent(s) regarding the square footage of the rooms, structures
227. or lot dimensions, homeowner's fees, public and private assessments, utility bills, taxes and special assessments
228. are approximate and not guaranteed. Notwithstanding anything to the contrary, SELLER makes no representations
229. or warranties with regard to the municipality, zoning, school district, or use of the property, and BUYER assumes sole
230. responsibility for researching the foregoing conditions. BUYER acknowledges that BUYER has conducted
231. investigations of these conditions and the use of the real estate, and verified that the real estate is suitable for
232. BUYER"S intended use. SELLER also made no representations with regard to conditions outside of the boundaries
233. of the real estate, including but not limited to, crime statistics, registration of sex offenders, noise levels (i.e., airports,
234. interstates, environmental), local regulations/development or any other issues of relevance to the BUYER, and
235. BUYER assumes sole responsibility for researching such conditions. BUYER acknowledges that BUYER has been
236. given the opportunity to conduct research pertaining to any and all of the foregoing prior to execution of this
237. agreement. BUYER is relying solely on BUYER's own research, assessment and inquiry with local agencies and has
238. not relied on SELLER or any Broker/agent involved in this transaction. Please list any and all verbal representations
239. (if any) made By Brokers or their agent that you relied upon when purchasing this property._____
240. _____

241. **ADDENDA:** The additional terms and conditions in the attached addenda ☑Agency Disclosure Form ☐ Residential
242. Property Disclosure ☐ FHA/VA ☐ FHA Home Inspection Notice ☐ Secondary Offer ☑ Condominium ☐ Short Sale
243. ☐ House Sale Contingency ☐ House Sale Concurrency ☐ Lead Based Paint (required if built before 1978)
244. ☐ Homeowner's Association ☑ Newman Title Agency, LTD. Affiliated Business Arrangement Disclosure Statement
245. ☑ Russell Insurance and Investments, LLC Affiliated Business Arrangement Disclosure Statement ☑ Your Home
246. Financial LLC Affiliated Business Arrangement Disclosure Statement ☑ CINCH Service Agreement Disclosure
247. Statement ☐ Other:_____
248. _____
249. are made part of this Agreement. **The terms and conditions of any addenda will supersede any conflicting terms**
250. **in the Purchase Agreement.**

SELLER(S) INITIALS AND DATE          RESIDENTIAL PURCHASE AGREEMENT 10.1.2023          BUYER(S) INITIALS AND DATE
                                                          Page 5 of 7

**Exhibit 4**
**Page 11 of 17**

dotloop signature verification: dtlp.us/eDhd-fc4p-I90R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

Property Address: 19825 Courtland Ave, Cleveland, OH 44111

251. **DAMAGE:** If any building or other improvements are destroyed or damaged in excess of ten percent of the Purchase
252. price prior to title transfer, BUYER may either a) accept the insurance proceeds for said damage and complete this
253. transaction or b) terminate this agreement and receive the return of all deposits made. In that event, SELLER and
254. BUYER agree to sign a *mutual release*, with instruction to the Broker on disbursement of the earnest money on deposit.
255. BUYER has the right to inspect this property for any reason. If such damage is less than ten percent of the purchase price,
256. SELLER shall restore the property to its prior condition and BUYER agrees to complete the purchase of the Property.

257. **EARNEST MONEY:** The Broker shall acknowledge receipt of the earnest money shown on line 22 to the escrow agent
258. who shall credit that amount to the Buyer's escrow account.  Unless otherwise stated herein, the earnest money
259.  shall be retained in the broker's trust account until after title transfer at which time it shall be applied
260. against any compensation due broker.  Any amount by which the earnest money exceeds the compensation
261. due the broker shall be remitted to the escrow agent.  In the event of a dispute between the SELLER and BUYER
262. regarding the disbursement of the earnest money in the Broker's trust account, the Broker is required by Ohio law
263. to maintain such funds in a trust account until the Broker receives (a) written instructions signed by the parties
264. specifying how the earnest money is to be disbursed or (b) a final court order that specifies to whom the earnest money
265. is to be rewarded. If within two years from the date the earnest money was deposited in the Broker's trust account, the
266. parties have not provided the Broker with such signed instructions or written notice that such legal action to resolve the
267. dispute has been filed, the Broker shall return the earnest money to the BUYER with no further notice to the SELLER.

268. **PERFORMANCE:** If the BUYER fails to perform this contract at the time and in the manner herein specified or
269. defaults in the performance of any of the obligations imposed by the terms hereof, SELLER may, at Seller's option,
270. treat this Agreement as null and void and earnest money shall be forfeited by BUYER in favor of SELLER. It is
271. agreed and stipulated that if BUYER defaults in his/her/their performance of this agreement, then BUYER shall be
272. obligated to pay any and all commissions due RUSSELL REAL ESTATE SERVICES. If SELLER does not perform his
273. obligations under this contract within said time, BUYER may, at his option, treat this contract as null and void and
274. receive the return of earnest money, in which case SELLER agrees to pay the commission as though the sale and
275. transfer had been fully consummated. All parties hereto hereby acknowledge receipt of a full and complete copy of
276. this Agreement. This contract shall be binding on the SELLER, the BUYER, their heirs, executors, administrators,
277. successors and assigns. State law requires that RUSSELL REAL ESTATE SERVICES has a signed mutual release
278. or court order before releasing earnest money (All parties hereby agree to sign a Mutual Release accordingly).
279. See, Earnest Money, above.

280. **FAIR HOUSING STATEMENT:** It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of
281. the Revised Code and the Federal Fair Housing law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign,
282. rent, lease, sublease or finance housing accommodations, refuse to negotiate for the sale or rental of housing
283. accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion,
284. sex, familial status as defined in section 4112.01 of the Revised Code, ancestry, military status as defined in that
285. section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental
286. of housing, in the financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit,
287. to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the
288. neighborhood of a person or persons belonging to one of the protected classes.  In addition to the above Fair Housing
289. Statement, this statement shall include and apply to the observance of and full compliance with any/all federal, state
290.  and local fair housing laws.

291. **BINDING AGREEMENT:** Upon written acceptance, then either written or verbal notice of such acceptance to the last-
292. offering party, this offer and any addenda listed above shall become a legally binding agreement upon BUYER and
293. SELLER and their heirs, executors, administrators and assigns and shall represent the entire understanding of the
294. parties regarding this transaction. All counter-offers, amendments, changes or deletions to this Agreement shall be in
295. writing and be signed/initialed by both BUYER and SELLER. Facsimile **or electronic signatures** shall be deemed
296. binding and valid. This Agreement shall be used as escrow instructions subject to the Escrow Agent's usual conditions
297. of acceptance. If there is any conflict between the escrow's conditions of acceptance and this agreement, the
298. terms of this agreement shall prevail. For purposes of this Agreement, "days" shall be defined as calendar days.

299. **RUSSELL INSURANCE AND INVESTMENTS, LLC:** Upon final acceptance, Buyer requests Russell Insurance and
300. Investments to contact me/us for a free, no obligation review of our insurance needs for this purchase.☐ YES☐ NO

301. This Offer is open for acceptance in writing until _____ o'clock ☐(AM) ☐(PM) EST, on _____
302. **This Agreement is a legally binding contract. If you have any questions of law, consult your attorney.**

**THIS SECTION LEFT INTENTIONALLY BLANK**



DS
_EC4bb_/19/2024
SELLER(S) INITIALS AND DATE

SGN
___/___
BUYER(S) INITIALS AND DATE

RESIDENTIAL PURCHASE AGREEMENT 10.1.2023
Page 6 of 7

**Exhibit 4**
**Page 12 of 17**

dotloop signature verification: dtlp.us/eDhd-fc4p-l90R
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869
Property Address: ~~13829 Courtland Ave, Cleveland, OH 44111~~

**BUYER SIGNATURE(S):**

303. BUYER: [signature: *Stephen D Nedolast*]   dotloop verified 02/03/24 10:42 AM EST GOKO-WAIT-QRES-BMYT   Email: steve.nedolast@homevestors.com

304. Print Name: Steve Nedolast    Phone: _____

305. BUYER: [ _____ ]    Email: _____

306. Print Name: _____    Address: _____

307. Date: 02/03/2024    City/State/Zip: _____

**RUSSELL REAL ESTATE SERVICES (License # 0000387521):**

308. By: [ _____ ]   Office: _____   Phone: _____

309. **SELLER** ☐ **ACCEPTS** the above offer and,

310. ☐   **REJECTS** said offer; or ☐ **COUNTEROFFERS** according to the above modifications initialed by SELLER.

311. Counteroffer shall become null and void if not accepted in writing on or before _____ o'clock ☐ (AM) EST

312. on _____ ☐ (PM) EST

313. Upon final acceptance, SELLER instructs the Escrow Agent to pay from SELLER'S escrow funds upon title transfer

314. a Brokerage Commission $299, if the property is listed with Russell Real Estate Services, and: _____

315. _____ Percent ( _____ %)

316. of the Purchase Price to Russell Real Estate Services, 12190 Pearl Road Strongsville, Ohio 44136

317. AND (Other Broker, if any) IIP Management, LLC. _____ to be paid as per Listing Agreement.

**SELLER SIGNATURE(S):**

318. SELLER: [signature: *Estate of Innings 150 LLC, debtor*]   dotloop verified B3607B12898B4BA...   Email: kenneth.eiler7@gmail.com

319. Print Name: Innings 150 LLC    Phone: _____

320. SELLER: [ _____ ]    Email: _____

321. Print Name: _____    Address: _____

322. Date: _____    City/ST/ZC: _____

| List Broker/Agent Information: | Selling Broker/Agent Name Information: |
|---|---|
| 323. IIP Management, LLC. | Russell Real Estate Services    #0000387521 |
| Listing Real Estate Company   (Company OH BRKR LIC #) | Selling Real Estate Company   (Company OH BRKR LIC #) |
| 324. Violetta Varenkova | Phil Rogers    2001023378 |
| Listing Agent   (Agent OH RE LIC #) | Selling Agent   (Agent OH RE LIC #) |
| 325. | |
| Listing Agent Cell Phone# | Selling Agent Phone# |
| 326. offers@iip-management.com | callitsold2@gmail.com |
| Listing Agent Email | Selling Agent Email |
| 327. | 440-572-3100 |
| Listing Office Phone#   (Office MLS #) | Selling Office Phone#   (Office MLS |

**Exhibit 4**
**Page 13 of 17**

dotloop signature verification: dtlo.us/KPI-dlB6-bzBk
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869





**12206 Pearl Road, Strongsville, OH 44136**
**800-245-8485**

**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE NOTICE**

Date: 02/03/2024

Property Address: 13829 Courtland Ave, Cleveland, OH 44111

Sellers: Innings 150 LLC

Buyers/Mortgagors: SLHS Investments LLC

This is to give you notice that your real estate agent may have a business relationship with **Newman Title LLC. Newman Title LLC** is a joint venture owned by Edge Settlement Associates, LLC, a Pennsylvania Corporation (50.1% ownership), Ron Russell (13.25% ownership), Jeff Russell (11.65% ownership,), Kevin Russell (3.47% ownership) and many of the agents of Russell Real Estate (25% ownership). Because of this relationship, this referral may provide your real estate agent a financial or other benefit. The Managing Member of Newman Title, LLC. is Edge Settlement Associates, LLC. Newman Title LLC. is an authorized agent for First American Title Insurance Company Fidelity National Title Insurance Company and Stewart Title. Set forth below are the estimated charges or range of charges for the settlement services listed. You are NOT required to use **Newman Title LLC.** as a condition for settlement of your loan on or purchase, sale or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE *FOR* THESE SERVICES.

| Title Insurance Premium* | Title Examination Fee By County | | | | Closing Fee Per Side by County (Based on where the Settlement occurs) | | | |
|---|---|---|---|---|---|---|---|---|
| As filed with the State of Ohio | Cuyahoga | $350.00 | Geauga | $350.00 | Cuyahoga | $350.00 | Geauga | $350.00 |
| | Portage | $350.00 | Lake | $350.00 | Portage | $350.00 | Lake | $350.00 |
| **Title Commitment Fee** | Summit | $350.00 | Lorain | $350.00 | Summit | $350.00 | Lorain | $350.00 |
| | Wayne | $300.00 | Medina | $350.00 | Wayne | $300.00 | Medina | $350.00 |
| | Sandusky | $300.00 | Erie | $300.00 | Sandusky | $300.00 | Erie | $300.00 |
| $100.00 | Huron | $300.00 | Stark | $300.00 | Huron | $300.00 | Stark | $300.00 |
| | Ashland | $300.00 | Mahoning | $300.00 | Ashland | $300.00 | Mahoning | $300.00 |
| | | | Ottawa | $300.00 | | | Ottawa | $300.00 |

*May be less if prior title evidence is available.*

The following Russell Real Estate Services Listing Agent(s) has/have a
financial interest in Newman Title LLC. equal to or less than 5%: _____

The following Russell Real Estate Services Buyer Agent(s) has/have a
financial interest in Newman Title LLC. equal to or less than 5%: Phil Rogers

**ACKNOWLEDGEMENT**

I/We have read this disclosure form and understand that my/our agent is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

| | | | |
|---|---|---|---|
| *Estate of Innings 150 LLC, debtor* | 2/19/2024 | *Stephen D Nedolast* | dotloop verified 02/03/24 10:42 AM EST R1YK-XPSL-FMCU-REQD |
| Seller | Date | Buyer | Date |
| Innings 150 LLC | | Steve Nedolast | |
| Print Name | | Print Name | |
| Seller | Date | Buyer | Date |
| Print Name | | Print Name | |

NEWMAN TITLE LLC – AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE NOTICE
v24.01.26

**Exhibit 4**
**Page 14 of 17**

dotloop signature verification: dtlp.us/iKPi-dlB6-bzBk
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869





## Your Home FINANCIAL

**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT**

**Property:** 13829 Courtland Ave, Cleveland, OH 44111                    **Date:** 02/03/2024

**From: Russell Real Estate Services**

**THIS IS TO GIVE NOTICE THAT** The Russell Realty Company, DBA: Russell Real Estate Services, its shareholders, the Russell Real Estate Services Agent(s) (as disclosed below) involved in this transaction and/or Real Estate Broker may have a business relationship with the following entities:

**Your Home Financial LLC** is a joint venture owned by Shelter Mortgage, L.L.C. (50%), and Your Home Investments, LLC (50%). The owners of Your Home Investments LLC are: Jeff R. Russell (49.1%), Ronald N. Russell (5.1%) and many of the agents of Russell Real Estate Services (45.8%). Because of this relationship, this referral may provide a financial or other benefit to The Russell Realty Company and the Russell Real Estate Services Agent(s) in this transaction who are owner(s)/member(s) of said joint venture company as disclosed below.

Set forth below are the estimated charges or range of charges by Your Home Financial LLC for the following settlement services listed:

| Service Provider: | Your Home Financial, LLC |
| --- | --- |
| **Fee/Service Name:** | **Charges or Range:** |
| Loan Origination Charges | $1,295 or 0%-1% of the loan amount in some cases |
| Loan Discount Points | 0-3% depending on the rate chosen |
| Processing Fee | $0.00-$495.00 depending on the product |

**The Russell Realty Company DBA: Russell Real Estate Services Agent Disclosure Acknowledgement:**

The following Russell Real Estate Services Listing Agent(s)_____
has/have a financial interest in Your Home Investments LLC equal to or less than 5%.

The following Russell Real Estate Services Buyer Agent(s)_____ Phil Rogers _____
has/have a financial interest in Your Home Investments LLC equal to or less than 5%.

You are **NOT** required to use and/or purchase any service/product from or through Your Home Financial LLC as a condition for purchase, sale or refinance of the subject property. **There are other companies and agencies available that sell similar services/products. You may, and are advised to, inquire with other individuals and/or entities to determine if you are receiving the best services/products, and the best price/rate for said products/services.** Please note that a lender is allowed, however, to require the use of an attorney, credit reporting agency, or real estate appraiser chosen to represent lender's interest.

**ACKNOWLEDGEMENT: I/We have read this disclosure form, and understand that The Russell Realty Company, DBA: Russell Real Estate Services®️ and their Agent(s) are referring me/us to purchase the above described services from Your Home Financial LLC, and Russell Real Estate Services, it owners, and the Agent(s) checked/disclosed above may receive income or other benefit as a result of the referral and our engagement of either company.**

I/We the undersigned, acknowledge that I/we have read, understand, and received a copy of this disclosure form.

| | |
| --- | --- |
| *Estate of Innings 150 LLC, debtor*   2/19/2024 | *Stephen D Nedolast* |
| Seller                                    Date | Buyer                                    Date |
| Innings 150 LLC | Steve Nedolast |
| Print Name | Print Name |
| | |
| Seller                                    Date | Buyer                                    Date |
| Print Name | Print Name |

dotloop signature verification: dtlp.us/iKPl-dlB6-bzBk
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869

 

**Russell Insurance**

and Investments

**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT**

**Property:** 13829 Courtland Ave, Cleveland, OH 44111     **Date:** 02/03/2024

**From: Russell Real Estate Services**

**THIS IS TO GIVE NOTICE THAT** The Russell Realty Company, DBA: Russell Real Estate Services, its shareholders, the Russell Real Estate Services Agent(s) (as disclosed below) involved in this transaction and/or Real Estate Broker may have a business relationship with the following entities:

**Russell Insurance and Investments, LLC,** an Ohio Limited Liability Company owned by Ronald N. Russell (45%) and many of the agents of Russell Real Estate Services (45%) and up to (10%) owned by the licensed insurance agents of Russell Insurance and Investments, LLC. Because of this relationship, your engagement of Russell Insurance and Investment LLC to assist in placing an insurance policy may provide a financial or other benefit to The Russell Realty Company owners and those Agent(s) involved in this transaction who are owner(s)/member(s) of said limited liability company as disclosed below. **Policies for homes ranging from $50,000 to $500,000 typically are priced at approximately $400 - $2,000+ per year.**

**The Russell Realty Company DBA: Russell Real Estate Services Agent Disclosure Acknowledgement:**
The following Russell Real Estate Services Listing Agent(s)_____
has/have a financial interest in Russell Insurance and Investments, LLC equal to or less than 5%.
The following Russell Real Estate Services Buyer Agent(s) Phil Rogers _____
has/have a financial interest in Russell Insurance and Investments, LLC equal to or less than 5%.

You are **NOT** required to use and/or purchase any service/product from or through Russell Insurance and Investments, LLC as a condition for purchase, sale or refinance of the subject property. **There are other companies and agencies available that sell similar services/products. You may, and are advised to, inquire with other individuals and/or entities to determine if you are receiving the best services/products, and the best price/rate for said products/services.** Please note that a lender is allowed, however, to require the use of an attorney, credit reporting agency, or real estate appraiser chosen to represent lender's interest.

**ACKNOWLEDGEMENT: I/We have read this disclosure form, and understand that The Russell Realty Company, DBA: Russell Real Estate Services® and their Agent(s) are referring me/us to purchase the above described services from Russell Insurance and Investments, and Russell Real Estate Services, it owners, and the Agent(s) checked/disclosed above may receive income or other benefit as a result of the referral and our engagement of this company.**

I/We, the undersigned, acknowledge that I/we have read, understand, and received a copy of this disclosure form.

| | |
|---|---|
| _Estate of Innings 150 LLC, debtor_ 2/19/2024 | _Stephen D Nedolast_ |
| Seller                              Date | Buyer                              Date |
| Innings 150 LLC | Steve Nedolast |
| Print Name | Print Name |
| | |
| Seller                              Date | Buyer                              Date |
| Print Name | Print Name |

dotloop signature verification: dtlp.us/iKPi-dIB6-bzBk
DocuSign Envelope ID: E893B3F1-F76A-41B0-BBEB-126CC5CC8869





**CINCH SERVICE AGREEMENT DISCLOSURE STATEMENT**

**Property:** 13829 Courtland Ave, Cleveland, OH 44111                    **Date:** 02/03/2024

As a convenience and service to our clients, customers and individuals who are involved in a real estate transaction with The Russell Realty Company, DBA: Russell Real Estate Services, we have entered into a Service Agreement with CINCH Home Services (CINCH). This relationship is provided to offer a source of service related to a real estate transaction from a respected provider of their service.

Russell Real Estate Services does not own or have an equity ownership interest in CINCH, the service provider below. However, because of this Service Agreement between The Russell Realty Company, DBA: Russell Real Estate Services and CINCH Home Services (CINCH),  our advertisement of the listed service provider may provide a financial or other benefit to The Russell Realty Company, DBA: Russell Real Estate Services, its' shareholders, and or Real Estate Broker.

**CINCH Home Services (CINCH)** is a provider of limited home warranties and has a business relationship with The Russell Realty Company, DBA: Russell Real Estate Services under the terms of a Service Agreement. CINCH may provide a financial or other benefit to The Russell Realty Company, DBA: Russell Real Estate Services under the terms of this Service Agreement. Premiums for a one year limited home warranty starts at $413 with a $200 deductible or $513 with a $100 deductible for basic coverage, and increases depending on equipment and systems in the structure and options selected. The existence of this Service Agreement between CINCH Home Services (CINCH) and The Russell Realty Company, DBA: Russell Real Estate Services does not increase the cost of the limited home warranty to the public.

You are **NOT** required to use and/or purchase any service/product from or through CINCH as a condition for purchase, sale or refinance of the subject property. **There are other companies and agencies available that sell similar services/products.  You may, and are advised to, inquire with other individuals and/or entities to determine if you are receiving the best services/products, and at the best price/rate for said products/services.**

**Acknowledgement: I/We have read this disclosure form, and understand that The Russell Realty Company, DBA: Russell Real Estate Services has a Service Agreement with Cinch Home Services (CINCH)  to advertise the products and services of the company.**

I/We, the undersigned, acknowledge that I/we have: read, understand, and received a copy of this disclosure form.

| | | |
|---|---|---|
| *Estate of Innings 150 LLC, debtor* 2/19/2024 | | *Stephen D Nedolast* <br> dotloop verified <br> 02/03/24 10:42 AM EST <br> QZUZ-2Y5R-4XEC-6RIR |
| Seller                                  Date | | Buyer                                  Date |
| Innings 150 LLC | | Steve Nedolast |
| Print Name | | Print Name |
| | | |
| Seller                                  Date | | Buyer                                  Date |
| Print Name | | Print Name |

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

  

## ADDENDUM I - WALK THROUGH

The following provisions are part of the Offer to Purchase Real Estate and Acceptance between <u>Ervis Duraj</u> (BUYER) and <u>Innings 150, Llc</u> (SELLER)

for property located at <u>13921 Courtland Ave</u>,

       STREET ADDRESS      MUNICPALITY

Ohio, with offer dated <u>2/10/2024 | 5:05 CST</u>

The following is hereby mutually agreed upon by said Buyers and the Sellers:

1. The parties agree that Buyer will be given an opportunity to walk through the Property on or about <u>5</u> day(s) prior to depositing funds in escrow solely for the purpose of verifying that the Property is in the same or similar condition, absent normal wear and tear, that it was at the time of the execution of the Agreement. Buyer acknowledges and agrees that no issues may be raised at the time of the walk-through with respect to any condition of the Property that was in existence at the time of Buyer's viewing or inspection of the Property. In the event that the walk-through evidences a material adverse change in the condition of the Property, then Buyer shall promptly notify the Seller and the escrow agent in writing. Thereafter, the parties shall mutually agree in writing upon an amount to be either: (a) held in escrow from Seller's proceeds pending correction of the material adverse change; or (b) credited to Buyer through escrow at the time of title transfer.

2. Sellers agree that all appliances and all mechanical systems on the property, including heating, cooling, plumbing, and electrical, etc., will be in good working condition, with the exception of anything disclosed in the Residential Property Disclosures, if applicable, at the time of possession by Buyer.

3. The Property shall be in broom clean condition and free of all personal property and debris at the time of possession.

Buyer: _Ervis Duraj_    Seller: _Estate of Innings 150 LLC, debtor_

Buyer: _____    Seller: _____

Date: _2/10/2024 | 5:05 CST_    Date: _2/19/2024_

Walk Thru Contingency Removed by:

Buyer: _____    Buyer: _____

Date: _____    Date: _____

Revised 11/19/2016

**Exhibit 5**
**Page 1 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

To: Ervis Duraj
Innings 150, Llc
_____

From: Keller Williams Greater Metropolitan

PROPERTY ADDRESS: 13921 Courtland Ave          Cleveland       OH 44111

Date: _____

This is to give you notice that Murwood Real Estate Group, LLC, dba Keller Williams Greater Metropolitan, has a business relationship with Venture Land Title Agency, LLC. Keller Williams Greater Metropolitan is an equity owner of Venture Land Title Investors IV, LLC. Venture Land Title Investors IV, LLC owns 49% of Venture Land Title Agency, LLC. Because of this relationship, this referral may provide it a financial benefit.

In addition, Venture Title Holdings, LLC owns 51% of Venture Land Title Agency, LLC. The owners of Ohio Real Title Agency, LLC and Title Professionals Group, LTD have ownership in Venture Title Holdings, LLC. Ohio Real Title Agency, LLC and Title Professionals Group, LTD will provide settlement services in conjunction with the services performed by Venture Land Title Agency, LLC. Because of the relationship between Ohio Real Title Agency, LLC and Title Professionals Group, LTD and Venture Land Title Agency, LLC, this referral may provide Ohio Real Title Agency, LLC or Title Professionals Group, LTD a financial or other benefit as well.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use Venture Land Title Agency, LLC as a condition of purchase, sale or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

Venture Land Title Agency, LLC's range of charges:

| | |
|---|---|
| Title insurance premium | As filed with the State of Ohio |
| Title examination fee | $295.00 to $425.00 |
| Title Commitment fee | $100.00 |

I/We have read this disclosure form and understand that Keller Williams Greater Metropolitan is referring me/us to purchase the above described settlement services from Venture Land Title Agency, LLC.

In the event the Lender involved in this transaction does not act as settlement or closing agent, then the closing will be handled by Ohio Real Title Agency, LLC or Title Professionals Group, LTD.

This is also to give you notice that Cross Country Mortgage, Inc. and Keller Williams Greater Metropolitan have an arrangement between entities where Cross Country Mortgage provides some financial support (unrelated to sales or revenue) to Keller Williams Greater Metropolitan Real Estate Group, LLC for special events, marketing, and promotions. No revenue sharing, profit sharing, or commission sharing occurs at this time.

DocuSigned by:

*Ervis Duraj*        2/10/2024 | 5:05 CST

DocuSigned by:

*Estate of Innings 15@/bbd/p debtor*
B3607B12898B4BA...

| | | | |
|---|---|---|---|
| Buyer/Borrower | Date | Seller | Date |

_____        _____

| | | | |
|---|---|---|---|
| Buyer/Borrower | Date | Seller | Date |

Exhibit 5
Page 2 of 25

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548





# AGENCY DISCLOSURE STATEMENT

**The real estate agent who is providing you with this form is required to do so by Ohio law. You will not be bound to pay the agent or the agent's brokerage by merely signing this form.** Instead, the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below. (For purposes of this form, the term "seller" includes a landlord and the term "buyer" includes a tenant.)

Property Address: 13921 Courtland Ave _____ Cleveland ____ OH __ 44111

Buyer(s): Ervis Duraj _____

Seller(s): Innings 150, Llc _____

## I. TRANSACTION INVOLVING TWO AGENTS IN TWO DIFFERENT BROKERAGES

The buyer will be represented by Dorela Prifti _____, and KWGM _____.
                                         AGENT(S)                              BROKERAGE

The seller will be represented by Violetta Varenkova _____, and IIP Management LLC ____.
                                         AGENT(S)                              BROKERAGE

## II. TRANSACTION INVOLVING TWO AGENTS IN THE SAME BROKERAGE

If two agents in the real estate brokerage KWGM _____
represent both the buyer and the seller, check the following relationship that will apply:

☐ Agent(s) Dorela Prifti _____ work(s) for the buyer and
  Agent(s) _____ work(s) for the seller. Unless personally
  involved in the transaction, the principal broker and managers will be "dual agents," which is further explained on the back of this
  form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential
  information.

☐ Every agent in the brokerage represents every "client" of the brokerage. Therefore, agents _____
  and _____ will be working for both the buyer and seller as "dual agents." Dual agency is explained
  on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties'
  confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction
  has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain:*
  _____.

## III. TRANSACTION INVOLVING ONLY ONE REAL ESTATE AGENT

Agent(s) _____ and real estate agent _____ will

☐ be "dual agents" representing both parties in this transaction in a neutral capacity. Dual agency is further explained on the back of
  this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential
  information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a
  personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain*: _____
  _____.

☐ represent only the (*check one*) ☐ **seller** or ☐ **buyer** in this transaction as a client. The other party is not represented and agrees to
  represent his/her own best interest. Any information provided the agent may be disclosed to the agent's client.

## CONSENT

I (we) consent to the above relationships as we enter into this real estate transaction. If there is a dual agency in this transaction, I
(we) acknowledge reading the information regarding dual agency explained on the back of this form.

| | | |
|---|---|---|
| *Ervis Duraj* | 2/10/2024 \| 5:05 CST | *Estate of Innings 150 LLc, debtor* 2/19/2024 |
| BUYER/TENANT | DATE | SELLER/LANDLORD DATE |
| | | |
| BUYER/TENANT | DATE | SELLER/LANDLORD DATE |

**Exhibit 5**
**Page 3 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548





## OFFER TO PURCHASE REAL ESTATE AND ACCEPTANCE

1   **BUYER:** The undersigned __Ervis Duraj__ offers to buy the following
2   described property located at: __13921 Courtland Ave__,
3   __Cleveland__        __44111__, Ohio (the "Property")  Permanent Parcel No. __022-19-020__
4   The Property, which BUYER accepts in its "AS IS" PRESENT PHYSICAL CONDITION, shall include the land, all appurtenant
5   rights, privileges and easements, and all buildings and fixtures, including such of the following as are now on the Property: all
6   electrical, heating, plumbing and bathroom fixtures; all window and door shades, blinds, awnings, screens, storm windows, curtain
7   and drapery fixtures; all landscaping, disposal, smoke detectors, garage door opener(s) and _____ controls; all permanently
8   attached carpeting. The following items that also remain: □ satellite dish; □ range and oven; □ microwave;
9   □ kitchen refrigerator; □ second refrigerator; □ dishwasher; □ washer; □ dryer; □ radiator covers; □ window air conditioner;
10  □ gas grill; □ fireplace tools; □ screen; □ glass doors □ fireplace grates □ all existing window treatments; □ ceiling fan(s);
11  □ wood burner stove inserts; □ gas logs; and □ water softener.
12  **Also included:** _____
13  __AS IS SALE_____
14  **NOT included:** _____
15  _____
16  The parties understand and agree that the foregoing terms relating to fixtures and chattel/personal items supersede any listing
17  and marketing information including in any multiple listing service.
18  **SECONDARY OFFER:** This □ is ☒ is not a secondary offer. This secondary offer, if applicable, will become a primary contract
19  upon BUYER'S receipt of a signed copy of the release of the primary contract on or before _____/_____/_____. BUYER
20  shall have the right to terminate this secondary contract at any time prior to BUYER'S receipt of the release of the primary contract
21  by delivering written notice to the SELLER or to SELLER'S agent. BUYER shall deposit earnest money within four (4) days of
22  becoming the primary contract.

23  **PRICE:** BUYER shall pay the sum of                                    $ __79,000.00_____
24  payable as follows:

25  **Earnest Money** paid to Escrow Agent, as defined below, or Broker
26  (the "Depository") will be deposited in a non-interest bearing
27  trust account and credited against purchase price:                       $ __1,000.00_____
28  ☒  Check to be made payable to Escrow Agent or Broker and deposited
29  within four (4) Days from the date of Acceptance, as defined below; or
30  □  Note to be redeemed and deposited within four (4) days
31  from the date of Acceptance.

32  Cash downpayment to be deposited with Escrow Agent via wire transfer:    $ __NA_____

33  Mortgage loan to be obtained by BUYER:                                   $ __NA_____

34  □ CONVENTIONAL □ FHA □ VA ☒ CASH □ OTHER _____

35  SELLER shall contribute _____ towards buyer closing costs and/or prepaid items.

36  NOTE: Ohio law requires deposits to an Escrow Agent in excess of $10,000 to be conveyed by wire transfer.

37  **FINANCING:** This offer is conditioned upon BUYER making written application for the above mortgage loan within _____
38  days after Acceptance, as defined below, and obtaining a written commitment for that loan on or about
39  _____/_____/_____. If, despite BUYER'S good faith efforts, that commitment is not timely obtained, then this Agreement
40  shall be null and void. Upon execution of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned
41  to BUYER upon confirmation that the deposit has cleared and without any further liability of the parties or to Broker and its agents.
42  NOTE: In the event of any earnest money dispute, the parties understand and agree that the Depository is required by Ohio law
43  to maintain such funds in its trust account until its receipt of (a) written mutual authorization of both parties specifying
44  disbursement; or (b) a final court order that specifies to whom the earnest money is to be awarded. If within two years from the
45  date the earnest money was deposited with the Depository, the parties have not provided the Depository with such signed
46  instructions or written notice that such legal action to resolve the dispute has been filed, the Depository shall return the earnest
47  money to BUYER with no further notice to Seller.

2/10/2024 | 5:05 CST          1 OF 6

ED /                                                            EP(D /19/2024
BUYERS INITIAL/DATE                                            SELLERS INITIAL/DATE

Revised 5.3.22

**Exhibit 5**
**Page 4 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

**Property Address:** 13921 Courtland Ave          Cleveland      OH 44111

48  **CLOSING:** All funds and documents necessary to complete this transaction shall be placed in escrow with the lending institution
49  or Escrow Agent on or before 04 / 11 / 2024   and closing of escrow and disbursement on or about
50  04 /11 / 2024 . BUYER and SELLER understand and agree that timing of recording of the deed is at the discretion
51  of the recorder's office in the county in which the Property is located.

52  **POSSESSION:** SELLER shall deliver possession and occupancy to BUYER on or before 5:00 p.m., on
53  04 / 11 / 2024  after closing of escrow and disbursement. SELLER shall maintain utilities up to the date of the
54  possession transfer, and BUYER shall transfer utilities as of the date of possession transfer.  SELLER shall deliver possession
55  of the Property in "broom clean" condition, free and clear of any debris and personal items.

56  **WALK THROUGH:** BUYER and SELLER agree that BUYER may walk through the Property on or about 5      day(s) prior to
57  title transfer solely to verify it is in the same or similar condition, absent normal wear and tear, that it was at the time of
58  Acceptance.  BUYER acknowledges and agrees BUYER may not raise any issues about the Property's condition at walk
59  through if the condition existed when BUYER viewed or inspected it.  If the walk through evidences a material adverse change
60  in the Property's condition, BUYER shall promptly notify SELLER and Escrow Agent in writing. Thereafter, the parties shall
61  mutually agree in writing upon an amount to be either: (1) held in escrow from SELLER'S proceeds pending correction of the
62  material adverse change; or (2) credited to BUYER through escrow at the time of title transfer.

63  **TITLE:** SELLER shall convey marketable title to BUYER by general warranty deed and/or fiduciary deed, if required, with release
64  of dower, free and clear of all liens and encumbrances whatsoever, except (a) any mortgage assumed by BUYER; b) such
65  restrictions, conditions, easements (however created) and encroachments as do not materially adversely affect the use or value
66  of the Property; c) zoning ordinances, if any; and d) taxes and assessments, both general and special, not yet due and payable.
67  BUYER agrees to consult with independent legal counsel with questions about how the Property shall be titled under the deed.

68  SELLER shall furnish an Owner's Fee Policy of Title Insurance from ☐ Ohio Real Title, Agent for Venture Land Title (the "Escrow

69  Agent") x☐ Northern Title Agency                          or in the amount of the purchase price with cost of the
70  insuring premium split equally between SELLER and BUYER. BUYER is hereby advised to obtain an Owner's Title Insurance
71  Policy ("OTIP"). An OTIP is different from a lender's title insurance policy, which will not protect BUYER from claims and issues
72  with title to the Property.  SELLER shall have thirty (30) days after notice to remove title defects.  If unable to do so, BUYER may
73  either a) accept title subject to each defect without reduction in the purchase price; or b) terminate this Agreement, in which case
74  neither BUYER, SELLER nor any Broker or agents shall have any further liability to each other, and BUYER and SELLER agree
75  to sign a mutual release, whereupon Broker shall return the earnest money to BUYER.

76  **PRORATIONS:** Tenant security deposits, if any, shall be credited to BUYER through escrow. Rents, if any, taxes and
77  assessments, and Homeowners Association fees and assessments, if any, shall be prorated by the Escrow Agent as of the date
78  of recording of the Deed. Taxes and assessments shall be prorated based upon the latest available tax duplicate. The parties
79  are advised to consult with the county auditor's office about the status of the Property taxes as the latest available tax duplicate
80  may not accurately reflect the amount of taxes owed. The parties agree to adjust directly any changes in proration when the tax
81  duplicate for the calendar year of closing becomes available. If the  Property is new  construction and recently completed or in
82  the process of completion at the time of the Agreement, then the Escrow Agent is instructed to make a good faith estimate of
83  taxes to be owed on the value of the improved Property to the date of title transfer and reserve sufficient funds in escrow from
84  SELLER'S net  proceeds to pay those taxes when they become due and payable after title transfer. The Escrow Agent is
85  instructed to release the balance of the funds on reserve once it receives notice from the county auditor that the taxes on the
86  land and improvements have been paid in full to the date of title transfer. The Escrow Agent shall withhold $ 200       from
87  SELLER to secure payment of final water and sewer charges, if any. The Escrow Agent is instructed to either pay said charges
88  or verify SELLER'S payment of said charges and remit any balance to SELLER. In the event the Property shall be deemed
89  subject to any agricultural tax recoupment (C.A.U.V.), ☐ BUYER ☐ SELLER agrees to pay the amount of such recoupment.

90  **CHARGES/ESCROW INSTRUCTIONS:** This Agreement shall be used as escrow instructions subject to the Escrow Agent's
91  standard conditions of acceptance that are not inconsistent with this Agreement :

92  **SELLER** shall pay the following costs through escrow: a) real estate transfer tax;  b) any amount required to discharge any
93  mortgage, lien or encumbrance not assumed by BUYER; c) title exam and one-half the cost of insuring premium for Owners Fee
94  Policy of Title Insurance; d) proration due BUYER; e) Broker's commissions; f) one-half of the escrow; and g) other
95  _____ (unless VA/FHA regulations prohibit payment of escrow fees by BUYER in which
96  case SELLER shall pay the entire escrow fee). SELLER shall directly pay all utility charges to the date of title transfer or date of
97  possession, whichever is later. Tenant security deposits, if any, shall be credited in escrow to BUYER.

2/10/2024 | 5:05 CST

ED /
BUYERS INITIAL/DATE

EOUP /19/2024
SELLERS INITIAL/DATE

**Exhibit 5**
**Page 5 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

**Property Address:** 13921 Courtland Ave_____ Cleveland__ OH 44111

98   **BUYER** shall pay the following through escrow (unless prohibited by VA/FHA regulations): a) one-half of the escrow fee; b) one-
99   half the cost of insuring premiums for Owners Fee Policy of Title Insurance; c) all recording fees for the deed and any mortgage;
100  and d) a commission of $249 if BUYER is represented by Keller Williams Realty Greater Metropolitan, and e) other
101  _____.

102  **LIMITED HOME WARRANTY:** BUYER acknowledges the availability of a limited home warranty program, which (CHECK ONE)
103  ☐ will ☒ will not be provided from _____ at a cost of $_____. The cost of the limited home shall
104  be charged to ☐ SELLER  ☐ BUYER through escrow at title transfer. The parties acknowledge that the limited home warranty
105  requires BUYER to pay a deductible in the event of a claim and does not cover pre-existing defects in the Property. The parties
106  acknowledge that Broker or its agents may receive a fee from the warranty provider.

107  **CLOSING DISCLOSURES:** The parties are advised to carefully review any estimated and final closing disclosures and to direct
108  any questions about them to the Escrow Agent. SELLER hereby authorizes the Escrow Agent to send a final copy of SELLER'S
109  executed Closing Disclosures to ☐ Listing Broker ☐ Selling Broker upon title transfer. BUYER hereby authorizes the Escrow
110  Agent to send a final copy of BUYER'S executed Closing Disclosure to ☐ Listing Broker ☐ Selling Broker upon title transfer.

111  **INSPECTION:** This Agreement shall be contingent upon the following inspection(s) by a professional inspector of BUYER'S
112  choice within the specified number of days **from the date of Acceptance**, as herein defined. BUYER agrees that BUYER is
113  solely responsible for retaining a professional inspector for each requested inspection and releases Broker and its agents from
114  any and all liability regarding the selection or retention of inspector(s). If BUYER elects a general home inspection, BUYER agrees
115  to retain a general home inspector licensed by the State of Ohio. The parties understand and agree that inspections or tests
116  made with respect to a specific condition or component of the Property may be performed by a qualified professional exempt
117  from  home inspector licensing requirements under Ohio law.

118   **If BUYER does not elect inspections, BUYER acknowledges that BUYER is acting against the advice of BUYER'S agent**
119  **and Broker. BUYER understands  that all real property and improvements may contain defects and conditions  that  are**
120  **latent/not readily apparent and which may affect a property's use or value. The parties agree that the brokers and agents**
121  **do not guarantee and in no way assume responsibility for the Property's condition. BUYER acknowledges that it is**
122  **BUYER'S own duty to exercise reasonable care to inspect and make diligent inquiry of the SELLER or BUYER'S**
123  **inspectors regarding the condition and systems of the Property.** INSPECTIONS REQUIRED BY ANY STATE, COUNTY,
124  LOCAL GOVERNMENT OR FHA/VA DO NOT REPLACE THE NEED FOR BUYER'S OWN INSPECTIONS.

| 125 | **CHOICE** | | **INSPECTION** | **EXPENSE** | |
|---|---|---|---|---|---|
| 126 | Yes | No | | BUYER | SELLER |
| 127 | ☐ | ☒☐ | GENERAL HOME _____ days | ☐ | ☐ |
| 128 | ☐ | ☒☐ | SEPTIC SYSTEM _____ days (see addendum) | ☐ | ☐ |
| 129 | ☐ | ☒☐ | WATER POTABILITY _____ days | ☐ | ☐ |
| 130 | ☐ | ☒☐ | WELL FLOW RATE _____ days | ☐ | ☐ |
| 131 | ☐ | ☒☐ | RADON _____ days | ☐ | ☐ |
| 132 | ☐ | ☒☐ | MOLD _____days | ☐ | ☐ |
| 133 | ☐ | ☒☐ | PEST/WOOD DESTROYING INSECTS _____days | ☐ | ☐ |
| 134 | ☐ | ☒☐ | LEAD-BASED PAINT _____days (see disclosure for pre-1978 homes) | ☐ | ☐ |
| 135 | ☐ | ☒☐ | OTHER _____ days | ☐ | ☐ |

136  (Specify) _____

137  **PEST/WOOD DESTROYING INSECTS:** If selected above, an inspection of all structures on the Property shall be made by a
138  licensed inspection or exterminating agency and such agency's written report shall promptly be delivered to BUYER. If such
139  report shows existing infestation or damage by pests, termites or wood destroying insects, treatment of the condition shall be
140  made by a licensed exterminating agency which shall furnish a certificate of guarantee for a period of at least one year in the
141  case of termites and a certificate of guarantee for a period of at least sixty (60) days in the case of wood destroying insects. ALL
142  REPAIR AND TREATMENT COSTS SHALL BE PAID BY ☐ BUYER OR ☐SELLER (unless FHA/VA regulations prohibit
143  payment by BUYER, in which case SELLER shall pay the cost.) This AGREEMENT may be voided by the party paying for the
144  repair and treatment if the cost exceeds $500.

2/10/2024 | 5:05 CST

_FD_/_____
BUYERS INITIAL/DATE

3 OF 6

_EOW_ 2/19/2024
SELLERS INITIAL/DATE

**Exhibit 5**
**Page 6 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

**Property Address:** 13921 Courtland Ave          Cleveland   OH 44111

145   **LEAD BASED PAINT:** If selected above, BUYER shall have the right to have a risk assessment or inspection of the Property by
146   a qualified inspector, for the presence of lead-based paint and/or lead based paint hazards at BUYER'S expense within ten (10)
147   days after Acceptance. NOTE: BUYER shall review the EPA pamphlet "Protect Your Family from Lead in Your Home" for more
148   information. If existing deficiencies or corrections are identified by the inspector in a written report, then BUYER shall have the
149   right to terminate this Agreement or request that SELLER repair the specific existing deficiencies noted on the written inspection
150   report. In that event, BUYER shall immediately provide SELLER with a copy of the written inspection and/or risk assessment
151   report. Upon receipt of the inspection report and BUYER'S request of repairs, SELLER will have the option to either agree to
152   correct the deficiencies identified in the inspector's written report or decline to do any repairs. If SELLER elects to correct the
153   deficiencies, SELLER shall provide to BUYER a certificate from a qualified risk assessor or inspector demonstrating that the
154   deficiencies have been remedied before closing. If the SELLER declines to correct the deficiencies, BUYER may elect to
155   terminate the Agreement or accept the Property in its "AS IS" condition. BUYER may remove this right of inspection at any time
156   without SELLER'S consent.

157   **WAIVER** _____ (initials) BUYER elects to waive each professional inspection to which BUYER has not indicated
158   "YES." BUYER acknowledges and agrees that any failure by BUYER to perform any inspection elected above is a waiver
159   of such inspection and shall be deemed absolute acceptance of the Property by BUYER in its "AS IS" condition.

160   Within three (3) days after completion of the last inspection, BUYER shall elect **one** of the following: a) remove the Inspection
161   contingency and accept the Property in its "AS IS" PRESENT PHYSICAL CONDITION; b) accept the Property subject to
162   SELLER agreeing to have specific items identified in a written professional inspection report repaired by a qualified contractor in
163   a professional manner at SELLER'S expense; or c) terminate this Agreement if written inspection report(s) identify material latent
164   defects NOT previously disclosed in writing by the SELLER and any cooperating real estate Broker.

165   If the Property is accepted in its "AS IS" PRESENT PHYSICAL CONDITION, BUYER agrees to sign an Amendment to Purchase
166   Agreement removing the inspection contingency and this Agreement will proceed in full force and effect. If the Property is
167   accepted subject to SELLER repairing specific defects, BUYER shall provide to SELLER a copy of the inspection report(s) and
168   sign an Amendment to Purchase Agreement removing the inspection contingency and identifying the defects which are to be
169   repaired. SELLER and BUYER shall have three (3) days from SELLER'S receipt of the written list of defects and the inspection
170   report(s) to agree in writing which defects, if any, will be corrected at SELLER'S expense. If a written Agreement is not signed by
171   both parties within those three (3) days, then this Agreement shall be null and void and SELLER and BUYER agree to sign a
172   mutual release. If BUYER elects to terminate this Agreement based upon newly discovered material latent defects in the Property,
173   then BUYER shall provide a copy of the written inspection report to SELLER and both parties agree to promptly sign a mutual
174   release. Upon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to BUYER upon
175   confirmation that the funds have cleared without any further liability of either party to the other or to Broker(s).

176   The parties may agree IN WRITING to extend the dates for inspections, repairs, or the deadline for exercising their right to
177   terminate the Agreement. SELLER agrees to provide reasonable access to the Property for BUYER to review and approve any
178   conditions corrected by SELLER.

179   BUYER☒ has _____ (BUYER'S initials) received a copy of the EPA pamphlet entitled "PROTECT YOUR FAMILY FROM
180   ~~LEAD IN YOUR HOME" and a copy of the "DISCLOSURE ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS."~~

181   BUYER☒ HAS NOT _____ (BUYER'S initials) received a copy of the EPA pamphlet entitled "PROTECT YOUR FAMILY
182   ~~FROM LEAD IN YOUR HOME" and~~ a copy of the "DISCLOSURE ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT
183   HAZARDS (disclosure form)."

184   This offer is subject to SELLER completing the disclosure form and BUYER'S review and approval of the information contained
185   on the disclosure form within _____ days from receipt.

186   **MEGAN'S LAW:** SELLER warrants that SELLER has disclosed to BUYER all notices received from the local sheriff's department
187   pursuant to Ohio's sex offender law. BUYER acknowledges that any such information may no longer be accurate and agrees to
188   inquire with the local sheriff's office or the Ohio attorney general's office about sex offender registration. BUYER agrees to rely
189   on solely BUYER'S own inquiry as to registered sex offenders, and not SELLER or any broker or agent.

190   **CONDITION OF PROPERTY:** BUYER has examined the Property and agrees that it is being purchased in its "AS IS" PRESENT
191   PHYSICAL CONDITION, including any latent defects, as well as defects disclosed by SELLER on SELLER'S State of Ohio
192   Residential Property Disclosure Form. SELLER agrees to notify BUYER in writing of any additional disclosure items that arise
193   between the date of Acceptance and the date of recording of the deed.
194   BUYER☒ HAS _____ (BUYER'S initials) received a copy of the Ohio Residential Property Disclosure form completed
195   by SELLER on _____ (date) prior to writing this offer.    Exemption
  form

2/10/2024 | 5:05 CST     4 OF 6     EOW 2/19/2024

_____ / _____
**BUYERS INITIAL/DATE**       **SELLERS INITIAL/DATE**

Revised 4.1.23

**Exhibit 5
Page 7 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

**Property Address:** 13921 Courtland Ave          Cleveland     OH 44111

196     BUYER □ HAS NOT _____ (BUYER'S initials) received a copy of the Ohio Residential Property Disclosure form.
197     This offer is subject to SELLER completing the form and BUYER'S review and approval of the information contained on the
198     disclosure form within _____ days from receipt.

199     SELLER shall pay all costs for repair of any water or gas line leak found between the street and foundation at the time of transfer
200     or restoration of utilities.  SELLER shall comply with all local governmental point of sale laws and/or ordinances. SELLER will
201     promptly provide BUYER with any notices received from government agencies to inspect or correct any current building code or
202     health violations.  If applicable, BUYER and SELLER shall have five (5) days after receipt by BUYER of all notices to agree in
203     writing which party will be responsible for correction of any  building code or health violation(s). In the event BUYER and SELLER
204     cannot agree in writing, this AGREEMENT may be declared null and void by either party.

205     **REPRESENTATIONS AND DISCLAIMERS:**  SELLER warrants that SELLER has completed the Ohio Residential Property
206     Disclosure form with no assistance from any brokerage or agent(s) and otherwise disclosed all known material conditions and
207     defects in the Property, including the land, dwelling and other improvements.  The parties hereby release, indemnify and hold the
208     brokerage(s) and agents harmless from any and all claims, actions, injuries or damages relating to this transaction and the
209     Property, including any misrepresentations or omissions of SELLER. BUYER acknowledges and agrees that the brokerage(s)
210     and agents do not verify or investigate SELLER'S representations and disclosures, including those made on the Ohio Residential
211     Property Disclosure form.  BUYER agrees that BUYER has not relied on any verbal or written representations of any Broker(s)
212     or agent(s) about the Property, including in the multiple listing service.  BUYER understands and agrees that BUYER is solely
213     responsible for investigating the Property to ensure it is acceptable to BUYER, including without limitation its features,
214     characteristics, improvements, fitness, use, value, or condition, MLS information, square footage, zoning, lot dimensions, mold,
215     structure, soils, homeowners' regulations and fees, public and private assessments, utilities, taxes, or special assessments.

216     The parties acknowledge and agree that Keller Williams Realty Greater Metropolitan does not promote, endorse or approve of
217     referral or recommendation by its agents of any independent business in which the agent and/or member of the agent's family
218     has an ownership interest or from which the agent or any member of the agent's family receives any benefit or compensation.

219     **DAMAGE:** If improvements to the Property are destroyed or  damaged in excess of ten percent (10%) of the purchase price
220     before closing and disbursement, then BUYER may either accept the insurance proceeds for said damage and complete this
221     transaction or terminate this Agreement and receive the return of all deposits made. If such damage is less than ten percent of
222     the purchase price, then SELLER shall restore the Property to its prior condition.

223     **ELECTRONIC DATA SECURITY:**  The parties agree to confirm wire instructions directly with the lender or Escrow Agent using
224     an independently verified telephone number.  Keller Williams Realty Metropolitan's agents and employees will never ask
225     any party to wire funds or to supply credit or debit card, routing, or bank account numbers. The parties hereby agree to release
226     the brokers and agents involved in this transaction from any and all liability related to any unlawful electronic data breach.

227     **BINDING AGREEMENT:**  For purposes of this Agreement, "Days" shall be defined as calendar days. "Acceptance" shall occur
228     when the latter of the parties signs this Agreement without making material change and then delivers either written or verbal
229     notice of such signatures to the other party or the other party's agent. Upon Acceptance, this offer and all attachments and
230     addenda, shall become an Agreement binding on BUYER and SELLER, their heirs, executors, administrators, and assigns.  The
231     terms and conditions of this Agreement to be performed by SELLER shall survive delivery and recording of the Deed. This
232     Agreement may be executed by electronic or digital signature of each of the parties, if each party so elects, and may be delivered
233     by facsimile or electronic means.  BUYER and SELLER have carefully read this Agreement and have had the opportunity to
234     consult with independent legal counsel before executing it if they have question of law.  This Agreement represents the entire
235     agreement between the parties, and there are no other representations, warranties or understandings between them, except as
236     outlined herein.  This is a legally binding agreement.

237     **ADDENDA:** The following Addenda are made part of this Agreement and  supersede any conflicting terms of the Agreement:
238     X☐ State of Ohio Agency Disclosure FormX☐ Ohio Residential Property Disclosure form □ VA Addendum
239     □FHA Addendum    □ Condominium Addendum □House Sale Contingency Addendum  □ House Sale Concurrency Addendum
240     □ Lead Based Paint DisclosureX☐Affiliated Business Arrangement Disclosure(s)  □ Home Warranty Contract
241     □ Septic Addendum  □ Other _____

242     _____    2/10/2024 | 5:05 CST    _____
243     (BUYER)                           Date                     (E-MAIL ADDRESS)

244
245     _____    _____    _____
         (BUYER)                            Date                     (E-MAIL ADDRESS)

246     _____    _____
         (ADDRESS AND ZIP CODE)                       (TELEPHONE)

ED /          2/10/2024 | 5:05 CST          5 OF 6          EDW 2/19/2024
BUYERS INITIAL/DATE                                            SELLERS INITIAL/DATE

**Exhibit 5**
**Page 8 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

**Property Address:** 13921 Courtland Ave          Cleveland     OH 44111

247  **DEPOSIT RECEIPT:** Receipt of the earnest money in the form of a ☒ check  ☐ note (CHECK ONE) made payable to ☐ Escrow
248  Agent or ☐ Broker (CHECK ONE) serving as Depository is hereby acknowledged, subject to terms of the above offer.  In the
249  event that the earnest money is payable to the Escrow Agent and exceeds the sum of $10,000, then the Earnest Money payment
250  shall be made via wire transfer from BUYER to the Escrow Agent, as required by Ohio law.
251

By: Dorela Prifti_____    Office: KWGM_____         Phone: 2165079666_____

252  **ACCEPTANCE:** SELLER accepts the above offer and irrevocably instructs the Escrow Agent to pay from SELLER'S proceeds
253  or deposits a commission of _____ percent (_____ %)
254  of the purchase price to Keller Williams Realty Greater Metropolitan at 29225 Chagrin Blvd., Cleveland, Ohio 44122 and
255  _____ percent of the purchase price to
256  _____ (cooperating broker, if any, at the following
257  address) _____.
258  Unless otherwise stated, any Earnest Money held by Broker as the Depository shall be applied to  commissions due, with the
259  balance to be remitted to the Escrow Agent.

260  *Estate of Innings 150 LLL, debtor*          2/19/2024          _____
261  (SELLER)                                     Date               (E-MAIL ADDRESS)

262  _____          _____          _____
263  (SELLER)                                     Date               (E-MAIL ADDRESS)

264  _____          _____
265  (ADDRESS AND ZIP CODE)                              (TELEPHONE)

| Selling Agent Name  Dorela Prifti | Listing Agent Name   ☐ Violetta Varenkova |
|---|---|
| Selling Agent RE License #  2019006089 | Listing Agent RE License #   2011000773 |
| Telephone and email | Telephone and email |
| Selling Brokerage Name<br>Keller Williams Greater Metropolitan | Listing Brokerage Name<br>IIP Management LLC |
| Selling Brokerage License #      REC: 2002014655 | Listing Brokerage License # |
| Selling Brokerage Telephone     216-839-5500 | Listing Brokerage Telephone |
| Selling Brokerage Email     klrw297@kw.com | Listing Brokerage Email |
| Brokerage Address<br><br>29225 Chagrin Blvd. Pepper Pike, Ohio 44122 | Listing Brokerage Address<br>IIP Management, LLC.<br>57 Alpha Park<br>Cleveland OH 44143 |

2/10/2024 | 5:05 CST          6 OF 6                          2/19/2024

BUYERS INITIAL/DATE                                          SELLERS INITIAL/DATE

Revised 4.1.23

**Exhibit 5**
**Page 9 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548



# CONSUMER GUIDE TO AGENCY RELATIONSHIPS

We are pleased you have selected Keller Williams Greater Metropolitan to help you with your real estate needs. Whether you are selling, buying or leasing real estate, Keller Williams Greater Metropolitan can provide you with expertise and assistance. Because this may be the largest financial transaction you will participate, it is important to understand the role of the agents and brokers with whom you are working. Below is some information that explains the various services agents can offer and their options for working with you.

## Representing Sellers
Most sellers of real estate choose to list their home for sale with a real estate brokerage. When they do so, they sign a listing agreement that authorizes the brokerage and the listing agent to represent their interests. As the seller's agent, the brokerage and listing agent must: follow the seller's lawful instructions, be loyal to the seller, promote the seller's best interests, disclose material facts to the seller, maintain confidential information, act with reasonable skill and care and, account for any money they handle in the transaction. In rare circumstances, a listing broker may offer "subagency" to other brokerages which would also represent the seller's interests and owe the seller these same duties.

## Representing Buyers
When purchasing real estate, buyers usually choose to work with a real estate agent as well. Often the buyers want to be represented in the transaction. This is referred to as buyer's agency. A brokerage and agent that agree to represent a buyer's interest in a transaction must: follow the buyer's lawful instructions, be loyal to the buyer, promote the buyer's best interests, disclose material facts to the buyer, maintain confidential information and account for any money they handle in the transaction.

## Dual Agency
Occasionally the same agent and brokerage who represents the seller also represents the buyer. This is referred to as dual agency. 'When a brokerage and its agents become "dual agents," they must maintain a neutral position in the transaction. They may not advocate the position of one client over the best interests of the other client, or disclose any confidential information to the other party without written consent.

## Representing Both the Buyer & Seller
On occasion, the buyer and seller will each be represented by two different agents from the same brokerage. In this case the agents may each represent the best interest of their respective clients. Or, depending on company policy, the agents may both act as dual agents and remain neutral in the transaction. When either of the above occurs, the brokerage will be considered a dual agent. As a dual agent the brokerage and its managers will maintain a neutral position and cannot advocate for the position of one client over another. The brokerage will also protect the confidential information of both parties.

## Working With Keller Williams Greater Metropolitan
Keller Williams® Realty Greater Metropolitan does offer representation to both buyers and sellers. Therefore the potential exists for one agent to represent a buyer who wishes to purchase property listed with another agent in our company. If this occurs each agent will represent their own client, but Keller Williams® Realty Greater Metropolitan and its managers will act as a dual agent. This means the brokerage and its managers will maintain a neutral position and not take any actions that will favor one side over the other Keller Williams® Realty Greater Metropolitan will still supervise both agents to assure that their respective clients are being fully represented and will protect the parties' confidential information.  In the event that both the buyer and seller are represented by the same agent, the agent Keller Williams® Realty Greater Metropolitan will act as dual agents but only if both parties agree. As dual agents they will treat both parties honestly, prepare and present offers at the direction of the parties, and help the parties fulfill the terms of any contract. They will not, however, disclose any confidential

**Exhibit 5**
**Page 10 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548

information that would place one party at an advantage over the other or advocate or negotiate to the detriment of either party.

If dual agency occurs, you will be asked to consent to it in writing. If you do not agree to your agent acting as a dual agent, you can ask that another agent in our company be assigned to represent you or you can seek representation from another brokerage. As a buyer, you may also choose to represent yourself on properties Keller Williams® Realty Greater Metropolitan has listed. In that instance Keller Williams® Realty Greater Metropolitan will represent the seller and you would represent your own best interests. Because the listing agent has a duty of full disclosure to the seller you should not share any information with the listing agent that you would not want the seller to know. Owners represented by Keller Williams® Realty Greater Metropolitan pay commission pursuant to a written listing agreement. In most cases, buyers represented by Keller Williams® Realty Greater Metropolitan pay a commission of $399 through escrow at the time of title transfer and the remainder of the buyer's broker fee will be paid by the listing brokerage.

## Working With Other Brokerages

When Keller Williams® Realty Greater Metropolitan lists property for sale, it also cooperates with, and offers compensation to, other brokerages that represent buyers. Keller Williams® Realty Greater Metropolitan does reserve the right, in some instances, to vary the compensation it offers to other brokerages. As a seller, you should understand that just because Keller Williams® Realty Greater Metropolitan shares a fee with a brokerage representing the buyer, it does not mean that you will be represented by that brokerage. Instead that company will be looking out for the buyer and Keller Williams® Realty Greater Metropolitan will be representing your interests. When acting as a buyer's agent, Keller Williams® Realty Greater Metropolitan also accepts compensation offered by the listing broker. If the property is not listed with any broker, or the listing broker does not offer compensation, we will attempt to negotiate for a seller-paid fee.

**FAIR HOUSING: It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of the Revised Code and the Federal Fair Housing law, 42 U.S.C.A., Section 3601 as amended, to refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in Section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin, or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services.**

**It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.**

We hope you find this information to be helpful to you as you begin your real estate transaction. When you are ready to enter into a transaction, you will be given an Agency Disclosure Statement that specifically identifies the role of the agents and brokerages. Please ask questions if there is anything you do not understand. Because it is important that you have this information, Ohio law requires that we ask you to sign below to acknowledge receipt of this pamphlet. Your signature will not obligate you to work with our company.

| | 2/10/2024 | 5:05 CST | | |
|---|---|---|---|
| Signature _DocuSigned by: Ervis Duraj_ 568436BAADDB4E3... | **Date** | **Signature** | **Date** |
| Print name: Ervis Duraj | | Print name: | |

*For more information on agency law in Ohio you can also contact the Ohio Division of Real Estate & Professional Licensing at (614) 466-4100, or on their website www.com.state.oh.us.*

**Exhibit 5
Page 11 of 25**

DocuSign Envelope ID: A2B2F85F-D06F-4DCE-B0A8-1388E0ADC548



# America's Preferred® Home Warranty



# NEW!

**Standard Coverages:**
Washer & Dryer | Exterior Water & Sewer Lines

**Optional Plan:**
Home Entertainment & Technology Plan

**CHOOSE** your own licensed contractor!
Start A Claim 24/7/365: 800.648.5006 | APHW.COM

Certain items and events are not covered by this contract. Please refer to limitations, restrictions and exclusions in this contract brochure.

**KELLER**WILLIAMS.
**APPROVED VENDOR**

Keller Williams Approved Vendor Program members are business entities independent from Keller Williams Realty, Inc. Neither Keller Williams Realty, Inc. nor its affiliated companies warrant APHW, their products, or their services.    KWBP499A

**Exhibit 5**
**Page 12 of 25**